# EXHIBIT C

Filed: 4/23/2025 3:55 PM
Michael Gould
District Clerk
Collin County, Texas
By Rosanne Summers Deputy
Envelope ID: 100019104

429-02924-2025

CAUSE NO. _____

| | | |
|---|---|---|
| SHI INTERNATIONAL CORP., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| CLUTCH SOLUTIONS, LLC, | § | COLLIN COUNTY, TEXAS |
| CHRISTOPHER CLARK, AMZA SAFI, | § | |
| DANIEL CLARK, NEIL LELLA, | § | |
| YAUJIN "ALEX" YOON, MATTHEW | § | |
| MONTE, BEAU WALKER, KATELYN | § | |
| (KELLER) PAINTER, JOHN | § | |
| "CAMERON" MULLOY, and | § | |
| WILLIAM WORTHAM, | § | |
| | § | |
| *Defendants*. | § | _____ JUDICIAL DISTRICT |
| | § | |

## SHI INTERNATIONAL CORP.'S ORIGINAL VERIFIED PETITION

Plaintiff SHI International Corp. ("SHI") files its Original Verified Petition against Defendants Clutch Solutions, LLC ("Clutch") and Chris Clark ("C. Clark"), Amza Safi ("Safi"), Daniel Clark ("D. Clark"), Neil Lella ("Lella"), Yaujin "Alex" Yoon ("Yoon"), Matthew Monte ("Monte"), Beau Walker ("Walker"), Katelyn Keller ("Keller"), John "Cameron" Mulloy ("Mulloy"), William Wortham ("Wortham") (collectively, "Individual Defendants") (together with Clutch, "Defendants").

### I.     INTRODUCTION

1.      This suit arises from the wrongful and brazen actions undertaken by Clutch and former SHI employees. During their employment with SHI and continuing thereafter as part of an overarching coordinated scheme by and among the former SHI employees and Clutch, Defendants stole business of SHI customers and vendor opportunities from SHI, raided SHI employees, illegally competed with SHI, and misappropriate SHI's confidential and trade secret information,

all of which has caused SHI substantial and irreparable harm. Rather than comply with their legal obligations, former SHI employees C. Clark, Safi, D.Clark, Lella, Yoon, Monte, Walker, Keller, Mulloy, and Wortham, while employed by SHI and immediately thereafter used the knowledge and resources provided by SHI to raid, compete, and improperly solicit a number of key SHI employees, customers, and vendors and to otherwise damage SHI and hamper its successful operations while expanding Clutch's competitive presence in Texas.

## II.    PARTIES

2.    Plaintiff SHI International Corp. is a New Jersey corporation with its offices in Somerset, New Jersey and Austin, Texas. It is a technology company that helps its clients select, deploy, and manage IT solutions, including network and data storage equipment, telecommunications, hardware, software, cloud-based applications and services, and cyber-security services.

3.    Defendant Clutch Solutions, LLC is an Arizona limited liability company with its principal place of business in Mesa, Arizona. Similar to SHI, it is a technology company that helps its clients select, deploy, and manage IT solutions, including network and data storage equipment, telecommunications, hardware, software, cloud-based applications and services, and cyber-security services. *See* Ex. B-9. Clutch may be served with process by serving its registered/statutory agent, CT Corporation System, 3800 North Central Avenue, Suite 460, Phoenix, Arizona 85012.

4.    Defendant Christopher Clark is an individual residing in Austin, Texas. Clark may be served with process at his residence, 302 W. Covington Dr., Austin, Texas 78753, or wherever he may be found.

5.      Defendant Amza Safi is an individual residing in Austin, Texas. Safi may be served with process at his residence, 13001 Gandia Drive, Austin, Texas 78739, or wherever he may be found.

6.      Defendant Daniel Clark is an individual residing in Georgetown, Texas. Clark may be served with process at his residence, 1112 Stetson Hat Trail, Georgetown, Texas 78628, or wherever he may be found.

7.      Defendant Neil Lella is an individual residing in Austin, Texas. Lella may be served with process at his residence, 5543 Hitcher Bend, Austin, Texas 78749, or wherever he may be found.

8.      Defendant Yaujin "Alex" Yoon is an individual residing in Austin, Texas. Yoon may be served with process at his residence, 8736 Corran Ferry Drive, Austin, Texas 78749, or wherever he may be found.

9.      Defendant Matthew Monte is an individual residing in McKinney, Texas. Monte may be served with process at his residence, 2401 Trinity Lane, McKinney, Texas 75072, or wherever he may be found.

10.     Defendant Beau Walker is an individual residing in Kyle, Texas. Walker may be served with process at his residence, 123 Paddington Drive, Kyle, Texas 78640, or wherever he may be found.

11.     Defendant Katelyn Keller is an individual residing in Buda, Texas. Keller may be served with process at her residence, 787 Little Bear Road, Buda, Texas 78610, or wherever she may be found.

12.    Defendant John "Cameron" Mulloy is an individual residing in Austin, Texas. Mulloy may be served with process at his residence, 8811 Sendera Mesa Drive, Austin, Texas 78749, or wherever he may be found.

13.    Defendant William Wortham is an individual residing in Austin, Texas. Wortham may be served with process at his residence, 13228 Darwin Lane, Austin, Texas 78729, or wherever he may be found.

### III.    JURISDICTION AND VENUE

14.    The Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, is within the jurisdictional limits of the Court.

15.    The Court has jurisdiction over the Individual Defendants because they are citizens of and domiciled in Texas.

16.    The Court has jurisdiction over Clutch pursuant to Texas' long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, because Clutch does business in Texas; has committed torts in Texas; and recruits Texas residents for employment in Texas.

17.    Venue is proper in Collin County, Texas pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(2) because Defendant Matthew Monte resides in Collin County. Accordingly, under Tex. Civ. Prac. & Rem. Code § 15.005, venue is proper in Collin County against all Defendants.

### IV.    DISCOVERY CONTROL PLAN AND MONETARY CATEGORY

18.    Discovery in this case shall be conducted under Level 3 as provided in Texas Rule of Civil Procedure 190.

19.    The damages sought are within the jurisdictional limits of the Court because SHI seeks monetary relief over $1,000,000, excluding interest, statutory or punitive damages and penalties, and attorneys' fees and costs. TEX. R. CIV. P. 47(c)(4).

## V.    FACTUAL BACKGROUND

### A.    SHI's Sales Team Structure

20.    SHI is a technology sales organization designed to serve diverse clientele, ranging from small businesses to global enterprises. Specifically, SHI is in the business of selling or reselling computer hardware, software, and computer related services.

21.    Relevant to this dispute are the Inside-Based Sales team, Field-Based Sales team, and Inside Sales Support team. Inside Sales Support employees support customer accounts by creating price quotes, processing orders and inquiries, and understanding their IT needs to provide tailored solutions. Inside Sales Support employees work with Inside-Based Sales employees and Field-Based Sales employees, who are external facing. Both Inside-Based and Field-Based Sales employees are responsible for developing business within assigned geographical and business-type territories.

22.    Moreover, SHI sales teams are categorized by the size of the customer it services: small business, commercial, and enterprise. Relevant here, enterprise sales work with companies that have over 1,000 employees. All of the Individual Defendants worked in enterprise sales.

23.    The Individual Defendants were on the either Inside Sales, Inside Support, or Field-Based Sales teams. Inside Sales employees included Defendants: C. Clark (Senior Inside Sales Account Executive), Safi (Senior Inside Sales Account Executive), D. Clark (Inside Sales Account Executive), Lella (Senior Inside Sales Account Executive), Yoon (Senior Inside Sales Account Executive), Keller (Senior Inside Sales Account Executive), and Wortham (Inside Sales Account Executive). Defendant Monte (Account Executive) was a Field-Based Sales employee. Walker (Senior Inside Sales Account Manager) and Mulloy (Inside Sales Account Manager) were Inside Sales Support employees.

**B.    The Employment Agreements**

24.    All but one of the Individual Defendants worked at SHI for years and were subject to employment agreements containing non-compete, non-solicitation of customers and employees, and protection of confidential information provisions (collectively, the "Agreements"). *See* Ex. A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-9, A-10.

### 1. *Non-Solicitation of Customers*

25.    Defendants C. Clark, Safi, D. Clark, Lella, Yoon, Walker, Mulloy, Wortham, and Monte's employment agreements include a non-solicitation of customers provision. Though wording varies slightly, in large part, all of the agreements provide that for one year following voluntary or involuntary termination, the above-named Defendants are prohibited from "[s]olicit[ing] business from, or provid[ing] services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed at SHI."

### 2. *Non-Solicitation of Employees*

26.    Defendants C. Clark, Safi, D. Clark, Lella, Yoon, Walker, Mulloy, Wortham, and Monte's employment agreements include a non-solicitation of current employees provision. Though the agreements vary slightly, the agreements restrict the above-named defendants from soliciting SHI employees:

> during Employee's employment and for a period of one (1) year following termination of his/her employment with SHI for any reason, Employee will not for himself/herself or on behalf of any other person or entity, solicit or attempt to solicit other employees of SHI to discontinue their employment with SHI.

### 3. *Confidentiality Provisions*

27.    Defendants C. Clark, Safi, D. Clark, Lella, Yoon, Walker, Mulloy, Wortham, and Monte's employment agreements include a provision protecting confidential information. In the

Agreements, C. Clark, Safi, D. Clark, Lella, Yoon, Walker, Mulloy, Wortham, and Monte recognized and acknowledged that SHI would provide them with Confidential Information throughout their employment, and they agreed not to use Confidential Information for their own purpose or disclose it to any other person.

### 4. *Non-Competition Provisions*

28.    Defendants C. Clark, Yoon, Safi, Wortham, and Lella's (collectively, the "Non-Compete Defendants") employment agreements contain a covenant not to compete for six (6) months following termination. More specifically, the agreements provide that the Non-Compete Defendants are prohibited from engaging with "any business that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI within 90 miles of the Employee's home office, if applicable, or SHI facility in Austin Texas."

### C.    Clutch's Scheme to Steal SHI's Customers

29.    Clutch is a company in direct competition with SHI in that it serves similar customers and is specifically in the business of technology and software sales.

30.    Over the past three months, all ten of the Individual Defendants have left SHI to work for Defendant Clutch. With each departure, the web of Clutch's scheme to steal SHI's customer base has come to light. Only recently has SHI uncovered the lengths the Individual Defendants and Clutch have gone to harm SHI's business.

31.    As stated above, many of the Individual Defendants had worked at SHI for years. Yet, despite their long tenure, the Individual Defendants started leaving SHI abruptly in February 2025. First, C. Clark, who started working at SHI in 2010, put in his two-week notice in mid-January and was later terminated on February 3, 2025 when it was discovered that he had requested to move a deal registration over to Clutch. Shortly after, on or about February 11, 2025, Safi, who

started working at SHI in 2015, abruptly no-showed to a company-wide conference where he was expected to attend. That same day, Safi turned in his resignation. In similar fashion, Walker and Painter resigned in mid-February 2025. Lella, Mulloy, Yoon, and Monte resigned at the end of March 2025. Wortham resigned in early April 2025. D. Clark was terminated on March 6, 2025; he had been with SHI since 2019.

**1.** *Solicitation of Customers*

32.    The Individual Defendants' solicitation of customers has been brazen. For example, after C. Clark's departure, he solicited customers, M3 Engineering, Sahara, Terrible Herbst, and Virgin Hotels, who have moved their business to Clutch. Moreover, vendors that C. Clark worked with to service these clients have misdirected email to his SHI email referring to these activities.

33.    Similarly, after Safi and Walker left, their former SHI customers—California Coast Credit Union, ICANN, and Wedbush—have moved their business over to Clutch. Again, SHI learned of this from its vendors and misdirected emails from clients.

34.    Lella solicited former SHI customer Compass Health, which has now moved business to Clutch. SHI learned of this through vendors and emails misdirected to his old SHI email.

35.    D. Clark has moved business of SHI customer, Convera USA, over to Clutch. SHI came to learn of this through its vendors.

36.    Monte has explicitly told other SHI employees that he is working to move the business of SHI's customer—Vizient—over to Clutch. Indeed, in a phone conversation with an SHI Account Executive he said, "you know I am not just going to throw away those relationships." Monte and Mulloy, who both worked on the Vizient account while at SHI, have directly reached out to Vizient and solicited their business.

37.    Painter contacted SHI customer, PNM, before she left SHI asking if they would work with her at Clutch.

38.    Wortham has solicited SHI customer MVM to move business to Clutch.

### 2. Solicitation of Employees

39.    While the Individual Defendants have blatantly disregarded their non-compete and non-solicitation of customers agreements, they have not stopped there. In what appears to be a concerted effort orchestrated by Clutch, the Individual Defendants have aggressively sought to bring over current SHI employees to Clutch—a clear violation of their employment agreements.

40.    To date, SHI employees have been solicited by at least C. Clark, Monte, and Yoon to leave SHI and join Clutch.

41.    What's more, with knowledge that SHI employees have contractual non-compete, confidentiality, and non-solicit obligations, Clutch's internal recruiters have directly solicited dozens of *current* SHI employees. *See* Ex. D.

### 3. Confidential Information

42.    Finally, the Individual Defendants have acted with a complete disregard toward protecting SHI's confidential information and have used SHI's confidential information for improper purposes and in direct competition with SHI. For example, after C. Clark and D. Clark's departure, SHI learned that they sent Confidential Information, which included customer account information, to their personal emails. Moreover, SHI also learned that Wortham deleted key documents from his work laptop, including price quotes that had been issued to SHI customers and customer data. Wortham and Safi closed out key deal registrations with vendors in order to re-

register them at Clutch. And Safi further used SHI's confidential information to create a partner/customer contact sheet prior to leaving SHI.

### 4. *Competing with SHI*

**43.**    Each of the Non-Compete Defendants is in violation of his or her employment agreement. Clutch is the same business as SHI. Both SHI and Clutch offer hardware, software, and IT consulting services to businesses and public sector clients. Both SHI and Clutch offer cloud migration, IT infrastructure modernization, and IT managed services for enterprise clients. Both SHI and Clutch offer cybersecurity solutions designed to protect networks, systems, and data. And both SHI and Clutch target mid-market and enterprise clients.

**44.**    All of the Non-Compete Defendants left SHI to work with a direct competitor— Clutch. Indeed, C. Clark, D. Clark, Painter, Monte, Lella, Safi, Mulloy, and Yoon's Linkedin profiles demonstrate as much. Moreover, SHI vendors inadvertently emailed Wortham's SHI's email after he left SHI stating they "would like to officially start quoting and working with Will Worthham [sic] at Clutch Solutions."

## VI.    CAUSES OF ACTION

### A.    COUNT 1 – Breach of Contract (Individual Defendants except Painter)

**45.**    SHI incorporates by reference the preceding paragraphs as if fully set forth herein.

**46.**    The Agreements are valid and binding contracts. SHI performed all of the duties to which it agreed and owed under the Agreements.

**47.**    As described in further detail above, the Agreements prohibit the Individual Defendants from soliciting employees and customers of SHI and using or disclosing SHI's confidential information. Further, the Non-Compete Defendants are prohibited from competing with SHI for six (6) months following termination. More specifically, the non-compete agreements

prohibit the Non-Compete Defendants from engaging with "any business that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI within 90 miles of the Employee's home office, if applicable, or SHI facility in Austin Texas."

48.    The Agreements are enforceable because, at the time the Individual Defendants signed the agreements and thereafter, they received valuable consideration from SHI, including confidential information, specialized training, compensation, and the opportunity to participate in sales incentive or bonus programs.

49.    The Agreements are ancillary to otherwise enforceable agreements at the time made, the time, geographic, and scope of activity limitations are reasonable and are no more restrictive than necessary to protect the legitimate interest SHI has in protecting its confidential information and customer goodwill.

50.    The aforementioned non-compete and non-solicitation agreements are reasonably related to SHI's protectable interests, namely, its confidential information, workforce stability, and customer goodwill in the form of, and without limitation, confidential information, specialized training, and customer relationships provided to the Individual Defendants.

51.    The Non-Compete Defendants breached the non-compete provisions by beginning employment with Clutch, a direct competitor in the business of selling or reselling computer software and computer related services, within six months of termination of their employment with SHI.

52.    The Individual Defendants breached the customer non-solicitation provisions by soliciting business from SHI customers on behalf of Clutch, both before and after they began employment with Clutch.

53.    Yoon, C. Clark, and Monte breached the employee non-solicitation provision by inducing, attempting to induce, or assisting other employees or entities to induce SHI employees to leave SHI's employment.

54.    The Individual Defendants breached the confidentiality provisions in the Agreements by using and disclosing SHI's confidential information, including information regarding SHI's customers. Further, the Individual Defendants have taken positions with duties so similar to their duties at SHI that they cannot be performed without making use of the confidential information acquired while at SHI,

55.    The Individual Defendants' conduct has caused and will continue to cause SHI to incur damages. Accordingly, SHI seeks actual damages from Individual Defendants as well as temporary and permanent injunctive relief and attorneys' fees.

### B.    COUNT 2 – Breach of Fiduciary Duty (Individual Defendants)

56.    SHI incorporates by reference the preceding paragraphs as if fully set forth herein.

57.    Individual Defendants, while employees of SHI, owed fiduciary duties to SHI. These duties include: (a) the duty to act primarily for the benefit of SHI in matters connected with their employment; (b) the duty not to compete with SHI on their own account in matters relating to the subject matter of their employment; and (c) the duty to deal openly and fairly with SHI and to fully disclose to SHI information about matters affecting SHI's business. Furthermore, as agents, Individual Defendants committed an actionable wrong by, while employed by SHI, using their position to gain a business opportunity belonging to SHI.

58.    Individual Defendants breached the fiduciary duties owed to SHI by, among other things, devising a common plan to solicit away SHI employees and customers to join a competitor

while they were employees of SHI and using their access to SHI's computer network to use SHI's confidential information for their own or Clutch's benefit.

59.    Individual Defendants' breach of fiduciary duty proximately caused SHI to suffer harm.

60.    Moreover, because the harm caused by the Individual Defendants resulted from fraud, malice, or gross negligence, SHI is entitled to recover exemplary damages.

**C.    COUNT 3 – Tortious Interference With Individual Defendants' Agreements (Clutch and Individual Defendants)**

61.    SHI incorporates by reference the preceding paragraphs as if fully set forth herein.

62.    Clutch knew or had reason to know of the Agreements between SHI and the Individual Defendants and that Individual Defendants were under continuing obligations to SHI, as set forth in the confidentiality, non-solicit, and non-compete Agreements. Clutch willfully and intentionally interfered with Agreements when it encouraged, authorized, or ratified the Individual Defendants to use SHI's confidential information, solicit employees away from SHI, and directly or indirectly influence, induce, solicit, or encourage customers of SHI to abandon, reduce, or materially change their business relationships with SHI.

63.    Individual Defendants' and Clutch's interference proximately caused harm to SHI.

64.    Moreover, because the harm caused by the Individual Defendants and Clutch resulted from fraud, malice, or gross negligence, SHI is entitled to recover exemplary damages.

**D.    COUNT 4 – Tortious Interference with Existing and Prospective Customer Contracts and Relationships (Individual Defendants and Clutch)**

65.    SHI incorporates by reference the preceding paragraphs as if fully set forth herein.

66.    SHI had prospective contracts and ongoing business relationships with customers, including Terrible Herbst, California Coastal Credit Union, ICANN, Wedbush, Convera USA,

Compass Health, PNM Resources, Vizient, Dollar Bank, M3 Engineering, Sahara Resorts (Mereulo Group), Virgin Hotels, and Alarm.com. SHI had a reasonable expectation that such relationships would result in a contract. Individual Defendants and Clutch knew of SHI's prospective contracts and business relationships and intentionally interfered with such. Individual Defendants' and Clutch's conduct was independently tortious or unlawful and constituted theft of confidential information.

    67.    SHI had existing business relationships, including, but not limited to, the relationships and prospective relationships with its customers, as referenced above. There was a reasonable probability that such business relationships would have continued and been expanded.

    68.    Individual Defendants and Clutch, knew or had reason to know of the existing and prospective business relationship between SHI and its customers, including those Individual Defendants solicited on behalf of Clutch.

    69.    In connection with, and in the course and scope of their employment or contractual relationship with Clutch, Individual Defendants and Clutch willfully and intentionally interfered with SHI's existing and prospective customer relationships by influencing, inducing, soliciting, or encouraging such customers of SHI to abandon, reduce, or materially change their business relationships with SHI.

    70.    Despite the fact that Individual Defendants and Clutch knew or had reason to know of SHI's business relationships with its customers and prospective customers, they willfully and intentionally interfered with SHI's existing and prospective customer relationships by influencing, inducing, soliciting, or encouraging such customers of SHI to abandon, reduce, or materially change their business relationships with SHI. Further, Clutch knew or had reason to know of

Individual Defendants' solicitation of SHI's existing and prospective customer relationships and encouraged, authorized, or ratified such solicitation.

71.    The unlawful interference by Individual Defendants and Clutch has proximately caused harm to SHI.

72.    Moreover, because the harm caused by the Individual Defendants and Clutch resulted from fraud, malice, or gross negligence, SHI is entitled to recover exemplary damages.

## VII.    REQUEST FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

73.    SHI incorporates the allegations above as if fully set forth herein.

74.    SHI requests the Court issue a temporary restraining order pursuant to Texas Civil Practice and Remedies Code Chapter 65, including § 65.011. Injunctive relief is necessary to prevent Defendants' wrongful conduct until this action is resolved through a final judgment.

75.    To obtain injunctive relief, a party must prove (1) a cause of action against the defendant, (2) a probable right to the relief sought and (3) a probable, imminent and irreparable injury in the interim. *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993); *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968).

76.    SHI has valid causes of action for breach of contract, breach of fiduciary duty, unfair competition, and tortious interference with contracts. SHI has a probable right of recovery on these causes of action. Individual Defendants agreed not to disclose SHI's confidential information, and agreed not to compete with SHI or solicit its customers and employees. Further, Clutch is tortiously interfering with the Individual Defendants' Agreements. Clutch and Individual Defendants are each separately and in combination tortiously interfering with SHI's customer relationships and competing unfairly and thus tortiously by doing so.

77.    SHI seeks a temporary restraining order prohibiting Defendants, including their officers, agents, servants, employees, attorneys, representatives, and those in active participation with them from: (1) communicating, contracting with, or in any way dealing, directly or indirectly, with all customers with whom they dealt while employed by SHI including, but not limited to, Terrible Herbst, California Coastal Credit Union, ICANN, Wedbush, Convera USA, Compass Health, PNM Resources, Vizient, Dollar Bank, M3 Engineering, Sahara Resorts (Mereulo Group), Virgin Hotels, and Alarm.com; (2) using SHI's confidential information to directly or indirectly solicit vendors regarding specific customer opportunities that were SHI's; (3) soliciting SHI employees to join Clutch; and (4) using SHI's confidential information, including information about SHI's customers, their business at SHI, and the terms upon which SHI transacted business with vendors on behalf of those customers. Further, SHI seeks a temporary restraining order prohibiting the Non-Compete Defendants from working for Clutch for a period of six months following entry of the Court's temporary restraining order.

78.    SHI further requests that the Court issue a TRO immediately enjoining Defendants from the acts described above to protect SHI from the imminent and irreparable harm described above and to maintain the status quo in the interim before the application for temporary injunction may be heard. If not enjoined, Individual Defendants' and Clutch's actions pose an immediate threat of irreparable harm and injury to SHI for which there is no adequate remedy at law because the harm cannot be remedied by monetary damages. SHI's confidential information, including regarding its customers and customer information, provide SHI with a competitive edge that differentiates it from industry peers. The loss of business, business disruption, and the diversion of competitive intelligence—which will occur if Individual Defendants and Clutch are not enjoined—will irreparably harm SHI by depriving it of the benefit of the years of time, money,

and effort it took to develop its confidential information, and therefore the harm cannot be measured in monetary terms. The protection of confidential information and the protection of customer relationships are legitimate business interests—and the loss of such interests is a harm that is difficult, if not impossible, to calculate. Once a customer is lost, it is unlikely the business can be regained, and once confidential information is disclosed, it can never be made confidential again.

79.    SHI has no adequate remedy at law without enforcement of the Individual Defendants' Agreements and without enjoining Clutch from further tortiously interfering with SHI's contracts and using SHI's confidential information.

80.    The potential losses—of customers, of employees, of goodwill, of reputation, and of valuable confidential information—will irreparably harm SHI's business and its relationship with its customers such that the harm cannot be measured in monetary terms alone.

81.    SHI has asserted valid causes of action and seeks permanent relief.

82.    SHI is willing to post a bond.

### VIII.   TEMPORARY INJUNCTION

83.    SHI incorporates the previous allegations in this petition by reference.

84.    It is likely that SHI will recover from Individual Defendants and Clutch after trial on the merits. SHI will likely prevail on its claims for breach of contract, breach of fiduciary duty, and tortious interference.

85.    SHI faces probable, imminent, and irreparable harm in the absence of injunctive relief as described above.

86.    Unless this Court grants SHI's application and temporarily restrains Defendants from the acts described above, SHI will suffer probable, imminent, and irreparable injury for which

there is no adequate remedy at law to give SHI complete, final, and equitable relief. More specifically, the harm to SHI is imminent and probable because the conduct and violations are ongoing. Individual Defendants have already demonstrated their disregard for their duties and obligations to SHI and Clutch has already demonstrated its intent to continue interfering with SHI's contracts and relationships.

87.    SHI will suffer irreparable injury, as previously explained. Moreover, SHI's injuries cannot be measured by any certain pecuniary standard.

88.    There is no adequate remedy at law that will give SHI complete, final, and equitable relief because money is insufficient to compensate SHI for the alleged injury.

89.    Following the entry of the temporary restraining order, SHI requests the Court set a hearing for SHI's request for a temporary injunction, and following the hearing, issue a temporary injunction containing all of the injunctive relief sought herein.

## IX.    PERMANENT INJUNCTION

90.    SHI incorporates the previous allegations in this petition by reference.

91.    On final hearing, SHI requests the Court to issue a permanent injunction containing all of the injunctive relief sought herein.

92.    Accordingly, SHI respectfully requests the Court issue a permanent injunction commanding Defendants, including their officers, agents, servants, employees, attorneys, representatives, and those in active participation with them from: (1) communicating, contracting with, or in any way dealing, directly or indirectly through vendors, with SHI's customers including, Terrible Herbst, California Coastal Credit Union, ICANN, Wedbush, Convera USA, Compass Health, PNM Resources, Vizient, Dollar Bank, M3 Engineering, Sahara Resorts (Mereulo Group), Virgin Hotels, and Alarm.com; (2) using SHI's confidential information to

directly or indirectly solicit vendors regarding specific customer opportunities that were SHI's; (3) soliciting SHI employees to join Clutch; (4) using SHI's confidential information, including information about SHI's customers, their business at SHI, and the terms upon which SHI transacted business with vendors on behalf of those customers. Further, SHI seeks an injunction prohibiting the Non-Compete Defendants from working for Clutch for a period of six months following the Court's entry of injunctive relief.

## X.    REQUEST FOR HEARING

93.    SHI requests that the Court set this application for TRO and temporary injunction for hearing, and after hearing the application, issue a TRO and temporary injunction against Individual Defendants and Clutch enjoining them from the acts described above. SHI further requests that the Court set this matter for trial and, upon final hearing, permanently enjoin Individual Defendants and Clutch from the described acts.

## XI.    CONDITIONS PRECEDENT

94.    Pursuant to Texas Rules of Civil Procedure 54, all conditions precedent to SHI's right to recover from Defendants, as alleged in this matter, have been performed, have occurred, or have been waived or excused.

## XII.    ATTORNEYS' FEES

95.    SHI incorporates the previous allegations in this petition by reference.

96.    SHI is entitled to recover its attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code 38.001, *et seq*.

## XIII.   JURY DEMAND

97.    SHI hereby demands a trial by jury and tenders the appropriate fee with this petition.

## XIV.   PRAYER FOR RELIEF

SHI requests the following relief:

a.      All actual damages to which SHI is justly entitled;

b.      Punitive/exemplary damages in an amount to be determined at trial;

c.      Injunctive relief;

d.      All reasonable and necessary attorneys' fees;

e.      Prejudgment and post-judgment interest, as allowed by law;

f.      All costs of suit; and

g.      Any and other such further relief to which SHI may show itself justly entitled.

Dated: April 23, 2025                    Respectfully submitted,

                                         **MUNSCH HARDT KOPF & HARR, P.C.**

                                         By: */s / Jamil N. Alibhai*
                                             Jamil N. Alibhai
                                             State Bar No. 00793248
                                             jalibhai@munsch.com
                                             Julie M. Christensen
                                             State Bar No. 24105601
                                             jchristensen@munsch.com
                                             Karen E. Alday
                                             State Bar No. 24112441
                                             klee@munsch.com
                                             Maddison L. Craig
                                             State Bar No. 24137348
                                             mcraig@munsch.com
                                             500 N. Akard St., Suite 4000
                                             Dallas, TX 75201
                                             Telephone: (214) 855-7500
                                             Facsimile: (214) 855-7584

                                         **ATTORNEYS FOR PLAINTIFF**
                                         **SHI INTERNATIONAL CORP.**

## **VERIFICATION**

Pursuant to Texas Civil Practice & Remedies Code Section 132.001, the following unsworn declaration is submitted as a verification of the facts set forth in the foregoing SHI INTERNATIONAL CORP.'S ORIGINAL VERIFIED PETITION.

My name is Megan Thompson, my date of birth is January 17, 1985, my business address is 3828 Pecana Trail, Austin, TX 78749, USA. I certify that the facts contained in the paragraphs above are based upon my personal knowledge and are true and correct. I declare penalty of perjury that the foregoing is true and correct.

Executed in Travis County, State of Texas, on the 23rd of April, 2025.

Signed by:

*Megan Thompson*
B´4F7E8&24F24CC...

Megan Thompson

# EXHIBIT A

CAUSE NO. _____

| | | |
|---|---|---|
| **SHI INTERNATIONAL CORP.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CLUTCH   SOLUTIONS,   LLC,** | § | |
| **CHRISTOPHER CLARK, AMZA SAFI,** | § | |
| **DANIEL   CLARK,   NEIL   LELLA,** | § | **COLLIN COUNTY, TEXAS** |
| **YAUJIN "ALEX" YOON, MATTHEW** | § | |
| **MONTE, BEAU WALKER, KATELYN** | § | |
| **(KELLER)   PAINTER,   JOHN** | § | |
| **"CAMERON"   MULLOY,   and** | § | |
| **WILLIAM WORTHAM,** | § | |
| | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |
| | § | |

## DECLARATION OF MEGAN THOMPSON

My name is Megan Thompson. I am over the age of twenty-one (21) years, of sound mind, and capable of making this Declaration. I reside in Austin, Texas. I have personal knowledge of the facts set forth below or I have obtained such facts through reasonable investigation and communication with individuals who possess first-hand knowledge.

1.      I am Vice President of Enterprise Inside Sales at SHI International Corp. ("SHI" or "Plaintiff").

2.      SHI is a technology sales organization designed to serve diverse clientele, ranging from small businesses to global enterprises. Specifically, SHI is in the business of selling or reselling computer hardware, software, and computer related services.

3.      Inside Sales Support employees support customer accounts by creating price quotes, processing orders and inquiries, and understanding their IT needs to provide tailored solutions. Inside Sales Support employees work with Inside Based Sales employees and Field-Based Sales employees, who are external facing. Both Inside-Based and Field-Based Sales

1

employees are responsible for developing business within assigned geographical and business-type territories.

4.    SHI sales teams are categorized by the size of the customer it services: small business, commercial, and enterprise. Relevant here, enterprise sales work with companies that have over 1,000 employees. All of the Individual Defendants worked in enterprise sales.

5.    The Individual Defendants were on either Inside Sales, Inside Support, or Field-Based Sales teams. Inside Sales employees included Defendants: C. Clark (Senior Inside Sales Account Executive), Safi (Senior Inside Sales Account Executive), D. Clark (Inside Sales Account Executive), Lella (Senior Inside Sales Account Executive), Yoon (Senior Inside Sales Account Executive), Keller (Senior Inside Sales Account Executive), and Wortham (Inside Sales Account Executive). Defendant Monte (Account Executive) was a Field-Based Sales employee. Walker (Senior Inside Sales Account Manager) and Mulloy (Inside Sales Account Manager) were Inside Sales Support employees.

6.    Over the past three months, all ten of the Individual Defendants have left SHI to work for Defendant Clutch Solutions, LLC ("Clutch").

7.    Many of the Individual Defendants had worked at SHI for years but started leaving SHI abruptly in February 2025.

8.    C. Clark, who started working at SHI in 2010, put in his two-week notice in mid-January and was later terminated on February 3, 2025 when it was discovered that he had requested to move a deal registration to Clutch.

9.    On or about February 11, 2025, Safi, who started working at SHI in 2015, no-showed to a company-wide conference where he was expected to attend. That same day, Safi turned in his resignation.

10.     Walker and Painter resigned in mid-February 2025.

11.     Lella, Mulloy, Yoon, and Monte resigned at the end of March 2025.

12.     Wortham resigned in early April 2025.

13.     D. Clark was terminated on March 6, 2025; he had been with SHI since 2019.

14.     After C. Clark's departure, he solicited SHI customers, M3 Engineering, Sahara Resorts (Mereulo Group), Terrible Herbst, and Virgin Hotels, who have moved business to Clutch. Moreover, vendors that C. Clark worked with to service these clients have misdirected emails to his SHI email referring to this business.

15.     Similarly, after Safi and Walker left, SHI customers—California Coast Credit Union, ICANN, and Wedbush—have moved business to Clutch. Again, SHI learned of this from its vendors and misdirected emails from clients.

16.     Lella solicited SHI customer Compass Health, which has now moved business to Clutch. SHI learned of this through vendors and email mishaps. D. Clark has moved business of SHI customer, Convera USA, to Clutch. SHI came to learn of this through its vendors.

17.     Monte has told SHI employees that he is working to move the business of SHI's customer—Vizient—to Clutch. Monte and Mulloy, who both worked on the Vizient account while at SHI, have reached out to Vizient and solicited its business.

18.     Painter contacted SHI customer, PNM, before she left SHI asking if they would work with her at Clutch. Wortham has solicited SHI customer, MVM, to move business over to Clutch. Wortham and Safi closed out key deal registrations with vendors in order to re-register them at Clutch.

19.     To date, SHI employees have been solicited by C. Clark, Monte and Yoon to leave SHI and join Clutch.

3

20.     Clutch's internal recruiters have directly solicited dozens of current SHI employees.

21.     After C. Clark and D. Clark's departures, SHI learned that they sent Confidential Information, which included customer account information, to their personal email.

22.     SHI also learned that Wortham deleted key documents from his work laptop including, price quotes and customer data. And Safi used SHI's confidential information to create a partner/customer contact sheet prior to leaving SHI.

23.     C. Clark, D. Clark, Painter, Monte, Lella, Safi, Mulloy, and Yoon's Linkedin profiles show that they now work at Clutch.

24.     Attached to SHI International Corp.'s Original Verified Petition are true and correct copies of the following documents. Each of the records contained in the referenced exhibits was made by, or from information transmitted by, a person with knowledge of the events or conditions recorded and was made at or near the time of the events or conditions recorded. Each of the records contained in the referenced exhibits was made in the regular course of SHI's business and kept in the regular course of SHI's business.

| Exhibit A-1 | Christopher Clark Employment Agreements |
|---|---|
| Exhibit A-2 | Daniel Clark Employment Agreement |
| Exhibit A-3 | Matthew Monte Employment Agreement |
| Exhibit A-4 | John Mulloy Employment Agreement |
| Exhibit A-5 | Neil Lellas Employment Agreement |
| Exhibit A-6 | Amza Safi Employment Agreement |
| Exhibit A-7 | Beau Walker Employment Agreement |
| Exhibit A-9 | William Wortham Employment Agreement |
| Exhibit A-10 | Yaujin ("Alex") Yoon Employment Agreement |
| Exhibit A-11 | Email from Blaine Young to Will Wortham on April 16, 2025 |
| Exhibit A-12 | Wortham Closing Deal Registrations April 15, 2025 |
| Exhibit A-13 | Email from Christopher Clark to Gmail on January 28, 2025 |
| Exhibit A-14 | Email from Christopher Clark to Robert Bennett on January 21, 2025 |
| Exhibit A-15 | Email from Wedbush to Amza Safi on April 16, 2025 |

My name is Megan Thompson, my date of birth is January 17, 1985, my business address is 3828 Pecana Trail, Austin, TX 78749 and USA. I declare penalty of perjury that the foregoing is true and correct.

Executed in Travis County, State of Texas, on the 23rd of April, 2025.

Megan Thompson

# EXHIBIT A-1

# AGREEMENT REGARDING CONFIDENTIAL INFORMATION, NON-SOLICITATION, COVENANT NOT TO COMPETE, AND ARBITRATION OF DISPUTES

This Agreement is made effective as of February 15th 2010, between SHI International Corporation (hereinafter "SHI International Corporation" or the "Company"), and Christopher Clark, 1309 Brook Ridge Avenue, Allen TX 75002 |NAME AND ADDRESS| (hereinafter "Employee"). For purposes of this Agreement, all personal pronoun referenced in this document to the male gender (e.g. "he," "him," "his," and "himself") shall apply equally to the female gender (i.e. "she," "her," "hers," and "herself").

In Consideration of the Offer of Employment extended by the Company to Employee, and in accepting such employment as described in the Offer Letter dated February 10th 2010, Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Non-Solicitation, Covenant Not to Compete, and Arbitration of Disputes (hereafter referred to as "the Agreement").

**1.    Agreement Does Not Alter At-will Employment Status**

Employee understands that he is an at-will employee, and that he may be terminated at any time, with or without cause. Employee understands that this Agreement does not alter his at-will employment status. Employee understands that this Agreement does not provide or entitle him to any severance or other compensation upon termination of his employment.

**2.    Prohibition on Using Confidential Information**

2.1    Employee recognizes and acknowledges that Confidential Information  (defined below) is a valuable and unique asset of the Company, access to and knowledge of which is essential to the performance of the Employee' duties to the Company. Except as required to perform the services required under this Agreement, Employee shall not, during his employment or any time thereafter, disclose, in whole or in part, such Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Confidential Information for his own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

2.2    Confidential information means information disclosed to or known by an employee as a consequence or through his association with the Company, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or potential competitors of the Company and which includes but is not limited to: any information that is valuable to the company's business, cost, margin, pricing information, financial information regarding the company and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, the company's commission structure or other payroll information, and similar types of information entrusted to the Company by third parties.

2.3    Employee shall, prior to or upon leaving the Company, or at any time upon the Company's request, deliver to the Company all Company property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to employee during the course of their employment.

2.4    Employee shall not acquire any intellectual property rights under this Agreement except the limited right to use set out above. Employee acknowledges that, as between the Company and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times will

be) the property of the Company, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or related materials during the period of this Agreement.

### 3. Representations Regarding Information from Third Parties and Obligations to Former Employers.

Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer that would or could restrict or prohibit Employee from being employed by the Company or from performing his/her duties for the Company. Employee further acknowledges that to the extent the Employee has an obligation to any former employer not to disclose trade secrets and/or other legally protected confidential information, Employee intends to honor such obligation at all times while in the employ of the Company. Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of the Company, or disclose to any person employed by or otherwise associated with the Company, any trade secrets or other legally protected confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party. Employee represents and warrants that, prior to commencing employment with the Company, Employee has returned all computerized information belonging to any former employer to such former employer. Employee agrees that Employee will not transfer to the Company's computers any pre-existing data or information without the express consent of the Company's IT Department.

### 4. Non-Solicitation.

Employee recognizes and acknowledges that his work as an employee of the Company creates a relationship of trust and confidence between the Employee and the Company. Employee acknowledges that this market is very competitive and that because of these factors and because of the Confidential Information and customer lists which the Company has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to the Company's subscribers, customers, and accounts, Employee will abide by the following conditions during his employment and for a term of one (1) year after termination of employment, whether voluntary or involuntary. During this period, Employee will not:

(a)    Induce, attempt to induce, or assist any other person or entity to induce any employee of the Company to leave its employ;

(b)    Persuade or attempt to persuade any Customer of the Company with whom Employee had contact while employed by the Company to cease doing business with the Company, to reduce the amount of business it does with the Company, or to do business with any other person, firm, or corporation that engages in any business activity competitive to that of the Company; provided that the Company engaged in such business activity during Employee's employment with the Company.

### 5. Covenant Not to Compete

During Employee's employment with the Company, and for a period of six months following the termination of Employee's employment with the Company, whether voluntary or involuntary, Employee shall not engage in, or have any interest in any person, firm, corporation or business (whether as an employee, officer, director, agent, or principal investor) that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with the Company within 90 miles of any home office or SHI facility in <u>Austin, TX.</u>

### 6. Enforcement.

6.1    If Employee breaches or threatens to breach the terms of this Agreement, the Company may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief. Employee acknowledges that the Company would be irreparably injured upon Employee's breach of this Agreement, and it is difficult to ascertain with certainty the amount of money damages the Company will suffer. Employee agrees, however, that a reasonable amount of such money damages would be the commissions and bonuses Employee was

paid by the Company in the six (6) month period prior to Employee's termination. Provided further, however, that nothing herein shall preclude the Company from seeking a recoupment of its actual damages should they be ascertainable in an amount certain and should they exceed the amount of commissions and bonuses Employee received in the six (6) months prior to termination. Employee agrees to reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

6.2    Other than when SHI seeks a temporary restraining order, or a preliminary or permanent injunction against Employee to enforce the provisions of Paragraphs 2, 4, and/or 5 which action may be brought in a court of law, Employee and the Company agree that all disputes relating to his employment with SHI,  or termination thereof shall be decided by an arbitrator through the American Arbitration Association (AAA) and shall proceed pursuant to the AAA Employment Arbitration Rules and Medication Procedures. Employee understands that the types of claims that he is agreeing will be decided by arbitration are all claims, whether based on statute or common law, involving his employment relationship with the Company, including, but not limited to, claims alleging: discrimination, harassment, retaliation, wrongful discharge, breach of contract, and failure to pay wages, including overtime, commissions, or bonuses.

7.    **General Provisions.**

7.1    This Agreement sets forth the entire understanding of the parties regarding confidentiality, non-solicitation, and covenant not to compete and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto. This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey. The parties hereby consent to personal jurisdiction in any federal or state court located in New Jersey, having jurisdiction over the subject matter, on any claim, proceeding, action or lawsuit arising out of a breach of this Agreement.

7.2    In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement:

Christopher Clark
Print Name

2/13/10
Date

Signature

On behalf of SHI International Corporation

Melissa Queen HR
Print Name and Title

2/10/10
Date

Melissa Queen
Signature

# EXHIBIT A-2



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

### AGREEMENT TO ARBITRATE (USA)

This Arbitration Agreement ("Agreement") is made effective <u>9/2/2019</u> by and between <u>Daniel Clark</u> ("You") and SHI International Corp. ("SHI").

1. You and SHI mutually and voluntarily agree and consent to resolve by final and binding arbitration any and all disputes, claims or controversies of any kind or nature, including but not limited to such matters arising from, related to, or in connection with, your employment with SHI or its termination, subject only to the express exceptions set forth in Paragraph 3 below) (collectively, "Claims"), regardless of when Claims arise, by final and binding arbitration before a single neutral arbitrator. This agreement to arbitrate (this "Arbitration Agreement") shall apply to disputes involving You, on the one hand, and SHI and/or its respective current and former officers, directors, shareholders, employees, agents, assigns and/or parent, subsidiaries, successors and affiliated entities, on the other hand (collectively, the "SHI Parties"). By agreeing to submit a Claim to arbitration, neither You nor SHI is giving up any substantive right with respect to that Claim; this Arbitration Agreement simply governs the forum for resolving that Claim; ***provided, however,*** **that this Arbitration Agreement also contains a waiver of both SHI's right and your right to commence or participate in any representative, class or collective actions, both in arbitration and in court.**

2. **Waiver of Right to Commence or Participate in Representative, Class or Collective Actions:** Subject to Paragraph 4 below, SHI agrees to neither commence nor participate in any representative, class or collective actions against You; and You agree to neither commence nor participate in any representative, class or collective actions against any of the SHI Parties, in each case either in arbitration or before any other adjudicative body including federal and state courts; and to the fullest extent permitted by law both SHI and You irrevocably waive and relinquish its and your right to commence or participate in any representative, class or collective actions (the "Waiver"). Accordingly, SHI and You agree that any Claims that are subject to this Arbitration Agreement shall be heard and decided by the arbitrator on an individual or multi-plaintiff basis only; representative, class or collective actions are not permitted and may not be asserted under or subject to this Arbitration Agreement; and the arbitrator shall not have the authority or jurisdiction to join or consolidate Claims of different parties into one proceeding, nor to hear the arbitration as a representative, class or collective action. However, notwithstanding anything in this Agreement to the contrary, the Waiver does not prohibit (i) the arbitrator from consolidating claims submitted by different individuals in a single arbitration proceeding, so long as the arbitrator does not certify (conditionally or otherwise) a representative, class or collective action that includes individuals who have not themselves previously submitted their own individuals claims; or (ii) either party from seeking public injunctive relief under applicable statutory law that provides for such relief.

3. Excluded from the application of this Arbitration Agreement, and thus from the definition of "Claims," are claims for unemployment compensation; claims under the National Labor Relations Act (to the extent provided for in that Act); claims for workers' compensation; and any other claim that is non-arbitrable under applicable law. Nothing herein precludes your pursuit, either individually or in concert with others, of any matters of concern or claims that You may have against a party to this Arbitration Agreement to the extent such matters or claims are submitted to and are brought before the National Labor Relations Board. Claims asserted under the federal Employee Retirement Income Security Act ("ERISA") are not subject to arbitration under this Arbitration Agreement or otherwise (unless the applicable "plan document" expressly provides for arbitration). Health plan-related claims alleging a violation of ERISA, an ERISA-covered health plan, or otherwise arising between an ERISA-covered health plan and any party subject to this Arbitration Agreement, shall not be subject to arbitration hereunder.

4. With the exception of those matters excluded from the definition of Claims as provided in the preceding paragraph, and except for the waiver of both SHI's right and your right to commence or participate in any representative, class or collective actions that is set forth below, this Arbitration Agreement shall be applicable to any and all Claims concerning any topic or subject, including but not limited to common law and statutory Claims; Claims for wages or other compensation due;

4

DocuSign Envelope ID: 9058F8D4-9386-46B6-B5B4-CB3B50B0271B



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

Claims for breach of any contract or covenant, express or implied; tort Claims; Claims of violation of laws forbidding discrimination, retaliation or harassment on the basis of race, color, religion, gender, age, national origin, disability or any other protected status; Claims for benefits (except as provided in the preceding paragraph); Claims for unfair competition and trade secret violations; and Claims for violation of any federal, state, county, municipal or other governmental constitution, statute, code, ordinance, regulation or public policy. Absent the express written consent of all parties, the arbitrator shall not have the power to consolidate Claims of different individuals into one proceeding, in any manner or capacity, as is more specifically described in Paragraphs 5 and 6 below. However, this Arbitration Agreement does not preclude either party from applying to a court of competent jurisdiction for provisional remedies such as, for example, temporary restraining orders or preliminary injunctions to the extent available under applicable law in the jurisdiction in which Claims are being arbitrated.

5.  You understand that if You elect to challenge the Waiver of the Right to Commence or Participate in Representative, Class or Collective Actions in this Arbitration Agreement (either individually or in concert with others), You will not be subject to discipline or retaliation by SHI for doing so. (However, if You lose such a challenge, You understand that You may be responsible for the payment of court costs and the other customary consequences of filing a losing case.) You further understand and acknowledge that (a) it is SHI's position that this Arbitration Agreement is enforceable, in its entirety, and that it can and will oppose any effort to challenge this Arbitration Agreement (including the Waiver), (b) SHI has not and does not waive its right to enforce the terms of the Waiver, and (c) SHI may lawfully oppose, seek dismissal or compel arbitration of any action or Claim challenging this Arbitration Agreement or the Waiver or attempting to bring any representative, class or collective Claim, whether such action or Claim is brought pursuant to the preceding sentence or otherwise. **If the Waiver is found to be inapplicable with respect to any Claim(s) or unenforceable with respect to any Claim(s) such that a class or collective action may be brought or participated in by a party to this Arbitration Agreement, any such representative, class or collective actions relating to such Claim(s) must be heard and determined through an appropriate court proceeding, and not in arbitration.**

6.  In addition to all pre-trial motions allowed by the applicable arbitration rules, the arbitrator shall permit reasonable discovery and shall expressly have the power to hear and decide demurrers, motions to dismiss, motions for summary judgment or adjudication, and any other motions by any party to the extent such motions would be allowed under applicable law; and the arbitrator shall apply the standards governing such motions or discovery under applicable law.

7.  Except as provided herein, the arbitration proceedings shall be conducted in accordance with the Judicial Arbitration and Mediation Services ("JAMS") Employment Arbitration Rules & Procedures in effect at the time any Claim is asserted in an arbitration proceeding, the current version of which can be found at https://www.jamsadr.com/rules-employment-arbitration (If You would like to review a copy of the current rules prior to signing the Offer Letter, please contact SHI's Human Resources Department. The arbitration shall be before a single arbitrator, who is an attorney or retired judge, and shall take place in the County where the main U.S. District Courthouse is located for the federal court district where the SHI office to which You report is located, and will be administered in accordance with the applicable arbitration rules and procedures of JAMS (except where the JAMS rules are contrary to applicable state or federal law or to the extent that this Arbitration Agreement contains provisions which are inconsistent with such rules or procedures, in which case the applicable state or federal law or the provision(s) of this Arbitration Agreement, provided that such provision of this Arbitration Agreement is consistent with applicable law, shall apply). Where required by applicable state law, the arbitration of disputes conducted under JAMS arbitration rules will be administered in accordance with applicable state law. If SHI and You cannot agree on an arbitrator, then the JAMS rules will govern selection.

8.  The parties understand and agree that SHI is engaged in transactions involving interstate commerce and that the Federal Arbitration Act ("FAA") shall govern the interpretation and enforcement of this Arbitration Agreement. This Arbitration Agreement may be enforced in a court of competent

5



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

jurisdiction pursuant to state law only to the extent that state law is not preempted by the FAA. To the extent that the Federal Arbitration Act either is inapplicable, or held not to require arbitration of a particular Claim, the laws of the state in which You are (or were last) employed with SHI that pertain to agreements to arbitrate shall apply. The substantive law (and the law of remedies, if applicable) of the state in which the arbitrator hears the Claim(s), or federal law, or both, shall be applicable to the Claim(s). The arbitrator shall maintain the confidentiality of the arbitration and the matters in arbitration to the maximum extent the law permits, and shall have the authority to make appropriate rulings to safeguard that confidentiality. SHI and You also agree to maintain the confidentiality of the arbitration and the matters in arbitration to the maximum extent the law permits.

9.  SHI will pay the arbitrator's fees and any other type of arbitration fees or costs to the extent that they are in excess of the fees and costs that You would be required to bear if the Claim was brought in court. However, You will not be required to pay any fee or costs if such a payment would invalidate this Agreement, and SHI will instead make that payment. Each side shall pay that side's own costs and attorney fees, unless the arbitrator rules otherwise. If the law applicable to the Claims being arbitrated affords the prevailing party attorney fees and costs, then the arbitrator shall apply the same standards a court would apply to award such fees and costs. If there is a dispute as to whether applicable law requires that SHI pay all of the arbitrator's fees and/or any other arbitration fees and/or costs or related to which party is the prevailing party in the arbitration or as to the allocation of any of the arbitrator's fees and/or any other arbitration related fees or costs, the arbitrator shall decide such issues.

10. The arbitrator shall have the power to award any type of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to attorneys' fees and punitive damages when such damages and fees are available under the applicable statute and/or judicial authority. However, the arbitrator shall not have the power to commit any of the following types of legal error: (1) errors of law or legal reasoning, (2) finding of fact unsupported by substantial evidence, or (3) abuses of discretion.

11. The arbitrator will issue a detailed written decision and award, resolving the dispute. The arbitrator's written decision and award shall decide all issues submitted and set forth the legal principle(s) supporting each part of the decision, with factual findings, reasons given and evidence cited to support the award. The decision and award is subject to review for legal error, confirmation, corrector or vacatur only in a state court of competent jurisdiction pursuant to state law.

12. To the extent permitted by law, the arbitrator, and not any federal, state or local court or agency, shall have the exclusive authority to resolve any issue relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement (including but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable), or any issue relating to whether a Claim is subject to arbitration under this Arbitration Agreement, by applying the terms of this Arbitration Agreement to any such dispute; *provided, however,* that any party may bring an action in any court of competent jurisdiction to compel arbitration in accordance with the terms of this Arbitration Agreement or in response to a Claim filed by a party in a court that the responding party contends has been waived or is subject to arbitration under terms of this Arbitration Agreement.

13. This Arbitration Agreement is the complete agreement between SHI and You on the subject of the arbitration of disputes and the subject of the Waiver, and supersedes any prior or contemporaneous oral or written agreement on the subject. **Please note that if this Arbitration Agreement is held by an arbitrator, court or administrative agency to be unenforceable or invalid (in its entirety), any prior agreement by You to arbitrate disputes with SHI, and/or prior agreement to waive your right to commence or participate in representative, class or collective actions, will remain in full force and effect.** If any term of this Arbitration Agreement is determined for any reason to be unenforceable, in whole or in part, such term or portion thereof shall be deemed stricken and the balance of this Arbitration Agreement shall continue in full force and effect. This Arbitration Agreement shall survive the termination of your employment with SHI and shall apply to any and



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

all Claims that may arise at any time between SHI and You commencing upon the earlier of your initial application for employment with SHI or your signing of the Offer Letter through any time in the unlimited future, including but not limited to any Claims arising subsequent to the conclusion and final cessation of your employment, or based upon or relating to agreements for severance pay or pertaining to other post-employment payments, commissions, agreements, benefits or any other matters between SHI and You.  This Arbitration Agreement can only be revoked or modified by a writing signed by the parties that specifically states an intent to revoke or modify this Arbitration Agreement.

**You have been advised of the right to consult with counsel regarding this Agreement.**

**YOU AND SHI HAVE READ, UNDERSTOOD, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS AND UNDERSTAND THAT, BY AGREEING TO THIS BINDING ARBITRATION AGREEMENT, BOTH YOU AND SHI WAIVE ANY RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN ANY CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION.**

EMPLOYEE                                               SHI INTERNATIONAL CORP.

Daniel Clark                                           Caitlyn Smith
_____                                    _____
Print Name                                             Print Name

*Daniel Clark*                                         *Caitlyn Smith*      *Lauren Albertin*
_____                                    _____
Signature                                              Signature

8/13/2019                                              8/13/2019
_____                                    _____
Date                                                   Date

                                                       Caitlyn Smith
                                                       _____
                                                       Corporate Recruiting Specialist

7

DocuSign Envelope ID: 9D58F8D4-0986-45B6-BE94-CB3B50B0271B



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

## AGREEMENT REGARDING TRADE SECRETS,
## CONFIDENTIAL INFORMATION, NON-SOLICITATION,
## AND NON-RECRUITMENT

This Agreement is made effective as of   9/2/2019   , between SHI International Corp. (hereinafter "SHI"),  and Daniel Clark                     ;256 Trellis Blvd                     ,Leander, TX 78641      (hereinafter "Employee").

In consideration of SHI's                     Offer of Employment accepted by Employee, or in consideration of continued employment with SHI, as well as the receipt of SHI's trade secrets and/or confidential information in connection with such employment, Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Trade Secrets, Non-Solicitation, and Non-Recruitment (hereafter referred to as "the Agreement").

**1.    Agreement Does Not Alter At-Will Employment Status**

Employee understands that he/she is an at-will employee, and that he/she may be terminated at any time, with or without cause and with or without notice, for any lawful reason.  Employee understands that this Agreement does not alter his/her at-will employment status and that Employee's at-will status may not be altered by any oral or written representations other than a written contract of employment signed by Employee and SHI's then-current Director of Human Resources.  Employee further understands that this Agreement does not provide or entitle him/her to any severance or other compensation upon termination of his/her employment.

**2.    Prohibition on Using SHI Trade Secrets and Confidential Information**

2.1    Employee recognizes and acknowledges that, during his/her employment with SHI, he/she will have access to and make use of SHI's Trade Secrets and Confidential Information (defined below). Employee acknowledges and understands that such Trade Secrets and Confidential Information constitute valuable and unique assets of SHI, access to and knowledge of which are essential to the performance of the Employee's duties for SHI.

2.2    Trade Secret means any information, including but not limited to, technical or non-technical data, formulas, patterns, compilations, programs, plans, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and/or a list of actual or potential customers that (1) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use; (2) is the subject of reasonable efforts under the circumstances to maintain its secrecy; and (3) otherwise satisfies the standards under the Uniform Trade Secrets Act ("UTSA"), or other applicable federal and state law.

2.3    Confidential Information means information disclosed to or known by an employee as a consequence or through his/her association with SHI, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or actual/potential competitors of SHI and which includes but is not limited to:  any information that is valuable to SHI's business, including, but not limited to costs, margin, pricing information, financial information regarding SHI and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, SHI's commission structure or other payroll information, and similar types of information entrusted to SHI by third parties.  Confidential Information shall not include any information which is or becomes publicly available through no act of Employee.

2.4    Except as required to perform the services required under this Agreement, Employee shall not, during his/her employment or any time thereafter, disclose, in whole or in part, SHI's Trade Secrets or Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Trade Secrets or Confidential Information for his/her own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

DocuSign Envelope ID: 9D58F8D4-9386-46B6-BF94-CB3F50B0271B



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

2.5    Employee shall, prior to or upon leaving SHI, or at any time upon SHI's request, deliver to SHI all SHI property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to Employee during the course of his/her employment.

2.6    Employee shall not acquire any intellectual property rights under this Agreement with respect to SHI information or property, except the limited right to use set out above.  Employee acknowledges that, as between SHI and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times will be) the property of SHI, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or other materials during the period of this Agreement.

**3.    Representations Regarding Information from Third Parties and Obligations to Former Employers**

3.1    Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer or other entity that would or could restrict or prohibit Employee from being employed by SHI or from performing his/her duties for SHI.   Employee further acknowledges that to the extent Employee has an obligation to any former employer or other entity not to disclose trade secrets and/or other confidential information, Employee intends to honor such obligation at all times while in the employ of SHI.  Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of SHI, or disclose to any person employed by or otherwise associated with SHI, any trade secrets or other confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party.  Employee represents and warrants that, prior to commencing employment with SHI, Employee has returned all computerized information belonging to any former employer to such former employer.  Employee agrees that Employee will not transfer to SHI's computers any pre-existing data or information without the express consent of SHI's IT Department.

3.2    As a condition of employment, all sales representatives are required to disclose to SHI the existence of any non-compete, non-solicitation, confidentiality and/or other post-employment restrictive covenants previously entered into by them with any third party  It is the sales representative's responsibility to comply with the provisions of any agreement to which he/she is a party.  In no event will SHI accept responsibility for the actions of, nor will SHI defend, an employee who has failed to comply with the terms of that employee's agreement with a previous employer or other third party.

**4.    Non-Solicitation of Clients and Customers**

Employee recognizes and acknowledges that hi/hers work as an employee of SHI creates a relationship of trust and confidence between Employee and SHI.  Employee acknowledges that this market is very competitive and that because of these factors and because of the Trade Secrets, Confidential Information, and customer lists which SHI has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to SHI's subscribers, customers, and accounts, Employee agrees that, during his/her employment and for a term of one (1) year after termination of employment, whether his/her termination is voluntary or involuntary, Employee will not solicit business from, or provide services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed by SHI.  This Non-Solicitation clause shall not prevent Employee from soliciting business or providing services that are not provided by SHI at the time of the solicitation or provision of services.

**5.    Non-Recruitment of Employees**

Employee understands that other employees of SHI are bound by agreements similar to this Agreement, and further covenants and agrees that during Employee's employment and for a period of one (1) year following termination of his/her employment with SHI for any reason, Employee will not for himself/herself or on behalf of any other person or entity, solicit or attempt to solicit other employees of SHI to discontinue their employment with SHI.

DocuSign Envelope ID: 90F8F8D4-0986-46B6-B594-CB3959B0271B



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

**6.**    **Enforcement**

6.1    If Employee breaches or threatens to breach the terms of this Agreement, SHI may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief. Employee acknowledges that SHI would be irreparably injured upon Employee's breach of this Agreement, and that it may be difficult to ascertain with certainty the amount of money damages SHI will suffer. Provided further, however, that nothing herein shall preclude SHI from seeking a recoupment of its actual damages should they be ascertainable. Employee shall reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

6.2    Nothing in this Agreement shall restrict, limit, or prohibit SHI's right and freedom to proceed against Employee under tort or pursuant to statute to redress any harm to SHI that may be caused by any breach by Employee of any legal duty.

**7.**    **Arbitration/Venue Selection**

Any and all claims, controversies, or disputes arising out of or in connection with this Agreement shall be subject to arbitration by a single arbitrator pursuant to the Judicial Arbitration & Mediation Services ("JAMS") Employment Arbitration Rules and Procedures in the County where the main United States District Courthouse is located for the federal court district where the SHI office to which Employee reports is located and pursuant to the terms of any separate Agreement to Arbitrate Employee may have with SHI. Notwithstanding the foregoing, it is expressly agreed that either Party – at any time without first having to file any demand for arbitration – may bring a claim for temporary, preliminary, emergency, or other interim injunctive relief, pending the outcome of arbitration as well as bring any claim for permanent equitable relief awarded in conjunction therewith, in any court of competent jurisdiction.

**8.**    **Tolling Period**

In the event Employee breaches any of the covenants contained herein and SHI seeks compliance with those covenants by judicial proceedings, the time periods during which Employee is restricted by said covenants shall be extended by the time during which Employee is found by a court of competent jurisdiction to have been in breach of said covenants, not to exceed two (2) years.

**9.**    **General Provisions**

9.1    This Agreement sets forth the entire understanding of the parties regarding Confidential Information, Trade Secrets, Non-solicitation, and Non-Recruitment and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto.

9.2    This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey.

9.3    In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement:

Daniel Clark
_____          8/13/2019
_____
Print Name                                              Date

*Daniel Clark*
_____
Signature

On behalf of SHI International Corp.

*Caitlyn Smith*
_____          8/13/2019
_____
Caitlyn Smith                                           Date
Corp Recruiting

10

# EXHIBIT A-3



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

12/3/2021

To:       Matthew Monte
From:    Corp Recruiting
Re:       Enterprise Account Executive

Dear Matthew,

SHI International Corp is excited to offer you the position of Enterprise Account Executive reporting to Enterprise District Sales Manager, Austin Henson in the Corp Sales – Enterprise Department.

If you accept the terms of this offer, your start date will be January 3rd, 2022.

SHI International Corp reserves the right to postpone or change the start date of your employment with our organization due to the Coronavirus pandemic impact to our business operations. We will determine a new start date based on our business.

If you accept the offer, your compensation will consist of an annual base salary plus commissions earned. Please see page 2 for the compensation summary. In addition, you will be required to relocate to the Dallas, TX area no later than January 31st, 2022.

Please be advised that Attendance policies vary per department and state of residence. Please review the Attendance policy in the SHI Handbook.

All business, commissions and/or earnings based on your previous role as a Cmcrl Inside Account Executive – Named will be final as of Friday December 31st, 2021. You will receive final commissions/earnings for this role in the December 2021 pay January 2022 period (DPJ22).

In addition, you will be paid out on the following:

| Quotation # | Close by Date | Gross Margin |
|---|---|---|
| 21246759 | Expected by end of January 2022 | $246K |

Upon acceptance of offer, you are expected to continue to meet your current job performance expectations. Should job performance and/or responsibilities not be upheld during the transition period, SHI reserves the right to postpone, suspend, or retract transition to new position.

The Agreement Regarding Confidential Information, Non-Solicitation, And Arbitration of Dispute that you signed with SHI International Corp will remain in effect.

Please be advised at all times, your employment with SHI International Corp will be on an "at-will" basis. "At-will" employment means that either you or SHI may terminate your employment at any time, for any reason not prohibited by law, with or without notice.

SHI will offer a one-time Moving Bonus of $8,000 to be paid out via payroll in your first pay period. This Moving Bonus is contingent upon the completion of twelve months of employment from the start date listed above. Should you voluntarily or involuntarily leave SHI or the position referred to in this offer prior the completion of twelve months, you will be required to refund the entire amount paid out to SHI at the time of termination.

Sincerely,                                                    I accept the offer.

*Victoria Broxton*                                          *Matthew Monte*

Victoria Broxton                                           Matthew Monte
Corp Recruiter                                             Date: 12/6/2021

*AH*

Austin Henson
Hiring Manager

cc:  Thai Lee, Hal Jagger, Eric Guthrie

1



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

**SHI Compensation Summary**

**Candidate Name:** Matthew Monte

**Base Salary:** See below.

|  | Base Salary |
|---|---|
| January 2022 – December 2022 | $100,000 |
| January 2023 – December 2023 | $75,000 |
| January 2024 – December 2024 | $50,000 |
| January 2025 → | $50,000 |

Gross Margin (GM) is the difference between sales revenue and cost within a sales period, plus/minus any adjustments. Adjustments to GM include, but are not limited to:  freight, credit card fees, the cost of dedicated sales operations/support staff, customer-specific administrative/contract fees and rebates, interest charges on unpaid customer invoices or unused inventory, rebates from partners/manufacturers, cost of unreturnable/unsellable inventory, and assessment on total sales revenue.  If you do have any questions or concerns regarding calculating GM and/or adjustments, we encourage you to consult with your manager.

**Monthly Commission Payout on Gross Margin (GM)**

|  | Commission Rate on GM |
|---|---|
| January 2022 pay February 2022 – May 2022 pay June 2022 | 50% Flat Rate |
| June 2022 pay July 2022 – December 2022 pay January 2023 | 40% Flat Rate |
| January 2023 pay February 2023 – May 2023 pay June 2023 | 30% Flat Rate |
| June 2023 pay July 2023 – May 2024 pay June 2024 | 25% Flat Rate |
| Starting June 2024 pay July 2024 | 10/25% Standard Rates |

Spiffs - Eligible @ 100%

Flat Rates:
- % of all GM

Standard Rates:
- 0-100% of quota* = 10% GM
- 100%+ = 25% GM

Example: (10/25% Plan)
Qtr. GM goal = $60K.
AE produces $90k.  AE makes $6000 on first $60k and $7500 remaining $30k above plan.  AE makes $13,500 this Qtr. in commissions + base salary.
*Quota is set by management

**Acquisition Bonus:**
You are eligible to receive an additional bonus for acquiring new Enterprise Buying Accounts. Details below:
- Additional bonus of $10,000, is received for every 10th order on a New Buying Account
- The bonus is paid out in the month following the 10th order for a New Buying Account for the employee
- The account must be a valid Enterprise profile to qualify. All Enterprise profiles are identified & qualified by the Sales Operations team

2



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

## AGREEMENT REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NON-SOLICITATION, AND NON-RECRUITMENT

This Agreement is made effective as of 1/3/2022, between SHI International Corp. (hereinafter "SHI"), and Matthew Monte; 11710 Bruce Jenner Ln, Austin, TX 78748 (hereinafter "Employee").

In consideration of SHI's 12/3/2021 Offer of Employment accepted by Employee, or in consideration of continued employment with SHI, as well as the receipt of SHI's trade secrets and/or confidential information in connection with such employment, Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Trade Secrets, Non-Solicitation, and Non-Recruitment (hereafter referred to as "the Agreement").

**1.**    **Agreement Does Not Alter At-Will Employment Status**

Employee understands that he/she is an at-will employee, and that he/she may be terminated at any time, with or without cause and with or without notice, for any lawful reason. Employee understands that this Agreement does not alter his/her at-will employment status and that Employee's at-will status may not be altered by any oral or written representations other than a written contract of employment signed by Employee and SHI's then-current Director of Human Resources. Employee further understands that this Agreement does not provide or entitle him/her to any severance or other compensation upon termination of his/her employment.

**2.**    **Prohibition on Using SHI Trade Secrets and Confidential Information**

2.1    Employee recognizes and acknowledges that, during his/her employment with SHI, he/she will have access to and make use of SHI's Trade Secrets and Confidential Information (defined below). Employee acknowledges and understands that such Trade Secrets and Confidential Information constitute valuable and unique assets of SHI, access to and knowledge of which are essential to the performance of the Employee's duties for SHI.

2.2    Trade Secret means any information, including but not limited to, technical or non-technical data, formulas, patterns, compilations, programs, plans, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and/or a list of actual or potential customers that (1) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use; (2) is the subject of reasonable efforts under the circumstances to maintain its secrecy; and (3) otherwise satisfies the standards under the Uniform Trade Secrets Act ("UTSA"), or other applicable federal and state law.

2.3    Confidential Information means information disclosed to or known by an employee as a consequence or through his/her association with SHI, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or actual/potential competitors of SHI and which includes but is not limited to: any information that is valuable to SHI's business, including, but not limited to costs, margin, pricing information, financial information regarding SHI and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, SHI's commission structure or other payroll information, and similar types of information entrusted to SHI by third parties. Confidential Information shall not include any information which is or becomes publicly available through no act of Employee.

2.4    Except as required to perform the services required under this Agreement, Employee shall not, during his/her employment or any time thereafter, disclose, in whole or in part, SHI's Trade Secrets or Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Trade Secrets or Confidential Information for his/her own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

2.5    Employee shall, prior to or upon leaving SHI, or at any time upon SHI's request, deliver to SHI all SHI property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to Employee during the course of his/her employment.

3



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

2.6    Employee shall not acquire any intellectual property rights under this Agreement with respect to SHI information or property, except the limited right to use set out above.  Employee acknowledges that, as between SHI and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times will be) the property of SHI, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or other materials during the period of this Agreement.

### 3.    Representations Regarding Information from Third Parties and Obligations to Former Employers

3.1    Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer or other entity that would or could restrict or prohibit Employee from being employed by SHI or from performing his/her duties for SHI.  Employee further acknowledges that to the extent Employee has an obligation to any former employer or other entity not to disclose trade secrets and/or other confidential information, Employee intends to honor such obligation at all times while in the employ of SHI.  Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of SHI, or disclose to any person employed by or otherwise associated with SHI, any trade secrets or other confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party. Employee represents and warrants that, prior to commencing employment with SHI, Employee has returned all computerized information belonging to any former employer to such former employer.  Employee agrees that Employee will not transfer to SHI's computers any pre-existing data or information without the express consent of SHI's IT Department.

3.2    As a condition of employment, all sales representatives are required to disclose to SHI the existence of any non-compete, non-solicitation, confidentiality and/or other post-employment restrictive covenants previously entered into by them with any third party It is the sales representative's responsibility to comply with the provisions of any agreement to which he/she is a party.  In no event will SHI accept responsibility for the actions of, nor will SHI defend, an employee who has failed to comply with the terms of that employee's agreement with a previous employer or other third party.

### 4.    Non-Solicitation of Clients and Customers

Employee recognizes and acknowledges that his/her work as an employee of SHI creates a relationship of trust and confidence between Employee and SHI.  Employee acknowledges that this market is very competitive and that because of these factors and because of the Trade Secrets, Confidential Information, and customer lists which SHI has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to SHI's subscribers, customers, and accounts, Employee agrees that, during his/her employment and for a term of one (1) year after termination of employment, whether his/her termination is voluntary or involuntary, Employee will not solicit business from, or provide services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed by SHI.  This Non-Solicitation clause shall not prevent Employee from soliciting business or providing services that are not provided by SHI at the time of the solicitation or provision of services.

### 5.    Non-Recruitment of Employees

Employee understands that other employees of SHI are bound by agreements similar to this Agreement, and further covenants and agrees that during Employee's employment and for a period of one (1) year following termination of his/her employment with SHI for any reason, Employee will not for himself/herself or on behalf of any other person or entity, solicit or attempt to solicit other employees of SHI to discontinue their employment with SHI.

### 6.    Enforcement

6.1    If Employee breaches or threatens to breach the terms of this Agreement, SHI may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief.  Employee acknowledges that SHI would be irreparably injured upon Employee's breach of this Agreement, and that it may be difficult to ascertain with certainty the amount of money damages SHI will suffer.  Provided further, however, that nothing herein shall preclude SHI from seeking a recoupment of its actual damages should they be ascertainable.  Employee shall reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

6.2     Nothing in this Agreement shall restrict, limit, or prohibit SHI's right and freedom to proceed against Employee under tort or pursuant to statute to redress any harm to SHI that may be caused by any breach by Employee of any legal duty.

**7.     Arbitration/Venue Selection**

Any and all claims, controversies, or disputes arising out of or in connection with this Agreement shall be subject to arbitration by a single arbitrator pursuant to the Judicial Arbitration & Mediation Services ("JAMS") Employment Arbitration Rules and Procedures in the County where the main United States District Courthouse is located for the federal court district where the SHI office to which Employee reports is located and pursuant to the terms of any separate Agreement to Arbitrate Employee may have with SHI.  Notwithstanding the foregoing, it is expressly agreed that either Party – at any time without first having to file any demand for arbitration – may bring a claim for temporary, preliminary, emergency, or other interim injunctive relief, pending the outcome of arbitration as well as bring any claim for permanent equitable relief awarded in conjunction therewith, in any court of competent jurisdiction.

**8.     Tolling Period**

In the event Employee breaches any of the covenants contained herein and SHI seeks compliance with those covenants by judicial proceedings, the time periods during which Employee is restricted by said covenants shall be extended by the time during which Employee is found by a court of competent jurisdiction to have been in breach of said covenants, not to exceed two (2) years.

**9.     General Provisions**

9.1     This Agreement sets forth the entire understanding of the parties regarding Confidential Information, Trade Secrets, Non-solicitation, and Non-Recruitment and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto.

9.2     This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey.

9.3     In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement:

Matthew Monte                                    12/6/2021
_____        _____
Print Name                                              Date

*Matthew Monte*
_____
Signature

On behalf of SHI International Corp.

Victoria Broxton     Corp Recruiting Coordinator 12/6/2021
_____        _____
Print Name and Title                                Date

*Victoria Broxton*
_____
Signature

5



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

**Job Title:** Enterprise Account Executive

**Job Summary:**
We are looking for someone who is looking to build a long-term career with us. Specifically, someone driven, creative and passionate about selling Technology to join or Field Sales Team. As an Enterprise Account Executive, you will be responsible for bringing in new business and developing strong customer relationships with Mid-Market Enterprise businesses. With the support of our field-based Solution Architects and Subject Matter Experts, you will be assisting customers by helping them select, deploy, and manage their technology. With our ongoing training, you will be able to offer customers in-depth technology solutions across a wide variety of IT products and services.

This position is a remote position with a home office set up, however may be required to report in office to support business needs. This is an outside sales position. As such, the Account Executive is expected to spend 50 percent or more of the time outside of an office interfacing and building relationships with existing and potential SHI customers, identifying new opportunities, networking, and following up on potential leads. The Account Executive must be self-motivated and comfortable working with limited direction and oversight.

**Responsibilities**:
**As an Enterprise Account Executive, you can expect to:**

- **Identify & Grow Accounts –** Gain an understanding of your accounts wants and needs within their IT environment to show how technology can improve their business. Ideally, providing them with cost effective solutions across the Cloud, Data Center, Networking, Unified Communications, Commodity Hardware & Software, and Security space.
- **Develop Relationships -** Build long-term partnerships with Vendors & Internal Resources to become the #1 Solution Provider for all your customers.
- **Co-Sell -** Utilize our partners and resources to maximize growth in your designated territory.
- **Provide ongoing education –** Keep customers updated on emerging and existing technologies. Act as a trusted advisor to your customers and look for areas where SHI can fit in to ensure they are implementing the right technologies for their business.

**Unique Requirements:**
- Position requires minimum 50% time outside of an office setting meeting with existing and potential customers
- Position requires travel to company events and meetings

**Additional Information**
- FLSA Status: Exempt
- *Equal Employment Opportunity – M/F/Disability/Protected Veteran Status*

6

# EXHIBIT A-4




## AGREEMENT TO ARBITRATE (USA)

This Arbitration Agreement("Agreement")is made effective 11/8/2021 by and between John C. Mulloy ("You") and SHI International Corp. ("SHI").

1.    You and SHI mutually and voluntarily agree and consent to resolve by final and binding arbitration any and all disputes, claims or controversies of any kind or nature, including but not limited to such matters arising from, related to, or in connection with, your employment with SHI or its termination, subject only to the express exceptions set forth in Paragraph 3 below) (collectively, "Claims"), regardless of when Claims arise, by final and binding arbitration before a single neutral arbitrator. This agreement to arbitrate (this "Arbitration Agreement") shall apply to disputes involving You, on the one hand, and SHI and/or its respective current and former officers, directors, shareholders, employees, agents, assigns and/or parent, subsidiaries, successors and affiliated entities, on the other hand (collectively, the "SHI Parties"). By agreeing to submit a Claim to arbitration, neither You nor SHI is giving up any substantive right with respect to that Claim; this Arbitration Agreement simply governs the forum for resolving that Claim; ***provided, however, that this Arbitration Agreement also contains a waiver of both SHI's right and your right to commence or participate in any representative, class or collective actions, both in arbitration and in court.***

2.    **Waiver of Right to Commence or Participate in Representative, Class or Collective Actions:** Subject to Paragraph 4 below, SHI agrees to neither commence nor participate in any representative, class or collective actions against You; and You agree to neither commence nor participate in any representative, class or collective actions against any of the SHI Parties, in each case either in arbitration or before any other adjudicative body including federal and state courts; and to the fullest extent permitted by law both SHI and You irrevocably waive and relinquish its and your right to commence or participate in any representative, class or collective actions (the "Waiver"). Accordingly, SHI and You agree that any Claims that are subject to this Arbitration Agreement shall be heard and decided by the arbitrator on an individual or multi-plaintiff basis only; representative, class or collective actions are not permitted and may not be asserted under or subject to this Arbitration Agreement; and the arbitrator shall not have the authority or jurisdiction to join or consolidate Claims of different parties into one proceeding, nor to hear the arbitration as a representative, class or collective action. However, notwithstanding anything in this Agreement to the contrary, the Waiver does not prohibit (i) the arbitrator from consolidating claims submitted by different individuals in a single arbitration proceeding, so long as the arbitrator does not certify (conditionally or otherwise) a representative, class or collective action that includes individuals who have not themselves previously submitted their own individuals claims; or (ii) either party from seeking public injunctive relief under applicable statutory law that provides for such relief.

3.    Excluded from the application of this Arbitration Agreement, and thus from the definition of "Claims," are claims for unemployment compensation; claims under the National Labor Relations Act (to the extent provided for in that Act); claims for workers' compensation; and any other claim that is non-arbitrable under applicable law. Nothing herein precludes your pursuit, either individually or in concert with others, of any matters of concern or claims that You may have against a party to this Arbitration Agreement to the extent such matters or claims are submitted to and are brought before the National Labor Relations Board. Claims asserted under the federal Employee Retirement Income Security Act ("ERISA") are not subject to arbitration under this Arbitration Agreement or otherwise (unless the applicable "plan document" expressly provides for arbitration). Health plan-related claims alleging a violation of ERISA, an ERISA-covered health plan, or otherwise arising between an ERISA-covered health plan and any party subject to this Arbitration Agreement, shall not be subject to arbitration hereunder.

4.    With the exception of those matters excluded from the definition of Claims as provided in the preceding paragraph, and except for the waiver of both SHI's right and your right to commence or participate in any representative, class or collective actions that is set forth below, this Arbitration Agreement shall be applicable to any and all Claims concerning any topic or subject, including but not limited to common law and statutory Claims; Claims for wages or other compensation due; Claims for breach of any contract or covenant, express or implied; tort Claims; Claims of violation of laws forbidding discrimination, retaliation or harassment on the basis of race, color, religion, gender, age, national origin, disability or any other protected status; Claims for benefits (except as provided in the preceding paragraph); Claims for unfair competition and trade secret violations; and Claims for violation of any federal, state, county, municipal or other governmental constitution, statute, code, ordinance, regulation or public policy.    Absent



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

the express written consent of all parties, the arbitrator shall not have the power to consolidate Claims of different individuals into one proceeding, in any manner or capacity, as is more specifically described in Paragraphs 5 and 6 below. However, this Arbitration Agreement does not preclude either party from applying to a court of competent jurisdiction for provisional remedies such as, for example, temporary restraining orders or preliminary injunctions to the extent available under applicable law in the jurisdiction in which Claims are being arbitrated.

5. You understand that if You elect to challenge the Waiver of the Right to Commence or Participate in Representative, Class or Collective Actions in this Arbitration Agreement (either individually or in concert with others), You will not be subject to discipline or retaliation by SHI for doing so. (However, if You lose such a challenge, You understand that You may be responsible for the payment of court costs and the other customary consequences of filing a losing case.) You further understand and acknowledge that (a) it is SHI's position that this Arbitration Agreement is enforceable, in its entirety, and that it can and will oppose any effort to challenge this Arbitration Agreement (including the Waiver), (b) SHI has not and does not waive its right to enforce the terms of the Waiver, and (c) SHI may lawfully oppose, seek dismissal or compel arbitration of any action or Claim challenging this Arbitration Agreement or the Waiver or attempting to bring any representative, class or collective Claim, whether such action or Claim is brought pursuant to the preceding sentence or otherwise. **If the Waiver is found to be inapplicable with respect to any Claim(s) or unenforceable with respect to any Claim(s) such that a class or collective action may be brought or participated in by a party to this Arbitration Agreement, any such representative, class or collective actions relating to such Claim(s) must be heard and determined through an appropriate court proceeding, and not in arbitration.**

6. In addition to all pre-trial motions allowed by the applicable arbitration rules, the arbitrator shall permit reasonable discovery and shall expressly have the power to hear and decide demurrers, motions to dismiss, motions for summary judgment or adjudication, and any other motions by any party to the extent such motions would be allowed under applicable law; and the arbitrator shall apply the standards governing such motions or discovery under applicable law.

7. Except as provided herein, the arbitration proceedings shall be conducted in accordance with the Judicial Arbitration and Mediation Services ("JAMS") Employment Arbitration Rules & Procedures in effect at the time any Claim is asserted in an arbitration proceeding, the current version of which can be found at https://www.jamsadr.com/rules-employment-arbitration (If You would like to review a copy of the current rules prior to signing the Offer Letter, please contact SHI's Human Resources Department. The arbitration shall be before a single arbitrator, who is an attorney or retired judge, and shall take place in the County where the main U.S. District Courthouse is located for the federal court district where the SHI office to which You report is located, and will be administered in accordance with the applicable arbitration rules and procedures of JAMS (except where the JAMS rules are contrary to applicable state or federal law or to the extent that this Arbitration Agreement contains provisions which are inconsistent with such rules or procedures, in which case the applicable state or federal law or the provision(s) of this Arbitration Agreement, provided that such provision of this Arbitration Agreement is consistent with applicable law, shall apply). Where required by applicable state law, the arbitration of disputes conducted under JAMS arbitration rules will be administered in accordance with applicable state law. If SHI and You cannot agree on an arbitrator, then the JAMS rules will govern selection.

8. The parties understand and agree that SHI is engaged in transactions involving interstate commerce and that the Federal Arbitration Act ("FAA") shall govern the interpretation and enforcement of this Arbitration Agreement. This Arbitration Agreement may be enforced in a court of competent jurisdiction pursuant to state law only to the extent that state law is not preempted by the FAA. To the extent that the Federal Arbitration Act either is inapplicable, or held not to require arbitration of a particular Claim, the laws of the state in which You are (or were last) employed with SHI that pertain to agreements to arbitrate shall apply. The substantive law (and the law of remedies, if applicable) of the state in which the arbitrator hears the Claim(s), or federal law, or both, shall be applicable to the Claim(s). The arbitrator shall maintain the confidentiality of the arbitration and the matters in arbitration to the maximum extent the law permits, and shall have the authority to make appropriate rulings to safeguard that confidentiality. SHI and You also agree to maintain the confidentiality of the arbitration and the matters in arbitration to the maximum extent the law permits.

9. SHI will pay the arbitrator's fees and any other type of arbitration fees or costs to the extent that they are in excess of the fees and costs that You would be required to bear if the Claim was brought in court. However, You will not   be



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

required to pay any fee or costs if such a payment would invalidate this Agreement, and SHI will instead make that payment. Each side shall pay that side's own costs and attorney fees, unless the arbitrator rules otherwise. If the law applicable to the Claims being arbitrated affords the prevailing party attorney fees and costs, then the arbitrator shall apply the same standards a court would apply to award such fees and costs. If there is a dispute as to whether applicable law requires that SHI pay all of the arbitrator's fees and/or any other arbitration fees and/or costs or related to which party is the prevailing party in the arbitration or as to the allocation of any of the arbitrator's fees and/or any other arbitration related fees or costs, the arbitrator shall decide such issues.

10. The arbitrator shall have the power to award any type of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to attorneys' fees and punitive damages when such damages and fees are available under the applicable statute and/or judicial authority. However, the arbitrator shall not have the power to commit any of the following types of legal error:  (1) errors of law or legal reasoning, (2) finding of fact unsupported by substantial evidence, or (3) abuses of discretion.

11. The arbitrator will issue a detailed written decision and award, resolving the dispute.  The arbitrator's written decision and award shall decide all issues submitted and set forth the legal principle(s) supporting each part of the decision, with factual findings, reasons given and evidence cited to support the award. The decision and award is subject to review for legal error, confirmation, corrector or vacatur only in a state court of competent jurisdiction pursuant to state law.

12. To the extent permitted by law, the arbitrator, and not any federal, state or local court or agency, shall have the exclusive authority to resolve any issue relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement (including but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable), or any issue relating to whether a Claim is subject to arbitration under this Arbitration Agreement, by applying the terms of this Arbitration Agreement to any such dispute; *provided, however,* that any party may bring an action in any court of competent jurisdiction to compel arbitration in accordance with the terms of this Arbitration Agreement or in response to a Claim filed by a party in a court that the responding party contends has been waived or is subject to arbitration under terms of this Arbitration Agreement.

13. This Arbitration Agreement is the complete agreement between SHI and You on the subject of the arbitration of disputes and the subject of the Waiver, and supersedes any prior or contemporaneous oral or written agreement on the subject. **Please note that if this Arbitration Agreement is held by an arbitrator, court or administrative agency to be unenforceable or invalid (in its entirety), any prior agreement by You to arbitrate disputes with SHI, and/or prior agreement to waive your right to commence or participate in representative, class or collective actions, will remain in full force and effect.** If any term of this Arbitration Agreement is determined for any reason to be unenforceable, in whole or in part, such term or portion thereof shall be deemed stricken and the balance of this Arbitration Agreement shall continue in full force and effect.  This Arbitration Agreement shall survive the termination of your employment with SHI and shall apply to any and all Claims that may arise at any time between SHI and You commencing upon the earlier of your initial application for employment with SHI or your signing of the Offer Letter through any time in the unlimited future, including but not limited to any Claims arising subsequent to the conclusion and final cessation of your employment, or based upon or relating to agreements for severance pay or pertaining to other post-employment payments, commissions, agreements, benefits or any other matters between SHI and You. This Arbitration Agreement can only be revoked or modified by a writing signed by the parties that specifically states an intent to revoke or modify this Arbitration Agreement.



SHI International Corp.

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

You have been advised of the right to consult with counsel regarding this Agreement.

**YOU AND SHI HAVE READ, UNDERSTOOD, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS AND UNDERSTAND THAT, BY AGREEING TO THIS BINDING ARBITRATION AGREEMENT, BOTH YOU AND SHI WAIVE ANY RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN ANY CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION.**

EMPLOYEE                                                    SHI INTERNATIONAL CORP.

John C. Mulloy                                             Hannah Ball
_____                          _____
Print Name                                                  Commercial Recruiting Specialist

DocuSigned by:                                          DocuSigned by:
*John C. Mulloy*                                          *Hannah Ball*
_____                          _____
11A2897C9420...                                          96DA3DB9D417...
Signature                                                    Signature

10/17/2021                                                  10/15/2021
_____                                      _____
Date                                                            Date



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

**AGREEMENT REGARDING TRADE SECRETS,
CONFIDENTIAL INFORMATION, NON-SOLICITATION,
AND NON-RECRUITMENT**

This Agreement is made effective as of 11/8/2021, between SHI International Corp. (hereinafter "SHI"), and John C. Mulloy, 3829 Alafaya Heights Rd, Orlando, FL 32828 (hereinafter "Employee").

In consideration of SHI's 10/15/2021 Offer of Employment accepted by Employee, or in consideration of continued employment with SHI, as well as the receipt of SHI's trade secrets and/or confidential information in connection with such employment, Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Trade Secrets, Non-Solicitation, and Non-Recruitment (hereafter referred to as "the Agreement").

**1.**     <u>**Agreement Does Not Alter At-Will Employment Status**</u>

Employee understands that he/she is an at-will employee, and that he/she may be terminated at any time, with or without cause and with or without notice, for any lawful reason. Employee understands that this Agreement does not alter his/her at-will employment status and that Employee's at-will status may not be altered by any oral or written representations other than a written contract of employment signed by Employee and SHI's then-current Director of Human Resources. Employee further understands that this Agreement does not provide or entitle him/her to any severance or other compensation upon termination of his/her employment.

**2.**     <u>**Prohibition on Using SHI Trade Secrets and Confidential Information**</u>

2.1     Employee recognizes and acknowledges that, during his/her employment with SHI, he/she will have access to and make use of SHI's Trade Secrets and Confidential Information (defined below). Employee acknowledges and understands that such Trade Secrets and Confidential Information constitute valuable and unique assets of SHI, access to and knowledge of which are essential to the performance of the Employee's duties for SHI.

2.2     Trade Secret means any information, including but not limited to, technical or non-technical data, formulas, patterns, compilations, programs, plans, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and/or a list of actual or potential customers that (1) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use; (2) is the subject of reasonable efforts under the circumstances to maintain its secrecy; and (3) otherwise satisfies the standards under the Uniform Trade Secrets Act ("UTSA"), or other applicable federal and state law.

2.3     Confidential Information means information disclosed to or known by an employee as a consequence or through his/her association with SHI, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or actual/potential competitors of SHI and which includes but is not limited to: any information that is valuable to SHI's business, including, but not limited to costs, margin, pricing information, financial information regarding SHI and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, SHI's commission structure or other payroll information, and similar types of information entrusted to SHI by third parties. Confidential Information shall not include any information which is or becomes publicly available through no act of Employee.

2.4     Except as required to perform the services required under this Agreement, Employee shall not, during his/her employment or any time thereafter, disclose, in whole or in part, SHI's Trade Secrets or Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Trade Secrets or Confidential Information for his/her own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

2.5     Employee shall, prior to or upon leaving SHI, or at any time upon SHI's request, deliver to SHI all SHI property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to Employee during the course of his/her employment.

2.6     Employee shall not acquire any intellectual property rights under this Agreement with respect to SHI information or property, except the limited right to use set out above. Employee acknowledges that, as between

DocuSign Envelope ID: 2977F49F-848E-4A66-B5CF-DC054AD2530B



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

SHI and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times will be) the property of SHI, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or other materials during the period of this Agreement.

**3.     Representations Regarding Information from Third Parties and Obligations to Former Employers**

3.1     Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer or other entity that would or could restrict or prohibit Employee from being employed by SHI or from performing his/her duties for SHI. Employee further acknowledges that to the extent Employee has an obligation to any former employer or other entity not to disclose trade secrets and/or other confidential information, Employee intends to honor such obligation at all times while in the employ of SHI. Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of SHI, or disclose to any person employed by or otherwise associated with SHI, any trade secrets or other confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party. Employee represents and warrants that, prior to commencing employment with SHI, Employee has returned all computerized information belonging to any former employer to such former employer. Employee agrees that Employee will not transfer to SHI's computers any pre-existing data or information without the express consent of SHI's IT Department.

3.2     As a condition of employment, all sales representatives are required to disclose to SHI the existence of any non-compete, non-solicitation, confidentiality and/or other post-employment restrictive covenants previously entered into by them with any third party It is the sales representative's responsibility to comply with the provisions of any agreement to which he/she is a party.  In no event will SHI accept responsibility for the actions of, nor will SHI defend, an employee who has failed to comply with the terms of that employee's agreement with a previous employer or other third party.

**4.     Non-Solicitation of Clients and Customers**

Employee recognizes and acknowledges that hi/hers work as an employee of SHI creates a relationship of trust and confidence between Employee and SHI. Employee acknowledges that this market is very competitive and that because of these factors and because of the Trade Secrets, Confidential Information, and customer lists which SHI has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to SHI's subscribers, customers, and accounts, Employee agrees that, during his/her employment and for a term of one (1) year after termination of employment, whether his/her termination is voluntary or involuntary, Employee will not solicit business from, or provide services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed by SHI.  This Non-Solicitation clause shall not prevent Employee from soliciting business or providing services that are not provided by SHI at the time of the solicitation or provision of services.

**5.     Non-Recruitment of Employees**

Employee understands that other employees of SHI are bound by agreements similar to this Agreement, and further covenants and agrees that during Employee's employment and for a period of one (1) year following termination of his/her employment with SHI for any reason, Employee will not for himself/herself or on behalf of any other person or entity, solicit or attempt to solicit other employees of SHI to discontinue their employment with SHI.

**6.     Enforcement**

6.1     If Employee breaches or threatens to breach the terms of this Agreement, SHI may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief. Employee acknowledges that SHI would be irreparably injured upon Employee's breach of this Agreement, and that it may be difficult to ascertain with certainty the amount of money damages SHI will suffer. Provided further, however, that nothing herein shall preclude SHI from seeking a recoupment of its actual damages should they be ascertainable. Employee shall reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

6.2     Nothing in this Agreement shall restrict, limit, or prohibit SHI's right and freedom to proceed against Employee under tort or pursuant to statute to redress any harm to SHI that may be caused by any breach by Employee of any legal duty.

DocuSign Envelope ID: 2977F49F-848F-4A66-B5CF-DC054AD2530B



**SHI International Corp.**

290 Davidson Avenue, Somerset, NJ 08873 • 888-764-8888 • SHI.com

**7.    Arbitration/Venue Selection**

Any and all claims, controversies, or disputes arising out of or in connection with this Agreement shall be subject to arbitration by a single arbitrator pursuant to the Judicial Arbitration & Mediation Services ("JAMS") Employment Arbitration Rules and Procedures in the County where the main United States District Courthouse is located for the federal court district where the SHI office to which Employee reports is located and pursuant to the terms of any separate Agreement to Arbitrate Employee may have with SHI. Notwithstanding the foregoing, it is expressly agreed that either Party – at any time without first having to file any demand for arbitration – may bring a claim for temporary, preliminary, emergency, or other interim injunctive relief, pending the outcome of arbitration as well as bring any claim for permanent equitable relief awarded in conjunction therewith, in any court of competent jurisdiction.

**8.    Tolling Period**

In the event Employee breaches any of the covenants contained herein and SHI seeks compliance with those covenants by judicial proceedings, the time periods during which Employee is restricted by said covenants shall be extended by the time during which Employee is found by a court of competent jurisdiction to have been in breach of said covenants, not to exceed two (2) years.

**9.    General Provisions**

9.1    This Agreement sets forth the entire understanding of the parties regarding Confidential Information, Trade Secrets, Non-solicitation, and Non-Recruitment and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto.

9.2    This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey.

9.3    In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement:

John C. Mulloy                                           10/17/2021
_____                    _____
Print Name                                               Date

*John C. Mulloy*
_____
7743A2897C9420...
Signature

On Behalf of SHI International Corp

Hannah Ball
_____

Commercial Recruiting Specialist

*Hannah Ball*
_____
92CDA3DB9D417...
Signature

10/15/2021
_____
Date

# EXHIBIT A-5



Neil Lella    6058





**SHI International Corp**

August 6, 2013

1301 South Mo-Pac Expressway, Suite 375, Austin, TX 78746 • 888-764-8888 • SHI.com

Neil Lella
2612 San Pedro Street
Austin, TX 78705
(P) 903-530-3203
(E) neillella@gmail.com

Dear Neil,

SHI International Corporation is excited to offer you the position of Inside Account Executive – SMB reporting to the SMB Inside Sales Managers. If you accept the terms of this offer, your start date will be Monday, August 19, 2013.  Your assigned work hours will be in alignment with the customers you support. However, please report to SHI at 8:00 am on Monday, August 19th.  This offer is contingent upon a favorable background check and references.

Your compensation will consist of an annual base of $30,000.00 plus commissions on sales into the accounts that you support.  During the first 3 months of your employment you will earn a minimum monthly commission guarantee of $250.00. This guarantee is based on successful achievement of performance objectives assigned by your manager and can be withheld or suspended should objectives not be met. The attached schedule outlines your compensation.

The above guarantee is based on the understanding that all requirements and responsibilities established, by your manager, for this position, are maintained.  You must achieve excellent performance, determined by your manager, to obtain the full guarantee.  If these responsibilities are not fulfilled, the guarantee can be suspended or eliminated.  All guaranteed monies are waived upon termination/resignation.  Special Incentives (Spiffs) and contests qualified are also forfeited upon termination/resignation.

A benefit packet is being mailed to the address listed above and will provide you with an overview of the coverage extended, which will begin 30 days from your start date listed above. Please sign-off this document and the non-compete as acceptance of the terms enclosed. Welcome to the team!

Sincerely,

Lauren Checky
SHI Corporate Human Resources
    Keith Joseph
    Michael Haluska
    Hal Jagger
    Thai Lee

Neil Lella
Date:  08/17/2013

Page 1 of 3



**SHI International Corp**

*1301 South Mo-Pac Expressway, Suite 375, Austin, TX 78746 • 888-764-8888 • SHI.com*

# SHI
# Offer Addendum

As a condition of employment, all sales representatives are required to disclose to SHI International Corp. the existence of any non-compete, non-solicitation, and/or employer agreements previously entered into by sales representative. It is the sales representatives' responsibility to comply with the provisions of any agreement that he/she is a party to. In no event will SHI International Corp. accept responsibility for the actions of, nor will SHI International Corp. defend an employee who has failed to comply with the terms of that employee's agreement with a previous employer. SHI requires that you provide it with a copy of any signed employment agreement(s) between you and your previous employer

SHI expects you to follow the termination procedures of your current employer. SHI does not permit its employees to use any materials acquired from a previous employer in carrying out the employee's duties for SHI.. In addition, you acknowledge that you are fully aware that any confidential information, proprietary information, trade secrets, data files, or anything thereof that may be considered business materials from any previous employer are to be returned to your previous employer or destroyed prior to your employment with SHI.

During your initial training in the IAE-SMB role you will be required to pass all quizzes, tests, and exams.  Should you fail to pass any quiz/test/exam with a score of 70% or higher employment with SHI International Corp will be terminated.

Name _____ Neil Lella _____      Date __08/17/2013__
(Print)

Signature _____      Date __08/17/2013__

Page 2 of 3

 **SHI International Corp**

1301 South Mo-Pac Expressway, Suite 375, Austin, TX 78746 • 888-764-8888 • SHI.com

## Compensation Summary:
## Neil Lella:

**Base Salary:**　　　　　$30,000.00

**Monthly Commission Payout on Gross Profit \***

|  | Date Range | Percentage Payout** |
|---|---|---|
| Year 1 | Sept (SPO) 2013 through Aug (APS) 2014 | 16% - 30% |
| Year 2 | Sept (SPO) 2014 through Aug (APS) 2015 | 14% - 25% |
| Year 3 | Sept (SPO) 2015 through Aug (APS) 2016 | 12% - 25% |
| Year 4 | Sept (SPO) 2016 through Aug (APS) 2017 | 10% - 25% |
| Year 5 | Sept (SPO) 2017 through Aug (APS) 2018 | 10% - 25% |

*\* Gross Profit $'s are comprised of Period Gross Margin $'s +/- Freight – Credit Card Charges*
*+/- any manual adjustments for cost recognition*
*\*\* Payout is based on your average monthly GM per day rate.*

**Initial 3 Month Minimum Guarantee:**
　　　**September (SPO) 2013 through November (NPD) 2013** = 16% - 30% commission with
　　　a minimum guarantee of up to $250 per month.

**Overall performance and achieving standard business objectives (set by your manager) will
be reviewed on a monthly basis by SHI management. If objectives and performance goals
are not met the minimum guarantee may be suspended. In addition, an action plan would
be put in place with established criteria, which if not met, would result in termination.**

Name　_Neil Lella_　　　　　　　　　　Date _08/17/ 2013_
(Print)

Signature　　　　　　　　　　　　　　Date _08/17/2013_

## AGREEMENT REGARDING CONFIDENTIAL INFORMATION, NON-SOLICITATION, COVENANT NOT TO COMPETE, AND ARBITRATION OF DISPUTES

This Agreement is made effective as of 8/19/2013, between SHI International Corporation (hereinafter "SHI" or the "Company"), and **Neil Lella 2612 San Pedro Street Austin, Texas 78705** (hereinafter "Employee"). For purposes of this Agreement, all personal pronoun referenced in this document to the male gender (e.g. "he," "him," "his," and "himself") shall apply equally to the female gender (i.e. "she," "her," "hers," and "herself").

In Consideration of the Offer of Employment extended by the Company to Employee, and in accepting such employment as described in the Offer Letter dated 8/6/2013. Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Non-Solicitation, Covenant Not to Compete, and Arbitration of Disputes (hereafter referred to as "the Agreement").

### 1.    Agreement Does Not Alter At-will Employment Status

Employee understands that he is an at-will employee, and that he may be terminated at any time, with or without cause. Employee understands that this Agreement does not alter his at-will employment status. Employee understands that this Agreement does not provide or entitle him to any severance or other compensation upon termination of his employment.

### 2.    Prohibition on Using Confidential Information

2.1    Employee recognizes and acknowledges that Confidential Information (defined below) is a valuable and unique asset of the Company, access to and knowledge of which is essential to the performance of the Employee's duties to the Company. Except as required to perform the services required under this Agreement, Employee shall not, during his employment or any time thereafter, disclose, in whole or in part, such Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Confidential Information for his own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

2.2    Confidential information means information disclosed to or known by an employee as a consequence or through his association with the Company, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or potential competitors of the Company and which includes but is not limited to:  any information that is valuable to the company's business, cost, margin, pricing information, financial information regarding the company and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, the company's commission structure or other payroll information, and similar types of information entrusted to the Company by third parties.  Confidential information shall not include any information which is or becomes publicly available through no act of Employee.

2.3    Employee shall, prior to or upon leaving the Company, or at any time upon the Company's request, deliver to the Company all Company property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to employee during the course of their employment.

2.4    Employee shall not acquire any intellectual property rights under this Agreement except the limited right to use set out above. Employee acknowledges that, as between the Company and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times

will be) the property of the Company, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or related materials during the period of this Agreement.

**3.    Representations Regarding Information from Third Parties and Obligations to Former Employers.**

Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer that would or could restrict or prohibit Employee from being employed by the Company or from performing his/her duties for the Company.   Employee further acknowledges that to the extent the Employee has an obligation to any former employer not to disclose trade secrets and/or other legally protected confidential information, Employee intends to honor such obligation at all times while in the employ of the Company.  Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of the Company, or disclose to any person employed by or otherwise associated with the Company, any trade secrets or other legally protected confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party. Employee represents and warrants that, prior to commencing employment with the Company, Employee has returned all computerized information belonging to any former employer to such former employer.  Employee agrees that Employee will not transfer to the Company's computers any pre-existing data or information without the express consent of the Company's IT Department.

**4.    Non-Solicitation/No-Service.**

Employee recognizes and acknowledges that his work as an employee of SHI creates a relationship of trust and confidence between the Employee and SHI.  Employee acknowledges that this market is very competitive and that because of these factors and because of the Confidential Information and customer lists which SHI has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to SHI's subscribers, customers, and accounts, Employee will abide by the following conditions during his employment and for a term of one (1) year after termination of employment, whether voluntary or involuntary.  During this period, Employee will not:

(a)    Induce, attempt to induce, or assist any other person or entity to induce any employee of SHI to leave its employ;

(b)    Solicit business from, or provide services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed by SHI.  However, this paragraph shall not prevent Employee from soliciting business or providing services that are not provided by SHI at the time of the solicitation or provision of services.

**5.    Covenant Not to Compete**

During Employee's employment with the Company, and for a period of six (6) months following the termination of Employee's employment with the Company, whether voluntary or involuntary, (Excluding involuntary layoff) Employee shall not:

(a)    be engaged, whether as an employee, officer, director, agent, contractor, consultant, or principal, in any capacity substantially similar to the capacity or capacities in which Employee was employed by SHI, with any person, firm, corporation or business that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI within 90 miles of the Employee's home office, if applicable, or SHI facility in Austin, Texas.

(b)    have any financial interest (excluding investments in less than one percent (1%) of the equity interests of any publicly held entity) in any business or activity that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI.

## 6.    **Enforcement**.

6.1    If Employee breaches or threatens to breach the terms of this Agreement, the Company may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief.  Employee acknowledges that the Company would be irreparably injured upon Employee's breach of this Agreement, and it is difficult to ascertain with certainty the amount of money damages the Company will suffer.  Employee agrees, however, that a reasonable amount of such money damages would be the commissions and bonuses Employee was paid by the Company in the six (6) month period prior to Employee's termination.  Provided further, however, that nothing herein shall preclude the Company from seeking a recoupment of its actual damages should they be ascertainable in an amount certain and should they exceed the amount of commissions and bonuses Employee received in the six (6) months prior to termination.  Employee agrees to reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

6.2    Other than when SHI seeks a temporary restraining order, or a preliminary or permanent injunction against Employee to enforce the provisions of Paragraphs 2, 4, and/or 5 which action may be brought in a court of law, Employee and the Company agree that all disputes relating to his employment with SHI,  or termination thereof shall be decided by an arbitrator through the American Arbitration Association (AAA) and shall proceed pursuant to the AAA Employment Arbitration Rules and Mediation Procedures.  Employee understands that the types of claims that he is agreeing will be decided by arbitration are all claims arising out of the employment relationship or its termination, whether based on statute or common law, including, but not limited to, claims alleging: discrimination, harassment, retaliation, wrongful discharge, breach of contract, and failure to pay wages, including overtime, commissions, or bonuses.  Employee also understands that by signing this Agreement in which he agrees to arbitration with the AAA of all employment claims Employee may have against the Company, he is waiving his right to a jury trial on any such claims.  All proceedings that take place under the jurisdiction of the AAA shall take place in Middlesex County, New Jersey.  Moreover, any and all claims, controversies, or disputes arising out of or in connection with this Agreement that are allowed to be brought in Court, shall be brought solely in the U.S. District Court for the District of New Jersey or the  Courts of Middlesex County, New Jersey.  Employee agrees to submit to the personal jurisdiction of the above named courts.

## 7.    **General Provisions.**

7.1    This Agreement sets forth the entire understanding of the parties regarding confidentiality, non-solicitation, and covenant not to compete and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto.

7.2    This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey.

7.3    In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement:

_____Neil Lella_____     _____05/17/2013_____
Print Name                                      Date

_____
Signature

On behalf of SHI International Corporation

_____Lauren Cheeky – HR_____     _____8/6/2013_____
Print Name and Title                                      Date

_____Lauren Cheeky_____
Signature



## ACKNOWLEDGMENT FORM

By signing this Acknowledgment Form, I hereby acknowledge that I have received the Employee Handbook, which includes SHI International Corp.'s Equal Employment Opportunity and Harassment Policy. I have read it and am familiar with its terms.

I understand that the purpose of this Handbook is to provide SHI International Corp. employees with general information regarding the policies and procedures the Company attempts to follow in most cases, but I also understand that neither this Handbook nor any provision of this Handbook constitutes an employment contract or any other type of contract. I also understand that because of the nature of the Company's operations and the variations inherent in individual situations, the policies and procedures set out in the Handbook may not apply to every employee or to me. I understand that under no circumstances are the policies and procedures contained in this Handbook to be considered promises by the Company that my employment with the Company will always be governed by them.

I understand that this Handbook supersedes any other handbooks, manuals, memoranda, statements or pronouncements that I may have received or heard of in the past. I further understand and acknowledge that the Company may, in its sole discretion, interpret, modify, revise, delete, or add to any of the policies or procedures contained in this Handbook. I understand that the Company may do this at any time, with or without notice and that the Company's decisions in this regard will be final.

I understand and agree that my employment is for an indefinite term and is terminable at any time at the will of either myself or the Company for any reason. I understand that severance of this employment relationship at any time, by either party, for any reason not prohibited by law will not constitute a violation of any express or implied covenant. I also understand that this status can only be altered by a written contract of employment which is specific as to all material terms and is signed by myself and the Company's Human Resources Director.

This Handbook contains private, sensitive materials that are not to be discussed with anyone to whom a Handbook has not been issued or with anyone who is not a current employee of the Company. I understand that the Handbook is the property of the Company. Therefore, this Handbook must be returned to the Company upon request or upon my separation from employment with the Company, regardless of the cause of that separation.

I certify and acknowledge that I have carefully read all of the provisions of this Employee Handbook and the Agreements within, that I understand and have voluntarily accepted such provisions, and that I will fully and faithfully comply with such provisions.

Neil Lella
_____
Employee Name (print)

08/17/2013
_____
Date

_____
Employee Signature

# EXHIBIT A-6

## AGREEMENT REGARDING CONFIDENTIAL INFORMATION, NON-SOLICITATION, COVENANT NOT TO COMPETE, AND ARBITRATION OF DISPUTES

This Agreement is made effective as of 5/11/2015, between SHI International Corporation (hereinafter "SHI" or the "Company"), and **Amza Safi, 3801 S. Congress Ave. Austin, TX 78704** (hereinafter "Employee"). For purposes of this Agreement, all personal pronoun referenced in this document to the male gender (e.g. "he," "him," "his," and "himself") shall apply equally to the female gender (i.e. "she," "her," "hers," and "herself").

In Consideration of the Offer of Employment extended by the Company to Employee, and in accepting such employment as described in the Offer Letter dated 5/7/2015. Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Non-Solicitation, Covenant Not to Compete, and Arbitration of Disputes (hereafter referred to as "the Agreement").

### 1.    Agreement Does Not Alter At-will Employment Status

Employee understands that he is an at-will employee, and that he may be terminated at any time, with or without cause. Employee understands that this Agreement does not alter his at-will employment status. Employee understands that this Agreement does not provide or entitle him to any severance or other compensation upon termination of his employment.

### 2.    Prohibition on Using Confidential Information

2.1    Employee recognizes and acknowledges that Confidential Information (defined below) is a valuable and unique asset of the Company, access to and knowledge of which is essential to the performance of the Employee's duties to the Company. Except as required to perform the services required under this Agreement, Employee shall not, during his employment or any time thereafter, disclose, in whole or in part, such Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Confidential Information for his own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

2.2    Confidential information means information disclosed to or known by an employee as a consequence or through his association with the Company, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or potential competitors of the Company and which includes but is not limited to: any information that is valuable to the company's business, cost, margin, pricing information, financial information regarding the company and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, the company's commission structure or other payroll information, and similar types of information entrusted to the Company by third parties. Confidential information shall not include any information which is or becomes publicly available through no act of Employee.

2.3    Employee shall, prior to or upon leaving the Company, or at any time upon the Company's request, deliver to the Company all Company property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to employee during the course of their employment.

2.4    Employee shall not acquire any intellectual property rights under this Agreement except the limited right to use set out above. Employee acknowledges that, as between the Company and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times

will be) the property of the Company, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or related materials during the period of this Agreement.

**3.     Representations Regarding Information from Third Parties and Obligations to Former Employers.**

Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer that would or could restrict or prohibit Employee from being employed by the Company or from performing his/her duties for the Company.   Employee further acknowledges that to the extent the Employee has an obligation to any former employer not to disclose trade secrets and/or other legally protected confidential information, Employee intends to honor such obligation at all times while in the employ of the Company.  Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of the Company, or disclose to any person employed by or otherwise associated with the Company, any trade secrets or other legally protected confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party. Employee represents and warrants that, prior to commencing employment with the Company, Employee has returned all computerized information belonging to any former employer to such former employer.  Employee agrees that Employee will not transfer to the Company's computers any pre-existing data or information without the express consent of the Company's IT Department.

**4.     Non-Solicitation/No-Service.**

Employee recognizes and acknowledges that his work as an employee of SHI creates a relationship of trust and confidence between the Employee and SHI.  Employee acknowledges that this market is very competitive and that because of these factors and because of the Confidential Information and customer lists which SHI has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to SHI's subscribers, customers, and accounts, Employee will abide by the following conditions during his employment and for a term of one (1) year after termination of employment, whether voluntary or involuntary.  During this period, Employee will not:

(a)     Induce, attempt to induce, or assist any other person or entity to induce any employee of SHI to leave its employ;

(b)     Solicit business from, or provide services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed by SHI.  However, this paragraph shall not prevent Employee from soliciting business or providing services that are not provided by SHI at the time of the solicitation or provision of services.

**5.     Covenant Not to Compete**

During Employee's employment with the Company, and for a period of six (6) months following the termination of Employee's employment with the Company, whether voluntary or involuntary, (Excluding involuntary layoff) Employee shall not:

(a)     be engaged, whether as an employee, officer, director, agent, contractor, consultant, or principal, in any capacity substantially similar to the capacity or capacities in which Employee was employed by SHI, with any person, firm, corporation or business that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI within 90 miles of the Employee's home office, if applicable, or SHI facility in Austin, Texas.

(b)    have any financial interest (excluding investments in less than one percent (1%) of the equity interests of any publicly held entity) in any business or activity that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI.

## 6.    Enforcement.

6.1    If Employee breaches or threatens to breach the terms of this Agreement, the Company may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief. Employee acknowledges that the Company would be irreparably injured upon Employee's breach of this Agreement, and it is difficult to ascertain with certainty the amount of money damages the Company will suffer. Employee agrees, however, that a reasonable amount of such money damages would be the commissions and bonuses Employee was paid by the Company in the six (6) month period prior to Employee's termination. Provided further, however, that nothing herein shall preclude the Company from seeking a recoupment of its actual damages should they be ascertainable in an amount certain and should they exceed the amount of commissions and bonuses Employee received in the six (6) months prior to termination. Employee agrees to reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

6.2    Other than when SHI seeks a temporary restraining order, or a preliminary or permanent injunction against Employee to enforce the provisions of Paragraphs 2, 4, and/or 5 which action may be brought in a court of law, Employee and the Company agree that all disputes relating to his employment with SHI, or termination thereof shall be decided by an arbitrator through the American Arbitration Association (AAA) and shall proceed pursuant to the AAA Employment Arbitration Rules and Mediation Procedures. Employee understands that the types of claims that he is agreeing will be decided by arbitration are all claims arising out of the employment relationship or its termination, whether based on statute or common law, including, but not limited to, claims alleging: discrimination, harassment, retaliation, wrongful discharge, breach of contract, and failure to pay wages, including overtime, commissions, or bonuses. Employee also understands that by signing this Agreement in which he agrees to arbitration with the AAA of all employment claims Employee may have against the Company, he is waiving his right to a jury trial on any such claims. All proceedings that take place under the jurisdiction of the AAA shall take place in Middlesex County, New Jersey. Moreover, any and all claims, controversies, or disputes arising out of or in connection with this Agreement that are allowed to be brought in Court, shall be brought solely in the U.S. District Court for the District of New Jersey or the Courts of Middlesex County, New Jersey. Employee agrees to submit to the personal jurisdiction of the above named courts.

## 7.    General Provisions.

7.1    This Agreement sets forth the entire understanding of the parties regarding confidentiality, non-solicitation, and covenant not to compete and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto.

7.2    This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey.

7.3    In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement:

_Amza Safi_

Print Name

_5 - 11 - 20 · 5_

Date

Signature

On behalf of SHI International Corporation

_Madison Tate - HR_

Print Name and Title

_5/7/2015_

Date

_Madison Tate_

Signature

4

# EXHIBIT A-7



**SHI International Corp.**
290 Davidson Avenue
Somerset, NJ 08873
888-764-8888
SHI.com

April 3, 2023

To: Beau Walker
From: SHI Internal Recruiting
Re: Enterprise Sr. Inside Sales Account Manager

Dear Beau,

SHI International Corp. is extremely pleased to offer you a position as a Enterprise Sr. Inside Sales Account Manager. This position is in the Enterprise Sales - ISAM department, reporting to Daniel Meyer.  If you accept the terms of this offer, the start date for your new role will be April 3, 2023. Your regular working hours once you have transitioned will be determined by SHI management. Please be advised that Attendance polices vary per department and state of residence. Please review the Attendance policy in the SHI Handbook.

Your compensation will be based on the below compensation earnings summary.

All business earnings based on your previous role as a Enterprise Inside Sales Account Manager will be final as of March 31, 2023 and will be paid out in accordance with a full time transition to your new role, as determined by SHI management.

**Compensation Summary: Enterprise Sr. Inside Sales Account Manager**

**Effective:** April 3, 2023
**Compensation:** Base Salary plus Commission

**Monthly Commission Payout on Gross Margin (GM)\***

| Months | Commission Rate on All-Up GM$* | Accelerator*** Rate on All-Up GM$ Over GM Attainment |
|---|---|---|
| April 2023 (APM23) - December 2023 (DPJ24) | TBD | 5% |
| January 2024 (JPF24) | TBD** | TBD** |

*Gross Margin (GM) is the difference between sales revenue and cost within a sales period, plus/minus any adjustments. Adjustments to GM include, but are not limited to: freight, credit card fees, the cost of dedicated sales operations/support staff, customer-specific administrative/contract fees and rebates, interest charges on unpaid customer invoices or unused inventory, rebates from partners/manufacturers, cost of unreturnable/unsellable inventory, and assessment on total sales revenue. If you do have any questions or concerns regarding calculating GM and/or adjustments, we encourage you to consult with your manager.*

***Accelerator rate is 5% on All-Up GM over quarterly quota.  Eligibility for Accelerator rate on All-Up GM is based on the following:

  ○ Attainment of All-Up GM quota for the quarter
  ○ Attainment of ISAM Focus GM* quota for the Quarter

ISAM Focus goal for 2023 is End User GM from Apple, Dell, HP Inc., Lenovo, and Microsoft Hardware manufacturers plus Freight GM. End User GM is defined by End User Device SP GM and End User Longtail SP GM.

** 2023 Rates are set by SHI management

AGREEMENT REGARDING TRADE SECRETS,
CONFIDENTIAL INFORMATION, NON-SOLICITATION, AND NON-RECRUITMENT

This Agreement is made effective as of April 3, 2023 between SHI International Corp. (hereinafter "SHI"), and Beau Walker; 1304 Summit Street, 101 Austin TX 78741(hereinafter "Employee").

In consideration of SHI's April 3, 2023 Offer of Employment accepted by Employee, or in consideration of continued employment with SHI, as well as the receipt of SHI's trade secrets and/or confidential information in connection with such employment, Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Trade Secrets, Non-Solicitation, and Non-Recruitment (hereafter referred to as "the Agreement").

## 1. Agreement Does Not Alter At-Will Employment Status

Employee understands that he/she is an at-will employee, and that he/she may be terminated at any time, with or without cause and with or without notice, for any lawful reason. Employee understands that this Agreement does not alter his/her at-will employment status and that Employee's at-will status may not be altered by any oral or written representations other than a written contract of employment signed by Employee and SHI's then-current Director of Human Resources. Employee further understands that this Agreement does not provide or entitle him/her to any severance or other compensation upon termination of his/her employment.

## 2. Prohibition on Using SHI Trade Secrets and Confidential Information

2.1 Employee recognizes and acknowledges that, during his/her employment with SHI, he/she will have access to and make use of SHI's Trade Secrets and Confidential Information (defined below). Employee acknowledges and understands that such Trade Secrets and Confidential Information constitute valuable and unique assets of SHI, access to and knowledge of which are essential to the Employee's duties for SHI.

2.2 Trade Secret means any information, including but not limited to, technical or non-technical data, formulas, patterns, compilations, programs, plans, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and/or a list of actual or potential customers that (1) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use; (2) is the subject of reasonable efforts under the circumstances to maintain its secrecy; and (3) otherwise satisfies the standards under the Uniform Trade Secrets Act ("UTSA"), or other applicable federal and state law.

2.3 Confidential Information means information disclosed to or known by an employee as a consequence or through his/her association with SHI, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or actual/potential competitors of SHI and which includes but is not limited to: any information that is valuable to SHI's business, including, but not limited to costs, margin, pricing information, financial information regarding SHI and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, SHI's commission structure or

other payroll information, and similar types of information entrusted to SHI by third parties. Confidential Information shall not include any information which is or becomes publicly available through no act of Employee.

2.4 Except as required to perform the services required under this Agreement, Employee shall not, during his/her employment or any time thereafter, disclose, in whole or in part, SHI's Trade Secrets or Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Trade Secrets or Confidential Information for his/her own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

2.5 Employee shall, prior to or upon leaving SHI, or at any time upon SHI's request, deliver to SHI all SHI property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to Employee during the course of his/her employment.

2.6 Employee shall not acquire any intellectual property rights under this Agreement with respect to SHI information or property, except the limited right to use set out above. Employee acknowledges that, as between SHI and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times will be) the property of SHI, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or other materials during the period of this Agreement.

### 3. Representations Regarding Information from Third Parties and Obligations to Former Employers

3.1 Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer or other entity that would or could restrict or prohibit Employee from being employed by SHI or from performing his/her duties for SHI. Employee further acknowledges that to the extent Employee has an obligation to any former employer or other entity not to disclose trade secrets and/or other confidential information, Employee intends to honor such obligation at all times while in the employ of SHI. Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of SHI, or disclose to any person employed by or otherwise associated with SHI, any trade secrets or other confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party. Employee represents and warrants that, prior to commencing employment with SHI, Employee has returned all computerized information belonging to any former employer to such former employer. Employee agrees that Employee will not transfer to SHI's computers any pre-existing data or information without the express consent of SHI's IT Department.

3.2 As a condition of employment, all sales representatives are required to disclose to SHI the existence of any non-compete, non-solicitation, confidentiality and/or other post-employment restrictive covenants previously entered into by them with any third party It is the sales representative's responsibility to comply with the provisions of any agreement to which he/she is a party. In no event will SHI accept responsibility for the actions of, nor will SHI defend, an employee who has failed to comply with the terms of that employee's agreement with a previous employer or other third party.

### 4. Non-Solicitation of Clients and Customers

Employee recognizes and acknowledges that his/her work as an employee of SHI creates a relationship of trust and confidence between Employee and SHI. Employee acknowledges that this market is very competitive and that because of these factors and because of the Trade Secrets, Confidential Information, and customer lists which SHI has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to SHI's subscribers, customers, and accounts, Employee agrees that, during his/her employment and for a term of one (1) year after termination of employment, whether his/her termination is voluntary or involuntary, Employee will not solicit business from, or provide services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed by SHI. This Non-Solicitation clause shall not prevent Employee from soliciting business or providing services that are not provided by SHI at the time of the solicitation or provision of services.

### 5. Non-Recruitment of Employees

Employee understands that other employees of SHI are bound by agreements similar to this Agreement, and further covenants and agrees that during Employee's employment and for a period of one (1) year following termination of his/her employment with SHI for any reason, Employee will not for himself/herself or on behalf of any other person or entity, solicit or attempt to solicit other employees of SHI to discontinue their employment with SHI.

### 6. Enforcement

6.1 If Employee breaches or threatens to breach the terms of this Agreement, SHI may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief. Employee acknowledges that SHI would be irreparably injured upon Employee's breach of this Agreement, and that it may be difficult to ascertain with certainty the amount of money damages SHI will suffer. Provided further, however, that nothing herein shall preclude SHI from seeking a recoupment of its actual damages should they be ascertainable. Employee shall reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

6.2 Nothing in this Agreement shall restrict, limit, or prohibit SHI's right and freedom to proceed against Employee under tort or pursuant to statute to redress any harm to SHI that may be caused by any breach by Employee of any legal duty.

### 7. Arbitration/Venue Selection

Any and all claims, controversies, or disputes arising out of or in connection with this Agreement shall be subject to arbitration by a single arbitrator pursuant to the Judicial Arbitration & Mediation Services ("JAMS") Employment Arbitration Rules and Procedures in the County where the main United States District Courthouse is located for the federal court district where the SHI office to which Employee reports is located and pursuant to the terms of any separate Agreement to Arbitrate Employee may have with SHI. Notwithstanding the foregoing, it is expressly agreed that either Party – at any time without first having to file any demand for arbitration – may bring a claim for temporary, preliminary, emergency, or other interim injunctive relief, pending the outcome of arbitration as well as bring any claim for permanent equitable relief awarded in conjunction therewith, in any court of competent jurisdiction.

### 8. Tolling Period

In the event Employee breaches any of the covenants contained herein and SHI seeks compliance with those covenants by judicial proceedings, the time periods during which Employee is restricted by said covenants shall be extended by the time during which Employee is found by a court of competent jurisdiction to have been in breach of said covenants, not to exceed two (2) years.

### 9. General Provisions

9.1 This Agreement sets forth the entire understanding of the parties regarding Confidential Information, Trade Secrets, Non-solicitation, and Non-Recruitment and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto.

9.2 This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey.

9.3 In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement.

Job Description: Enterprise Sr. Inside Sales Account Manager

**Overview:**

The Sr. Inside Sales Account Manager's (ISAM) purpose is to partner with Account Executives in the Enterprise segment to co-sell and support a select set of valued customers within an assigned territory. The ISAM will engage with customers and Account Executives to account plan and determine current infrastructure and uncover customer's IT needs. The ISAM will report into an Inside Sales Manager of the assigned territory. This position is required to report to the Austin, Texas office.

**Responsibilities:**

*Include but not limited to:*

- Establish and develop customer relationships via email and phone within assigned book(s) of business
- Quote and place orders based on customer requests
- Manage and quote Non-strategic software renewals (under certain threshold outlined by manager)
- Partner with field Account Executives to drive business within customer set
- Help customers select, deploy and manage various aspects of their IT environment
- Establish vendor and distribution channel partnerships via on-site meetings and phone conversations
- Manage multiple customer IT projects
- Provide excellent customer service
- Keep updated on product and industry knowledge
- Master SHI systems and tools for quoting, ordering and sourcing
- Host internal and customer-facing meetings for certain accounts/projects to establish greater relationships
- Attend product and sales trainings as required

**Required Skills:**

- Strong written and verbal communication skills
- Strong problem solving, organizational and interpersonal skills
- Ability to work both individually and in a team environment
- Self-Motivated with the ability to work in a fast paced and constantly changing environment
- Ability to effectively communicate complex subject matter- both verbally and written
- Ability to multi-task and remain focused
- Ability to delegate via internal and external resources
- Ability to prioritize customer requests and projects based on timelines
- Excellent consultative sales skills
- Strong interpersonal and customer service skills

**Unique Requirements:**

**Additional Information:**
Equal Employment Opportunity – M/F/Disability/Protected Veteran Status

Additional Information

Signed by Beau Walker | Beau_Walker@SHI.com | 4/26/2023 6:56:03 PM UTC | 161.69.54.14

Upon acceptance of offer, you are expected to continue to meet your current job performance expectations. Should job performance and/or responsibilities not be upheld during the transition period, SHI reserves the right to postpone, suspend, or retract transition to new position.

The Agreement Regarding Confidential Information, Non-Solicitation, And Arbitration of Dispute that you signed with SHI International Corp will remain in effect.

Please be advised that Attendance policies vary per department and state of residence. Please review the Attendance policy in the SHI Handbook.

Please be advised that at all times, your employment with SHI International Corp will be on an "at-will" basis. "At-will" employment means that either you or SHI may terminate your employment at any time, for any reason not prohibited by law, with or without notice.

Please sign-off on this document as acceptance of the terms enclosed. Congratulations!

Sincerely,

*Jordan Sanchez*

Jordan Sanchez | Corp Manager - Recruiting
Daniel Meyer | Enterprise Sr. Inside Sales Manager

cc: Filip Andonovski

| From: | Sarah Kaczowski |
|---|---|
| To: | Sarah Kaczowski |
| Subject: | Abby Walters, Beau Walker, Brandon Burgett, Edwin Rajkumar, Gage Raney, Jace Maker, Jack Coleman, Josh Martinez, Macy Ford, Maddie McCammon, Matthew McLendon, Mina Kim, Sam Austin, Tiara Henderson, Travis OBalle, Fernando Granthon, Nick Stockland, Dyla... |
| Date: | Monday, May 1, 2023 11:29:44 AM |



**Job Title:** Enterprise Inside Sales Account Manager

## Overview:

The Inside Sales Account Manager (ISAM) is an integral part of the sales process by collaborating with outside sales to provide hardware, software and service support to their assigned customers. The ISAM will create pricing quotes for customers' IT needs, process purchase orders, proactively manage renewals and track orders to provide status and updates for their customers. This role works directly with customers and reports to the Inside Sales Manager - ISAM.

## Responsibilities:

*Include but not limited to:*

- Represent SHI as a central point of contact for our customer base
- Act as liaison between Outside Sales, customers, and SHI internal departments
- Provide excellent customer service and support to customers and outside sales team
- Create pricing quotes for SHI customer based on IT requirements, including new hardware and software product needs, and corresponding services
- Proactively manage customers' upcoming renewals with the focus of consolidating and co-terming.
- Engage on large customer deals through deal registration with internal teams, vendors, and track these through our Customer Relationship Management (CRM) tool
- Provide sourcing, product quotes, pricing, and product information to customers and the outside sales team
- Enter purchase orders and provide updates to Outside Sales and customer of order status
- Actively participate in team meetings with managers to review important updates and changes
- Set up conference calls between Outside Sales, customers, vendors and our internal teams
- Be proactive with problem resolution by handling product returns, invoicing questions and customer concerns

## External Qualifications:

- Completed Bachelor's Degree (College/University)
- Have successfully completed all Corp Inside Sales Academy curriculum and training requirements as outlined by management

## Internal Qualifications:

- Completed Bachelor's Degree (College/University)
- Have successfully completed all Corp Inside Sales Academy curriculum and training requirements as outlined

by management

**Required Skills:**

- Excellent communication skills (verbal and written)
- Ability to follow up with customers to ensure customer satisfaction
- Excellent time management skills, attention to detail, organizational skills, and problem-solving capabilities
- Proactive and critical thought process in approach to selling to enhance sales experience for client
- Ability to work well in a fast paced, team environment

**Certifications:**

**Unique Requirements:**

**Additional Information:**

- The estimated annual pay range for this position is $40,000 - $120,000 which includes a base salary and bonus. The compensation for this position is dependent on job-related knowledge, skills, experience, and market location and, therefore, will vary from individual to individual. Benefits may include, but are not limited to, medical, vision, dental, 401K, and flexible spending.
- Equal Employment Opportunity – M/F/Disability/Protected Veteran Status

© SHI International Corp.; 290 Davidson Ave.; Somerset, NJ 08873; USA

# EXHIBIT A-8

INTENTIONALLY OMITTED

# EXHIBIT A-9

## AGREEMENT REGARDING CONFIDENTIAL INFORMATION, NON-SOLICITATION, COVENANT NOT TO COMPETE, AND ARBITRATION OF DISPUTES

This Agreement is made effective as of 4/14/2014, between SHI International Corporation (hereinafter "SHI" or the "Company"), and **William Wortham, 7709 Van Dyke, Austin, Texas 78729** (hereinafter "Employee"). For purposes of this Agreement, all personal pronoun referenced in this document to the male gender (e.g. "he," "him," "his," "himself") shall apply equally to the female gender (i.e. "she," "her," "hers," and "herself").

In Consideration of the Offer of Employment extended by the Company to Employee, and in accepting such employment as described in the Offer Letter dated 4/11/2014. Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Non-Solicitation, Covenant Not to Compete, and Arbitration of Disputes (hereafter referred to as "the Agreement").

**1.    Agreement Does Not Alter At-will Employment Status**

Employee understands that he is an at-will employee, and that he may be terminated at any time, with or without cause. Employee understands that this Agreement does not alter his at-will employment status. Employee understands that this Agreement does not provide or entitle him to any severance or other compensation upon termination of his employment.

**2.    Prohibition on Using Confidential Information**

2.1    Employee recognizes and acknowledges that Confidential Information (defined below) is a valuable and unique asset of the Company, access to and knowledge of which is essential to the performance of the Employee's duties to the Company. Except as required to perform the services required under this Agreement, Employee shall not, during his employment or any time thereafter, disclose, in whole or in part, such Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Confidential Information for his own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

2.2    Confidential information means information disclosed to or known by an employee as a consequence or through his association with the Company, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or potential competitors of the Company and which includes but is not limited to: any information that is valuable to the company's business, cost, margin, pricing information, financial information regarding the company and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, the company's commission structure or other payroll information, and similar types of information entrusted to the Company by third parties. Confidential information shall not include any information which is or becomes publicly available through no act of Employee.

2.3    Employee shall, prior to or upon leaving the Company, or at any time upon the Company's request, deliver to the Company all Company property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to employee during the course of their employment.

2.4    Employee shall not acquire any intellectual property rights under this Agreement except the limited right to use set out above. Employee acknowledges that, as between the Company and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times

will be) the property of the Company, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or related materials during the period of this Agreement.

**3.    Representations Regarding Information from Third Parties and Obligations to Former Employers.**

Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer that would or could restrict or prohibit Employee from being employed by the Company or from performing his/her duties for the Company.    Employee further acknowledges that to the extent the Employee has an obligation to any former employer not to disclose trade secrets and/or other legally protected confidential information, Employee intends to honor such obligation at all times while in the employ of the Company.    Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of the Company, or disclose to any person employed by or otherwise associated with the Company, any trade secrets or other legally protected confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party. Employee represents and warrants that, prior to commencing employment with the Company, Employee has returned all computerized information belonging to any former employer to such former employer.    Employee agrees that Employee will not transfer to the Company's computers any pre-existing data or information without the express consent of the Company's IT Department.

**4.    Non-Solicitation/No-Service.**

Employee recognizes and acknowledges that his work as an employee of SHI creates a relationship of trust and confidence between the Employee and SHI.    Employee acknowledges that this market is very competitive and that because of these factors and because of the Confidential Information and customer lists which SHI has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to SHI's subscribers, customers, and accounts, Employee will abide by the following conditions during his employment and for a term of one (1) year after termination of employment, whether voluntary or involuntary.    During this period, Employee will not:

(a)    Induce, attempt to induce, or assist any other person or entity to induce any employee of SHI to leave its employ;

(b)    Solicit business from, or provide services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed by SHI.    However, this paragraph shall not prevent Employee from soliciting business or providing services that are not provided by SHI at the time of the solicitation or provision of services.

**5.    Covenant Not to Compete**

During Employee's employment with the Company, and for a period of six (6) months following the termination of Employee's employment with the Company, whether voluntary or involuntary, (Excluding involuntary layoff) Employee shall not:

(a)    be engaged, whether as an employee, officer, director, agent, contractor, consultant, or principal, in any capacity substantially similar to the capacity or capacities in which Employee was employed by SHI, with any person, firm, corporation or business that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI within 90 miles of the Employee's home office, if applicable, or SHI facility in Austin, Texas.

2

(b)    have any financial interest (excluding investments in less than one percent (1%) of the equity interests of any publicly held entity) in any business or activity that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI.

## 6.    Enforcement.

6.1    If Employee breaches or threatens to breach the terms of this Agreement, the Company may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief. Employee acknowledges that the Company would be irreparably injured upon Employee's breach of this Agreement, and it is difficult to ascertain with certainty the amount of money damages the Company will suffer. Employee agrees, however, that a reasonable amount of such money damages would be the commissions and bonuses Employee was paid by the Company in the six (6) month period prior to Employee's termination. Provided further, however, that nothing herein shall preclude the Company from seeking a recoupment of its actual damages should they be ascertainable in an amount certain and should they exceed the amount of commissions and bonuses Employee received in the six (6) months prior to termination. Employee agrees to reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

6.2    Other than when SHI seeks a temporary restraining order, or a preliminary or permanent injunction against Employee to enforce the provisions of Paragraphs 2, 4, and/or 5 which action may be brought in a court of law, Employee and the Company agree that all disputes relating to his employment with SHI,  or termination thereof shall be decided by an arbitrator through the American Arbitration Association (AAA) and shall proceed pursuant to the AAA Employment Arbitration Rules and Mediation Procedures. Employee understands that the types of claims that he is agreeing will be decided by arbitration are all claims arising out of the employment relationship or its termination, whether based on statute or common law, including, but not limited to, claims alleging: discrimination, harassment, retaliation, wrongful discharge, breach of contract, and failure to pay wages, including overtime, commissions, or bonuses. Employee also understands that by signing this Agreement in which he agrees to arbitration with the AAA of all employment claims Employee may have against the Company, he is waiving his right to a jury trial on any such claims. All proceedings that take place under the jurisdiction of the AAA shall take place in Middlesex County, New Jersey. Moreover, any and all claims, controversies, or disputes arising out of or in connection with this Agreement that are allowed to be brought in Court, shall be brought solely in the U.S. District Court for the District of New Jersey or the  Courts of Middlesex County, New Jersey. Employee agrees to submit to the personal jurisdiction of the above named courts.

## 7.    General Provisions.

7.1    This Agreement sets forth the entire understanding of the parties regarding confidentiality, non-solicitation, and covenant not to compete and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto.

7.2    This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey.

7.3    In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement:

William Wortham
Print Name

04/14/2014
Date

_Signature_

On behalf of SHI International Corporation

Lindsey Pereira - HR
Print Name and Title

4/11/14
Date

_Signature_

# EXHIBIT A-10

## AGREEMENT REGARDING CONFIDENTIAL INFORMATION, NON-SOLICITATION, COVENANT NOT TO COMPETE, AND ARBITRATION OF DISPUTES

This Agreement is made effective as of 4/29/2013, between SHI International Corporation (hereinafter "SHI" or the "Company"), and **Yaujin Yoon 2502 Wilma Rudolph Road Austin, Texas 78748** (hereinafter "Employee"). For purposes of this Agreement, all personal pronoun referenced in this document to the male gender (e.g. "he," "him," "his," and "himself") shall apply equally to the female gender (i.e. "she," "her," "hers," and "herself").

In Consideration of the Offer of Employment extended by the Company to Employee, and in accepting such employment as described in the Offer Letter dated 4/5/2013. Employee hereby agrees to be bound by the following terms of this Agreement Regarding Confidential Information, Non-Solicitation, Covenant Not to Compete, and Arbitration of Disputes (hereafter referred to as "the Agreement").

**1.      Agreement Does Not Alter At-will Employment Status**

Employee understands that he is an at-will employee, and that he may be terminated at any time, with or without cause. Employee understands that this Agreement does not alter his at-will employment status. Employee understands that this Agreement does not provide or entitle him to any severance or other compensation upon termination of his employment.

**2.      Prohibition on Using Confidential Information**

2.1      Employee recognizes and acknowledges that Confidential Information (defined below) is a valuable and unique asset of the Company, access to and knowledge of which is essential to the performance of the Employee's duties to the Company. Except as required to perform the services required under this Agreement, Employee shall not, during his employment or any time thereafter, disclose, in whole or in part, such Confidential Information to any person, firm, corporation, association, or other entity for any reasons or purpose whatsoever, or make use of such Confidential Information for his own purposes or for the benefit of any other person or entity (except SHI) under any circumstances.

2.2      Confidential information means information disclosed to or known by an employee as a consequence or through his association with the Company, including any information conceived, originated, discovered, or developed by Employee, which is not generally known to the public or potential competitors of the Company and which includes but is not limited to: any information that is valuable to the company's business, cost, margin, pricing information, financial information regarding the company and its customers and/or clients, supplier information, marketing materials, strategic plans, specialized training material, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, customer needs, the company's commission structure or other payroll information, and similar types of information entrusted to the Company by third parties. Confidential information shall not include any information which is or becomes publicly available through no act of Employee.

2.3      Employee shall, prior to or upon leaving the Company, or at any time upon the Company's request, deliver to the Company all Company property, including but not limited to all documentation or computer files, whether made or compiled by employee alone or with others or made available to employee during the course of their employment.

2.4      Employee shall not acquire any intellectual property rights under this Agreement except the limited right to use set out above. Employee acknowledges that, as between the Company and Employee, the Confidential Information and all related copyrights and other intellectual property rights, are (and at all times

will be) the property of the Company, even if suggestions, comments, and/or ideas made by Employee are incorporated into the Confidential Information or related materials during the period of this Agreement.

3.    **Representations Regarding Information from Third Parties and Obligations to Former Employers.**

Employee represents and warrants that Employee is not currently bound by or a party to any obligation or agreement with any former employer that would or could restrict or prohibit Employee from being employed by the Company or from performing his/her duties for the Company.    Employee further acknowledges that to the extent the Employee has an obligation to any former employer not to disclose trade secrets and/or other legally protected confidential information, Employee intends to honor such obligation at all times while in the employ of the Company.    Specifically, Employee represents and agrees that Employee has not and will not knowingly use for the benefit of the Company, or disclose to any person employed by or otherwise associated with the Company, any trade secrets or other legally protected confidential information of any former employer or of any other third party, and that Employee will not otherwise knowingly infringe any proprietary right of any third party. Employee represents and warrants that, prior to commencing employment with the Company, Employee has returned all computerized information belonging to any former employer to such former employer. Employee agrees that Employee will not transfer to the Company's computers any pre-existing data or information without the express consent of the Company's IT Department.

4.    **Non-Solicitation/No-Service.**

Employee recognizes and acknowledges that his work as an employee of SHI creates a relationship of trust and confidence between the Employee and SHI.    Employee acknowledges that this market is very competitive and that because of these factors and because of the Confidential Information and customer lists which SHI has purchased or developed that have been or will be obtained by or disclosed to Employee, as well as the access Employee has or will have to SHI's subscribers, customers, and accounts, Employee will abide by the following conditions during his employment and for a term of one (1) year after termination of employment, whether voluntary or involuntary.    During this period, Employee will not:

(a)    Induce, attempt to induce, or assist any other person or entity to induce any employee of SHI to leave its employ;

(b)    Solicit business from, or provide services to, any Customer or prospect of SHI whom Employee solicited business from, or provided services to, while employed by SHI.    However, this paragraph shall not prevent Employee from soliciting business or providing services that are not provided by SHI at the time of the solicitation or provision of services.

5.    **Covenant Not to Compete**

During Employee's employment with the Company, and for a period of six (6) months following the termination of Employee's employment with the Company, whether voluntary or involuntary, (Excluding involuntary layoff) Employee shall not:
(a)    be engaged, whether as an employee, officer, director, agent, contractor, consultant, or principal, in any capacity substantially similar to the capacity or capacities in which Employee was employed by SHI, with any person, firm, corporation or business that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI within 90 miles of the Employee's home office, if applicable, or SHI facility in Austin, Texas.

2

(b)     have any financial interest (excluding investments in less than one percent (1%) of the equity interests of any publicly held entity) in any business or activity that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI.

## 6.    Enforcement.

6.1     If Employee breaches or threatens to breach the terms of this Agreement, the Company may pursue any remedies it is or may be entitled to under the law or equity, including injunctive relief. Employee acknowledges that the Company would be irreparably injured upon Employee's breach of this Agreement, and it is difficult to ascertain with certainty the amount of money damages the Company will suffer. Employee agrees, however, that a reasonable amount of such money damages would be the commissions and bonuses Employee was paid by the Company in the six (6) month period prior to Employee's termination. Provided further, however, that nothing herein shall preclude the Company from seeking a recoupment of its actual damages should they be ascertainable in an amount certain and should they exceed the amount of commissions and bonuses Employee received in the six (6) months prior to termination. Employee agrees to reimburse SHI for all attorney's fees, costs, and expenses that it reasonably incurs in connection with enforcing its rights and remedies under this Agreement.

6.2     Other than when SHI seeks a temporary restraining order, or a preliminary or permanent injunction against Employee to enforce the provisions of Paragraphs 2, 4, and/or 5 which action may be brought in a court of law, Employee and the Company agree that all disputes relating to his employment with SHI, or termination thereof shall be decided by an arbitrator through the American Arbitration Association (AAA) and shall proceed pursuant to the AAA Employment Arbitration Rules and Mediation Procedures. Employee understands that the types of claims that he is agreeing will be decided by arbitration are all claims arising out of the employment relationship or its termination, whether based on statute or common law, including, but not limited to, claims alleging: discrimination, harassment, retaliation, wrongful discharge, breach of contract, and failure to pay wages, including overtime, commissions, or bonuses. Employee also understands that by signing this Agreement in which he agrees to arbitration with the AAA of all employment claims Employee may have against the Company, he is waiving his right to a jury trial on any such claims. All proceedings that take place under the jurisdiction of the AAA shall take place in Middlesex County, New Jersey. Moreover, any and all claims, controversies, or disputes arising out of or in connection with this Agreement that are allowed to be brought in Court, shall be brought solely in the U.S. District Court for the District of New Jersey or the Courts of Middlesex County, New Jersey. Employee agrees to submit to the personal jurisdiction of the above named courts.

## 7.    General Provisions.

7.1     This Agreement sets forth the entire understanding of the parties regarding confidentiality, non-solicitation, and covenant not to compete and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, heirs, distributes, successors, and assigns. Any amendments to this Agreement must be in writing and signed by all of the parties hereto.

7.2     This Agreement is made pursuant to, and shall be governed, construed, and enforced in all respects and for all purposes in accordance with the laws of the State of New Jersey.

7.3     In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein and the same shall be enforceable to the fullest extent permitted by law.

I accept and agree to be bound by the terms of this Agreement:

_____Yaujin Yoon_____          _____4/28/13_____
Print Name                          Date

_____Yoni Yon_____
Signature

On behalf of SHI International Corporation

_Lauren Checky — HR_          _____4/5/2013_____
Print Name and Title                Date

_Lauren Checky_
Signature

4



## ACKNOWLEDGMENT FORM

By signing this Acknowledgment Form, I hereby acknowledge that I have received the Employee Handbook, which includes SHI International Corp.'s Equal Employment Opportunity and Harassment Policy. I have read it and am familiar with its terms.

I understand that the purpose of this Handbook is to provide SHI International Corp. employees with general information regarding the policies and procedures the Company attempts to follow in most cases, but I also understand that neither this Handbook nor any provision of this Handbook constitutes an employment contract or any other type of contract. I also understand that because of the nature of the Company's operations and the variations inherent in individual situations, the policies and procedures set out in the Handbook may not apply to every employee or to me. I understand that under no circumstances are the policies and procedures contained in this Handbook to be considered promises by the Company that my employment with the Company will always be governed by them.

I understand that this Handbook supersedes any other handbooks, manuals, memoranda, statements, or pronouncements that I may have received or heard of in the past. I further understand and acknowledge that the Company may, in its sole discretion, interpret, modify, revise, delete, or add to any of the policies or procedures contained in this Handbook. I understand that the Company may do this at any time, with or without notice and that the Company's decisions in this regard will be final.

I understand and agree that my employment is for an indefinite term and is terminable at any time at the will of either myself or the Company for any reason. I understand that severance of this employment relationship at any time, by either party, for any reason not prohibited by law will not constitute a violation of any express or implied covenant. I also understand that this status can only be altered by a written contract of employment which is specific as to all material terms and is signed by myself and the Company's Human Resources Director.

This Handbook contains private, sensitive materials that are not to be discussed with anyone to whom a Handbook has not been issued or with anyone who is not a current employee of the Company. I understand that the Handbook is the property of the Company. Therefore, this Handbook must be returned to the Company upon request or upon my separation from employment with the Company, regardless of the cause of that separation.

I certify and acknowledge that I have carefully read all of the provisions of this Employee Handbook and the Agreements within, that I understand and have voluntarily accepted such provisions, and that I will fully and faithfully comply with such provisions.

Yanjin    Yoon
Employee Name (print)

_Yoon Y_
Employee Signature

4 / 26 / 13
Date

# EXHIBIT A-11

| From: | Blaine.Young <youngb@corpsrvcs.com> |
|---|---|
| Sent: | Wednesday, April 16, 2025 1:20 PM CDT |
| To: | Danielcummings@dell.com |
| CC: | Will Wortham <Will_Wortham@SHI.com>; Han Hong <hongh@corpsrvcs.com>; Gregory Blacknall <blacknallg@mvminc.com>; Lloyd R. Witt <WittL@corpsrvcs.com>; Wade Sturdivant <sturdivante@corpsrvcs.com> |
| Subject: | MVM Inc & ClutchSolutions - Dell laptop & server quotes |

**External Sender: Use caution with links/attachments.**

Good Afternoon Daniel,

MVM Inc./KMKP would like to officially start quoting and working with Will Worthham at ClutchSolutions.

Can you please assist Will with requoting all the previous hardware & services we had pending with SHI.

Thank you.

——=

# Blaine Young

**Systems Engineer Manager**
**Office:** 571.223.4485
**Cell:** 571.420.7826
**Email:** YoungB@corpsrvcs.com
——

## Corporate Services

44620 Guilford Drive, Suite 150, Ashburn, VA 20147

*Disclaimer: This email, including any attachments, may contain proprietary information and is intended solely for use by the individual to whom it is addressed. If you received this email in error, please notify the sender, do not disclose its contents to others, and delete it from your system. Any other use of this email and/or attachments is prohibited. This message is not meant to constitute an electronic signature or intent to contract electronically.*

# EXHIBIT A-12

| From: | Bobby LeGrand <Bobby_LeGrand@SHI.com> |
|---|---|
| Sent: | Tuesday, April 15, 2025 1:30 PM CDT |
| To: | Jennifer Hays <jennifer_hays@shi.com> |
| Subject: | FW: Will closing out deal registrations |

 SHI

**Bobby LeGrand**
Sr. Manager - Inside Sales
Office: +15126555115

*If you prefer not to receive these emails, you can unsubscribe from sales communications here.*
*Your preferences will be updated promptly. For more information, please review our Privacy Policy.*

**From:** Julia Hatch <Julia_Hatch@SHI.com>
**Sent:** Tuesday, April 15, 2025 1:27 PM
**To:** Bobby LeGrand <Bobby_LeGrand@SHI.com>
**Subject:** Will closing out deal registrations

Dollar Bank

Friday, April 11, 2025

 Will Wortham (external)  Friday 7:43 AM

Hey Connor, can we please close 28763470. We have close all we are going to against this.

for dollar bank

Friday 9:15 AM

Hey yeah for sure ill close it now

Will Wortham (External)  Friday 9:15 AM

thank you

Alarm.com
Wednesday, April 9, 2025



# EXHIBIT A-13

| From: | Christopher Clark <Christopher_Clark@SHI.com> |
|---|---|
| Sent: | Tuesday, January 28, 2025 10:41 AM CST |
| To: | christophaclark@gmail.com |
| Subject: | FW: Request For Quotation |



**Christopher Clark**
*Enterprise Sr. Inside Account Executive*
Office: +15128144137

*Review SHI's privacy policy to manage communications.*

**From:** Alfredo Lopez <alopez@terribles.com>
**Sent:** Monday, January 27, 2025 12:18 PM
**To:** Team Clark <TeamClark@shi.com>
**Subject:** RE: Request For Quotation

> **External Sender:** Use caution with links/attachments.

Can the team also add a QTY of 1 of item SHI Part#45443643 to quote. -Thanks

*Alfredo Lopez*
**IT Project Coordinator**
O: (702) 889-7622 | E: alopez@terribles.com
6545 S Decatur Blvd Suite 110, Las Vegas, Nevada 89118



**From:** alopez@terribles.com <alopez@terribles.com>
**Sent:** Monday, January 27, 2025 10:10 AM
**To:** teamclark@shi.com
**Cc:** Brad Sexton <bsexton@terribles.com>
**Subject:** Request For Quotation

**Brad Sexton**
**3440 W Russell Rd**
**Las Vegas, NV 89118**
**Request For Quote - 5805**

We are interested in purchasing the items listed below. Please provide pricing for each item and any additional fees if applicable.

| Quantity | Part Number | Description |
|---|---|---|
| 2 | CABSHELFV | StarTech.com 2U Server Rack Shelf |
| 2 | BR1000MS | Power-Savings Back-Ups Pro 1000 |
| 2 | UL800CB-15 | Tripp Lite 10-Outlet 120 V AC Power Str |
| 1 | 920-012061 | Logitech - Pebble 2 (Wireless Keyboard and Mouse) |
| 1 | DELL-MFS22 | Dell MFF All-in-One Stand |
| 2 | DELL-P2422H | Dell P2422H - LED Monitor |
| 1 | | Dell OptiPlex 7020 MFF |
| 2 | DELL-E2425HS | Dell E2425HS - LED monitor |
| 3 | HLS-75R0 | Panduit TAK-TY HLS Hook & Loop Cable Ties |
| 1 | OR1500LCDRM1U | CyberPower OR1500LCDRM1U Smart |
| 1 | RMCARD205 | CyberPower RMCARD205 |
| 45 | N6PAT1BKS | StarTech.com 1ft Slim LSZH CAT6 Ethernet Cable |
| 15 | 01100 | C2G 2ft Cat6 Ethernet Network Patch Cable -Slim |
| 10 | 01102 | C2G 3ft Cat6 Ethernet Cable |
| 10 | 01104 | C2G 5ft Cat6 Ethernet Cable |
| 10 | 01106 | C2G 7ft Cat6 Ethernet Network Patch Cable - Slim |
| 1 | NXLI800-0-US | Crown XLi 800 - Power amplifier |
| 1 | MU3MMRCA | StarTech.com 3 ft Stereo Audio Cable |
| 1 | SRWO8U22 | Tripp Lite Expandable Wall-Mount Network Rack |

SHI - Starbucks Mesquite IT Equipment.

# EXHIBIT A-14

| | |
|---|---|
| From: | Christopher Clark <Christopher_Clark@SHI.com> |
| Sent: | Tuesday, January 21, 2025 2:04 PM CST |
| To: | Bennett, Robert <Robert.Bennett@tdsynnex.com> |
| CC: | christophaclark@gmail.com |
| Subject: | RE: Quick Update |

Well, I'm not going far. You may hear form me soon.



**Christopher Clark**
Enterprise Sr. Inside Account Executive
Office: +15128144137

*Review SHI's privacy policy to manage communications.*

**From:** Bennett, Robert <Robert.Bennett@tdsynnex.com>
**Sent:** Tuesday, January 21, 2025 1:08 PM
**To:** Christopher Clark <Christopher_Clark@SHI.com>
**Cc:** Bennett, Robert <Robert.Bennett@tdsynnex.com>
**Subject:** RE: Quick Update

External Sender: Use caution with links/attachments.

Dude! Thanks a ton for reaching out. Best of luck to you in the future and if I can be of any assistance down the road please don't hesitate to reach out.

**Bobby Bennett**
*Senior Inside Account Executive*



TD SYNNEX
39 Pelham Ridge Dr.
Greenville, SC 29615
Toll-Free 800-237-8931 *48301097
Direct Dial (864)-289-4186
robert.bennett@tdsynnex.com

*"Your feedback is valuable please Recognize me for Excellent Service"*

**From:** Christopher Clark <Christopher_Clark@SHI.com>
**Sent:** Tuesday, January 21, 2025 2:03 PM
**To:** Bennett, Robert <Robert.Bennett@tdsynnex.com>
**Subject:** Quick Update

This email originated outside of TD SYNNEX. Please help keep our organization and partners safe. It's up to us; think before you click.

Hey Bobby,

I wanted to say goodbye. I just resigned after 15 years.



Christopher Clark
Enterprise Sr. Inside Account Executive
HQ: 3828 Pecana Trail, Austin, TX 78749
Office: +15128144137

   
SHI.com



*Review SHI's privacy policy to manage communications.*

# EXHIBIT A-15

| From: | Megan Thompson <Megan_Thompson@SHI.com> |
|---|---|
| Sent: | Wednesday, April 16, 2025 4:48 PM CDT |
| To: | Jenna Watson <Jenna_Watson@shi.com> |
| CC: | Eric Guthrie <Eric_Guthrie@SHI.com> |
| Subject: | FW: Macbook |

Hey Jenna,

Please see below for additional documentation showing Amza working with Wedbush, a customer of his at SHI. (You can see the customer mistakenly emailed beau's shi email address)

Thanks,



Megan Thompson
Enterprise Inside Sales Vice President

Office: +15125826746          |          Mobile: +15127402852

*If you prefer not to receive these emails, you can unsubscribe from sales communications here. Your preferences will be updated promptly. For more information, please review our Privacy Policy.*

**From:** Kelsey Powers <Kelsey_Powers@shi.com>
**Sent:** Wednesday, April 16, 2025 12:33 PM
**To:** Megan Thompson <Megan_Thompson@SHI.com>
**Subject:** Fw: Macbook

Evidence Amza recently sold Wedbush Apple devices at Clutch.

Kelsey Powers (she/her)

Enterprise Sr. Inside Regional Sales Director

HQ: 3828 Pecana Trail, Austin, TX 78749

Office: 512-897-9382

**From:** John Neis <John_Neis@SHI.com>
**Sent:** Wednesday, April 16, 2025 11:57:14 AM
**To:** Colby Gober <Colby_Gober@SHI.com>; Nina Ezquivel <Nina_Ezquivel@SHI.com>
**Cc:** Kelsey Powers <Kelsey_Powers@shi.com>
**Subject:** RE: Macbook

Team,

I checked AX and it doesn't look like we have a MacBook order in the last 30+ days.  Art had Amza new email address from Clutch on the email.  Wonder if we can send Art a good, better, best MacBook option?  Let him know he can leverage SHI.com to get tracking info and order info?

Might be worth a shot.



John Neis
Sr. Manager - Inside Sales
Office: +15126555189

*If you prefer not to receive these emails, you can unsubscribe from sales communications here.*
*Your preferences will be updated promptly. For more information, please review our Privacy Policy.*

---

**From:** Colby Gober <Colby_Gober@SHI.com>
**Sent:** Wednesday, April 16, 2025 11:51 AM
**To:** John Neis <John_Neis@SHI.com>; Art Miramontes <Art.Miramontes@wedbush.com>; Nina Ezquivel <Nina_Ezquivel@SHI.com>
**Subject:** RE: Macbook

Hey Art,

Do you have an order or PO number for this order?

Happy to look into it if it was ordered with SHI!

Thank you,



Colby Gober
Enterprise Inside Account Executive
Office: +17372087363

*If you prefer not to receive these emails, you can unsubscribe from sales communications here.*
*Your preferences will be updated promptly. For more information, please review our Privacy Policy.*

---

**From:** John Neis <John_Neis@SHI.com>
**Sent:** Wednesday, April 16, 2025 11:49 AM
**To:** Art Miramontes <Art.Miramontes@wedbush.com>; Colby Gober <Colby_Gober@SHI.com>; Nina Ezquivel <Nina_Ezquivel@SHI.com>
**Subject:** RE: Macbook

Hi Art,

Beau and Amza are no longer with SHI.  Looping in @Colby Gober and @Nina Ezquivel, your sales team at SHI.  They will be able to help!



John Neis
Sr. Manager - Inside Sales
Office: +15126555189

*If you prefer not to receive these emails, you can unsubscribe from sales communications here.*
*Your preferences will be updated promptly. For more information, please review our Privacy Policy.*

**From:** Art Miramontes <Art.Miramontes@wedbush.com>
**Sent:** Wednesday, April 16, 2025 11:38 AM
**To:** Beau Walker <Beau_Walker@SHI.com>
**Cc:** Amza Safi <amza.safi@clutchsolutions.com>
**Subject:** Macbook

External Sender: Use caution with links/attachments.

Hi Beau,

Do you have tracking info on the Mac we recently ordered?

Thank you

**Art Miramontes |** Asset Mgmt and Facilites Admin, Information Technology
**WEDBUSH SECURITIES |** 1000 Wilshire Blvd | Los Angeles | CA | 90017
213-688-6705 direct | 213-688-8000 main | Art.Miramontes@wedbush.com
www.wedbush.com | Member: NYSE / FINRA / SIPC



# EXHIBIT B

CAUSE NO. _____

| | | |
|---|---|---|
| **SHI INTERNATIONAL CORP.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CLUTCH SOLUTIONS, LLC,** | § | **COLLIN COUNTY, TEXAS** |
| **CHRISTOPHER CLARK, AMZA SAFI,** | § | |
| **DANIEL CLARK, NEIL LELLA,** | § | |
| **YAUJIN "ALEX" YOON, MATTHEW** | § | |
| **MONTE, BEAU WALKER, KATELYN** | § | |
| **(KELLER) PAINTER, JOHN** | § | |
| **"CAMERON" MULLOY, and** | § | |
| **WILLIAM WORTHAM,** | § | |
| | § | |
| *Defendants*. | § | **_____ JUDICIAL DISTRICT** |

## DECLARATION OF JAMIL N. ALIBHAI

"My name is Jamil N. Alibhai. My date of birth is March 18, 1971. My business address is 500 N. Akard St. Ste 4000, Dallas, TX 75201. I declare under penalty of perjury that the foregoing is true and correct.

1.      I submit this Declaration in support of Plaintiff SHI International Corp.'s ("Plaintiff" or "SHI") Original Petition. If called as a witness, I would testify to the following facts:

2.      I am lead counsel for SHI in this matter. I have personal knowledge of documents related to this litigation, including the documents identified as exhibits to this declaration.

3.      Attached as Exhibit B-1 is a true and correct copy of Defendant Alex Yoon's LinkedIn profile as of April 22, 2025.

4.      Attached as Exhibit B-2 is a true and correct copy of Defendant Amza Safi's LinkedIn profile as of April 22, 2025.

5.      Attached as Exhibit B-3 is a true and correct copy of Defendant Christopher Clark's LinkedIn profile as of April 22, 2025.

1

6.      Attached as Exhibit B-4 is a true and correct copy of Defendant Daniel Clark's LinkedIn profile as of April 22, 2025.

7.      Attached as Exhibit B-5 is a true and correct copy of Defendant Katelyn (Keller) Painter's LinkedIn profile as of April 22, 2025.

8.      Attached as Exhibit B-6 is a true and correct copy of Defendant Matthew Monte's LinkedIn profile as of April 22, 2025.

9.      Attached as Exhibit B-7 is a true and correct copy of Defendant Neil Lella's LinkedIn profile as of April 22, 2025.

10.     Attached as Exhibit B-8 is a true and correct copy of Defendant Cameron Mulloy's LinkedIn profile as of April 22, 2025.

11.     Attached as Exhibit B-9 is a true and correct copy of Defendant Clutch Solutions, LLC's webpage last accessed on April 22, 2025 and can be found at the following link: https://clutchsolutions.com/.


Executed in Dallas County, State of Texas, on the 23rd day of April, 2025


                                        */s/ Jamil N. Alibhai*
                                        Jamil N. Alibhai

# EXHIBIT B-1

        



### Alex Y. · 3rd
Enterprise Account Executive @ Clutch Solutions

Clutch Solutions

United States · Contact info

383 connections

Connect    More

## About

With 12+ years of experience as an Account Executive in the IT channel, I help organizations simplify sourcing and maximize value across software, hardware, and cloud services. I represent a Native American–owned, Minority Business Enterprise (MBE) that supports ESG initiatives while helping customers optimize IT s₁ ...see more

## Activity

383 followers

Posts    Comments



Show all posts →

## Experience



**Enterprise Account Executive**
Clutch Solutions
Apr 2025 - Present · 1 mo

**Sr. Enterprise Account Executive**
SHI International Corp. · Full-time
Apr 2013 - Mar 2025 · 12 yrs

## Interests

Companies

**Hewlett Packard Enterprise**
3,672,262 followers
+ Follow

**Oracle**
10,266,265 followers
+ Follow

Show all companies →

Ad ···

See the full list of Who's Viewed Your Profile

Premium

Kelsey, restart your Premium free trial today

Try for Free

More profiles for you

**Bud Gautier** · 3rd
Enterprise Account Executive at SHI International Corp.
Message

**Amza Safi** · 3rd
Enterprise Account Executive at Clutch Solutions
Message

**Wil Crooks** · 3rd
Account Executive at Clutch Solutions
Message

**Cameron Mulloy** · 3rd
Enterprise Account Executive at Clutch Solutions
Message





**Kelsey, explore relevant opportunities
with Winstead PC**

Get the latest jobs and industry news

Follow

# EXHIBIT B-2





**Enterprise Account Executive**
Clutch Solutions
Feb 2025 - Present · 3 mos

**SHI International Corp.**
9 yrs 10 mos

**Enterprise Account Executive**
Full-time
Jan 2022 - Feb 2025 · 3 yrs 2 mos
Austin, Texas, United States

**Strategic Account Executive**
Jan 2020 - Feb 2025 · 5 yrs 2 mos
Austin, TX

My team and I manage some of SHI's largest customers strategic customers. With global footprints and billions in revenue, my customers require...

**Senior Account Executive & Team Lead**
Aug 2016 - Feb 2025 · 8 yrs 7 mos
Austin, Texas Area

Show all 5 experiences →

**Co-Founder**
Ex Machina Ventures
Sep 2017 - Feb 2025 · 7 yrs 6 mos
Austin, TX

**Distributor Sales Consultant**
Modern Salon Services
May 2013 - May 2015 · 2 yrs 1 mo
Austin, TX

**Sales Associate**
Nordstrom
May 2011 - May 2013 · 2 yrs 1 mo

Show all 10 experiences →

## Education

**The University of Texas at Austin**
Economics
2009 - 2014

**Collin College**
Biology, General
2008 - 2009
Activities and societies: Phi Theta Kappa

Show all 3 educations →

## Skills

**Sales**

Endorsed by Wonyoung Bang and 2 others who are highly skilled at this

Endorsed by 6 colleagues at  SHI International Corp.

39 endorsements

**Building Relationships**

7 endorsements

Show all 12 skills →

## Recommendations

**Received**    Given

Fawad D. · 2nd
Owner at Doost Consulting
April 30, 2015, Fawad worked with Amza on the same team

Amza is an extremely detail oriented person with amazing customer service and a drive for results.

## Honors & awards

**MVP of the West Region - Corp Inside Named - 2016**
Jan 2016
°SH  Associated with SHI International Corp.

**Rookie of the Year - Corp Inside Sales - 2015**
Jan 2015
°SH  Associated with SHI International Corp.

Show all 3 honors & awards →

## Languages

Dari

English

## Interests

**Top Voices**    Companies    Newsletters    Schools

**Bill Gates** in · 3rd
Chair, Gates Foundation and Founder, Breakthrough Energy
37,727,655 followers
+ Follow

**Richard Branson** in
Founder at Virgin Group
18,717,295 followers
+ Follow

Show all Top Voices →

## Causes

Animal Welfare • Arts and Culture • Children • Civil Rights and Social Action • Disaster and Humanitarian Relief • Economic Empowerment • Education • Environment • Health • Human Rights • Politics • Poverty Alleviation • Science and Technology • Social Services





Ad •••

Premium subscribers have 14x more connections on average

Premium

Kelsey, grow your network faster with Premium

Retry for free

**More profiles for you**

Bud Gautier · 3rd
Enterprise Account Executive at SHI International Corp.
Message

Chloe Frew · 3rd
Sr. Enterprise Account Executive at SHI International Corp.
Message

Cameron Mulloy · 3rd
Enterprise Account Executive at Clutch Solutions
Message

Joumana Kanaan · 2nd
Senior Account Executive at Clutch Solutions
Connect

Darryl Martin · 3rd
Sr. Account Executive
Follow

Show all

**People you may know**
From Amza's job title

Abby Montgomery
Business Development Manager at Munsch Hardt Kopf & Harr, PC
Connect

Brandi Schattle
Executive Legal Secretary at Munsch Hardt
Connect

Kara Battista
Business Development and Marketing Professional
Connect

Mary Katherine Mizell Michalek
Director of Business Development & Marketing at Munsch Hardt
Connect



**Meredith Plunkett**
Chief Business Development + Marketing Officer at Munsch Hardt

🔗 Connect

Show all

**You might like**
Pages for you



**U.S. Department of Justice**
Law Enforcement
331,965 followers

 10 connections follow this page

+ Follow



**Remote Work**
Software Development
748,282 followers

 3 connections follow this page

+ Follow

Show all

Promoted •••

 **Are you an Attorney?**
We need attorneys to help our legal
clients. Free trial to view cases.

 **Allison** & 1 other connection also
follow LegalMatch

 **Easy no-code automation**
Efficient teams use Zapier to make time
for work that matters. Try it free.

 **Deji** & 2 other connections also
follow Zapier

# EXHIBIT B-3

        



## Chris Clark ✓ · 3rd

Sr. Account Executive at Clutch Solutions

Clutch Solutions

Baylor University - Hankamer School of Business

Austin, Texas, United States · Contact info

500+ connections

Message    + Follow    More

## About

Accomplished Professional with success leading business development, marketing, and brand management initiatives to achieve goals. Demonstrated experience participating in the development and delivery of technology-based solutions and products addressing organizational needs with the skill to identify and cap ...see more

## Activity

1,123 followers



Chris Clark · 3rd+
Sr. Account Executive at Clutch Solutions
2mo ·

After much consideration, I have made the difficult decision to leave SHI after 15 years. I will always cherish my experiences there, but it is time for a change.

55 · 5 comments



Show all posts →

## Experience

**Sr Account Executive**
Clutch Solutions · Full-time
Jan 2025 - Present · 4 mos

**SHI International Corp.**
15 yrs 1 mo

**Sr. Inside Account Executive**
Oct 2012 - Feb 2025 · 12 yrs 5 mos

**Senior Inside Sales Account Manager**
Feb 2010 - Oct 2012 · 2 yrs 9 mos
Austin, TX; Phoenix, AZ

**Principle Consultant**
Magnificent Egos
2002 - May 2011 · 9 yrs 5 mos

**Sr. Loan officer**
PrimeLending/ A PlainsCapital Company
2001 - 2007 · 6 yrs

**Sr Loan Officer**
Mortgage Lending and Servicing Company
2001 - 2007 · 6 yrs

Show all 11 experiences →

## Education

**Baylor University - Hankamer School of Business**
MBA, Marketing
1995 - 1996

**James Madison University**
Business
1995 - 1996

Show all 3 educations →

## Skills

**Marketing Strategy**
Endorsed by 2 colleagues at  SHI International Corp.

34 endorsements

**Sales Management**
Endorsed by 2 colleagues at  SHI International Corp.

12 endorsements

Show all 27 skills →

## Recommendations

Received        Given



**Steve Creech** · 3rd
Writing and Editing Consultant; Publisher, DragonWing Games
July 15, 2010, Steve reported directly to Chris

Chris has fantastic drive, ambition and dedication towards making his vision a success. During my tenure with him at Magnificent Egos, he was constantly working and coming up with ideas to increase the company's viability and visibility among the gaming community.

## Interests

**Top Voices**   Companies   Groups   Newsletters   Schools

**Tony Robbins** 🔵 · 3rd
#1 New York Times best-selling author, life and business strategist, philanthropist, entrepreneur
7,297,967 followers

+ Follow

**Gary Vaynerchuk** 🔵 · 2nd
Chairman – VaynerX, CEO – VaynerMedia, Creator – VeeFriends
5,775,463 followers

+ Follow

Show all Top Voices →

Promoted •••

Kelsey, explore relevant opportunities with Burnett Specialists

Get the latest jobs and industry news

Follow

### More profiles for you

**Wil Crooks** 🔵 · 3rd
Account Executive at Clutch Solutions

Message

**Michael J. Piotrowski - CSEP** · 3rd
Senior Account Executive

Message

**Edgar Mills** 🔵 · 3rd
🏷️ Enterprise Account Executive | 💼 Sales Professional | 📊 Account Manager | ✒️ Technical Sales Leader

+ Follow

**Ed Kurpieski Jr.** 🔵 · 2nd
Account Manager | Clutch Solutions

+ Follow



# EXHIBIT B-4



## Experience



**Enterprise Account Executive**
Clutch Solutions · Full-time
Apr 2025 - Present · 1 mo
Remote

As an Enterprise Account Executive at Clutch Solutions, I serve as a trusted advisor to a strategic set of enterprise clients, delivering high-impact IT...

🏆 Analytical Skills, Vendor Negotiation and +3 skills



**SHI International Corp.**
5 yrs 7 mos

**Enterprise Account Executive**
Full-time
Jun 2023 - Mar 2025 · 1 yr 10 mos
Austin, Texas, United States · Hybrid

🏆 Communication, Sales and +3 skills

**Account Executive - Named (NY, NJ)**
Full-time
Apr 2021 - Jun 2023 · 2 yrs 3 mos
Austin, Texas, United States

Be the trusted advisor for larger and more strategic account set in the NY and NJ territories...

**Inside Sales Account Manager**
Sep 2019 - Apr 2021 · 1 yr 8 mos
Austin, Texas

Founded in 1989 and headquartered in Somerset, NJ, SHI International Corp. is a $10 billion+ global provider of information technology products...



**Sales Manager**
Markey's Rental and Staging
Oct 2017 - Sep 2019 · 2 yrs
Jw Marriot Austin

Recruited to work in Texas territory with responsibility for maximizing revenue through aggressive networking and consultive sales. Fostered...



**Client Services Manager**
Cloud Automation Solutions, Inc.
Aug 2016 - Aug 2019 · 3 yrs 1 mo
Austin, Texas Area

Cloud Automation Solutions (CAS) is a leading-edge managed services provider that delivers premier enterprise software and application...



**Customer Relations Specialist**
Apple
Jul 2014 - Jul 2016 · 2 yrs 1 mo
Austin, Texas Area

-Managing an average of 35-50 open cases using various resources/departments within Apple (Ie; billing, technical issues, etc.)...

Show all 10 experiences →

## Skills

### Vendor Negotiation

 Enterprise Account Executive at Clutch Solutions

Project Delivery

Enterprise Account Executive at Clutch Solutions

Show all 19 skills →

## Recommendations

**Received**    Given

**Alvin Brown** · 2nd
A Son, Husband, Dad | Lead Pastor | Strategy Consultant | Publisher, Podcaster, and Investor of Domain Names
January 17, 2017, Alvin managed Daniel directly

As a high-energy early riser, Dan is determined to be the early bird that gets the worm, or in this case, the customer relationship. From seeking new business to weekly customer calls to securing follow up projects, there is not one person better suited and innately skilled to as Client Services Manager to pursue, develop and nurture relationships, whether customers, employees or partners, than Dan. I've witnessed Dan traverse highly tense customer engagements that were at a point of no return with fluidity and ease, having calmed the customer with agreeable and realistic expectations while...

**Travis Mims** · 3rd
Engineering Manager
January 12, 2017, Travis was senior to Daniel but didn't manage Daniel directly

Dan exhibited exceptional customer focus while at Cloud Automation Solutions. He focused on making sure that the CAS engineering team fully understood our client's needs. Dan was instrumental in CAS delivering projects on time and with high quality.

## Interests

**Top Voices**    Companies    Groups    Newsletters

**Daymond John** · 2nd
CEO of FUBU and The Shark Group, TV Personality on ABC Shark Tank, Public Speaker
2,707,606 followers

+ Follow

**Brian G. Burns** · 2nd
Do you want more meetings? Close larger deals? Listen to the Brutal Truth about Sales Podcast
276,456 followers

+ Follow

Show all Top Voices →

Ad •••
See what possibilities your future may hold. Apply at Paycom today!



Your future starts here

Join Now



**More profiles for you**

**Amza Safi** · 3rd
Enterprise Account Executive at Clutch Solutions
[ Message ]

**Tehya Peters** · 2nd
Account Executive @ Tanium | Strategic IT Consulting
[ + Follow ]

**Chloe Frew** · 3rd
Sr. Enterprise Account Executive at SHI International Corp.
[ Message ]

**Kaleigh Reynolds** · 3rd
Enterprise Account Executive @SHI
[ Message ]

**Wil Crooks** · 3rd
Account Executive at Clutch Solutions
[ Message ]

Show all

**People you may know**
From Daniel's job title

**Abby Montgomery**
Business Development Manager at Munsch Hardt Kopf & Harr, PC
[ Connect ]

**Brandi Schattle**
Executive Legal Secretary at Munsch Hardt
[ Connect ]

**Kara Battista**
Business Development and Marketing Professional
[ Connect ]

**Mary Katherine Mizell Michalek**
Director of Business Development & Marketing at Munsch Hardt
[ Connect ]

**Meredith Plunkett**
Chief Business Development + Marketing Officer at Munsch Hardt
[ Connect ]

Show all

**You might like**
Pages for you



**American Bar Association**
Legal Services
311,217 followers

1 connection works here

+ Follow



**U.S. Department of Justice**
Law Enforcement
331,970 followers

10 connections follow this page

+ Follow

**Show all**

Ad •••
Message anyone outside your network with InMail credits



🟨 Premium

Kelsey, network smarter with Premium

Retry for free

# EXHIBIT B-5





**Nutritional Consultant**
MyFitFoods
Aug 2010 - Feb 2013 · 2 yrs 7 mos

## Education

**Texas A&M University**
Bachelor of Science, Nutritional Sciences
2006 - 2010
Grade: 3.6

Activities and societies: Nutrition and Dietetics Association

## Skills

**Nutritional Counseling**

Endorsed by 3 colleagues at SHI International Corp.

Endorsed by 1 person in the last 6 months

33 endorsements

**Personal Training**

10 endorsements

Show all 26 skills →

## Interests

Companies    Newsletters    Schools

**Texas A&M University**
391,924 followers
+ Follow

**SHI International Corp.**
138,289 followers
+ Follow

Show all companies →

Ad ···

Kelsey, reactivate your Premium free trial today!

Premium

See who's viewed your profile in the last 365 days

Reactivate Trial

## More profiles for you

**Edgar Mills** · 3rd
Enterprise Account Executive | Sales Professional | Account Manager | Technical Sales Leader



+ Follow

**Vanessa Beach** · 3rd
IT Solutions Consultant

✈ Message

**John Benson** · 3rd
Sr. Field Account Executive @ Clutch Solutions

+ Follow

**Darryl Martin** · 3rd
Sr. Account Executive

+ Follow

**Joumana Kanaan** · 2nd
Senior Account Executive at Clutch Solutions

👤 Connect

Show all

**People you may know**
From Katelyn's job title

**Abby Montgomery**
Business Development Manager at Munsch Hardt Kopf & Harr, PC

👤 Connect

**Brandi Schattle**
Executive Legal Secretary at Munsch Hardt

👤 Connect

**Kara Battista**
Business Development and Marketing Professional

👤 Connect

**Mary Katherine Mizell Michalek**
Director of Business Development & Marketing at Munsch Hardt

👤 Connect

**Meredith Plunkett**
Chief Business Development + Marketing Officer at Munsch Hardt

👤 Connect

Show all

**You might like**
Pages for you

**U.S. Department of Justice**
Law Enforcement
331,971 followers

10 connections follow this page

+ Follow



**Remote Work**
Software Development
748,301 followers

 3 connections follow this page

( + Follow )

**Show all**

Promoted •••

 **Are you an Attorney?**
We need attorneys to help our legal
clients. Free trial to view cases.
 **Allison** & 1 other connection also
follow LegalMatch

**Easy no-code automation**
Efficient teams use Zapier to make time
for work that matters. Try it free.
**Deji** & 2 other connections also
follow Zapier

# EXHIBIT B-6


       

Home
My Network
Jobs
Messaging
Notifications
Me
For Business
Retry Premi



## Matt Monte  · 3rd
Helping Enterprises Solve Complex IT Problems

 Clutch Solutions

 University of Alabama at Birmingham - Collat School of Business

Dallas-Fort Worth Metroplex · Contact info

500+ connections

Message    + Follow    More

## About

As an Enterprise Account Executive at SHI International Corp, I help customers transform their IT infrastructure and optimize their business outcomes. With over 10 years of sales experience and multiple certifications in VMware, Veeam, and Pure Storage, I have a deep understanding of the IT solutions market and the n ...see more

## Activity
2,022 followers

Posts    Comments



Matt Monte reposted this

Clutch Solutions
7,106 followers
1w · 🌐

🚨 Just one week to go until we hit the green for the ClutchCon TPC Charity Golf Tournament and we're counting down the days!  ...more

48 · 1 comment · 13 reposts

Matt Monte reposted th

Greater Phoe
13,972 followers
1w · 🌐

Join Clutch Solutions, a N
Minority Owned, industry
reseller and proud Phoen

28 · 9 reposts



Show all posts →

## Experience



**Enterprise Account Executive**
Clutch Solutions · Full-time
Apr 2025 - Present · 1 mo
Dallas-Fort Worth Metroplex

**SHI International Corp.**
11 yrs 6 mos

**Enterprise Account Executive**
Jan 2022 - Apr 2025 · 3 yrs 4 mos
Dallas-Fort Worth Metroplex

**Commercial Account Executive**
Jul 2020 - Jan 2022 · 1 yr 7 mos

• Built new book of business that achieved 380% YoY Growth
• Expanded LOBs within all account sets - ...

**District Sales Manager**
Jan 2019 - Jul 2020 · 1 yr 7 mos
Austin, Texas Area

- Developed sales professionals into top performers
- Lead Southwest Region as Top District (110% to Plan)...

Show all 7 experiences →



**Vice President/Co-Owner**
CLS Inc. Landscape & Maintenance
Jan 2011 - Jun 2013 · 2 yrs 6 mos
Birmingham, Alabama

• Developed and implemented marketing campaigns that generated a 300% increase in sales...



**Marketing Intern**
View of the City, LLC
Jan 2010 - Sep 2010 · 9 mos

• Created promotional media – Designed company media kit and power point presentations...

## Education



**UAB Collat School of Business**
Bachelor of Science Degree, Marketing, Management
2005 - 2010

Activities and societies: American Marketing Association, Professional Sales Certificate Program, Miller Heiman Sales Training

Received Professional Sales Certificate - One of 35 students to receive the Certificate from UAB in 2010...

## Licenses & certifications



**Cohesity Certified Sales Professional**
Cohesity
Issued Sep 2018

**Cohesity DNA Certification**
Cohesity
Issued Sep 2018

Show all 8 licenses & certifications →

## Skills

### Sales

Endorsed by David Sanchez and 1 other who is highly skilled at this

Endorsed by 16 colleagues at SHI International Corp.

52 endorsements

### IT Solutions

2 endorsements

Show all 43 skills →

## Recommendations

**Received**     Given



**Adam Staggenborg** · 3rd
Systems Administrator | Network Security Engineer
August 24, 2022, Adam was Matt's client

Matt is an excellent account representative. He always treated us right and went above and beyond to make sure we got what we needed.



**Elizabeth Green** · 2nd
Alchemist | Account Executive at Alchemy
July 14, 2021, Elizabeth worked with Matt on the same team

Matt Monte brings awesome energy everywhere he goes! He is driven and passionate! I've been lucky enough to work alongside Matt for over 7 years. His infectious personality and his ability to lift up the people around him make him an asset to every team he joins. His authenticity, ownership, candor and ability to navigate even the most difficult conversations with a sense of humor have helped him rise to the top. He also goes out of his way to help everyone around him. If there's a lull in the office or on a Teams video call, Matt can chime in and immediately brighten the mood with his...

Show all 11 received →

## Honors & awards

**2018 SHI Corp Club Winner - Top 15 Inside Sales Rep**
Jan 2019

Associated with SHI International Corp.

SHI Corp Club Winner (President's Club)

**2017 SHI Corp Club Winner - Top 15 Inside Sales Rep**
Dec 2018

Associated with SHI International Corp.

Presidents club for SHIs top performers.

Show all 10 honors & awards →

## Interests





# EXHIBIT B-7

 

Home  My Network  Jobs  Messaging  Notifications  Me ▾  For Business ▾  Retry Premi
     





## Neil Lella 🛡 · 3rd

Dynamic Sales & BD Leader



- Clutch Solutions



- The University of Texas at Austin

Austin, Texas, United States · Contact info

500+ connections

Message    + Follow    More

## About

Sales leader with a track record of producing results that exceed expectations in even the most unstructured scenarios. Nimble, fast learner who has and can repeatedly solve even the toughest, least defined sales and business development challenges. I relish creating what doesn't exist and then replicating results at scale. I've   ...see more

## Activity

1,911 followers

Neil Lella commented on a post • 1w

Congrats! Love seeing Will's name amongst the shout outs.

Neil Lella commented on a post • 3w

Big moves, congrats Danny!

Neil Lella commented on a post • 1mo

I'm jealous that I don't get to hang out with you AND Lisa! What a fun event.

Show all comments →

## Experience



**Enterprise Account Executive**
Clutch Solutions · Full-time
Apr 2025 - Present · 1 mo
Austin, Texas, United States · Remote

**SHI International Corp.**
Full-time · 11 yrs 8 mos

**Enterprise Sr. Inside Account Executive**
Jan 2021 - Mar 2025 · 4 yrs 3 mos

Austin, Texas Area

Currently manage 9 large, senior accounts across a variety of industries. I partner with customers to help them plan, budget, research, proc  ...see more

### Strategic Inside Account Executive

Jan 2016 - Jan 2021 · 5 yrs 1 mo

I scaled my book of business by 3x, while lowering my account set from 20 to 9. I was an SHI top sales performer (Corp Club Winner 2016, 2018, 2019...

### Inside Account Executive

Aug 2013 - Jan 2016 · 2 yrs 6 mos

I built a new, very large book of business from scratch with little to no guidance. I did this through persistence, working smart, and being scrappy...

## Education



**The University of Texas at Austin**
Bachelor's Degree, Biology/Biological Sciences, General
2008 - 2013

## Licenses & certifications



**VMware Sales Professional (VSP)**
VMware
Issued Oct 2014

## Skills

**Cloud Computing**

 3 endorsements

**Solution Selling**

4 endorsements

Show all 18 skills →

## Honors & awards

**Top GM - SMB Central Region 2015**
Jan 2016

 Associated with SHI International Corp.

Most GM for the SMB Central region in 2015.

**Central Region - Top GM Performer**
Jul 2015

Associated with SHI International Corp.

Most GM in the Central Region for the 1st half of 2015

Show all 4 honors & awards →

## Interests

Top Voices     Companies     Groups     Newsletters     Schools



Chuck Robbins in · 2nd
Chair and CEO, Cisco | Chair, Business Roundtable



130,597 followers

+ Follow

**Ross Pomerantz** · 2nd
Workplace Comedy | Stanford MBA | @Corporate.Bro
156,192 followers

+ Follow

Ad ···

See who's viewed your profile in the last 365 days

🟨 Premium

Kelsey, boost your job search with Premium

Retry for free

**More profiles for you**

**Michael Meadors** · 2nd
Enterprise Account Executive

👤 Connect

**Michael Ferrara** · 3rd
Senior Sales Executive at Cloudservus

Message

**Amza Safi** · 3rd
Enterprise Account Executive at Clutch Solutions

Message

**Chuck White** · 3rd
Enterprise Account Executive - Select West at SHI International Corp.

Message

**Steven Irwin** · 3rd
Helping organizations transition to Google Workspace, allowing them to collaborate and innovate in methods they haven't been able to before.

Message

Show all

**People you may know**
From Neil's job title

**Abby Montgomery**
Business Development Manager at Munsch Hardt Kopf & Harr, PC

👤 Connect



**Brandi Schattle**
Executive Legal Secretary at Munsch Hardt
🔗 Connect

**Kara Battista**
Business Development and Marketing Professional
🔗 Connect

**Mary Katherine Mizell Michalek**
Director of Business Development & Marketing at Munsch Hardt
🔗 Connect

**Meredith Plunkett**
Chief Business Development + Marketing Officer at Munsch Hardt
🔗 Connect

Show all

**You might like**
Pages for you

**U.S. Department of Justice**
Law Enforcement
331,968 followers
10 connections follow this page
+ Follow

**Remote Work**
Software Development
748,290 followers
3 connections follow this page
+ Follow

Show all

Promoted •••

**Are you an Attorney?**
We need attorneys to help our legal clients. Free trial to view cases.
Allison & 1 other connection also follow LegalMatch

**Easy no-code automation**
Efficient teams use Zapier to make time for work that matters. Try it free.
Deji & 2 other connections also follow Zapier

# EXHIBIT B-8


 Home
 My Network
 Jobs
 Messaging
 Notifications
 Me ▾
 For Business ▾
 Retry Premi



## Cameron Mulloy 🛡 · 3rd

Enterprise Account Executive at Clutch Solutions


- Clutch Solutions


- University of Central Florida

Austin, Texas, United States · Contact info

500+ connections

Message    **+ Follow**    More

## About

Seeking a sales position with a company that allows me to utilize my business, logistical and interpersonal skills to benefit a business or organization that supports veterans. With my background in logistics and sales, and my passion for business, I would be a perfect fit and my experience as a military leader will strengthe ...see more

## Activity

583 followers

Posts    **Comments**    Videos    Images





Cameron Mulloy reposted this

**Greater Phoenix Chamber**
13,972 followers
1w •

Join Clutch Solutions, a Native American and Minority Owned, industry leading IT value added reseller and proud Phoenix Chamber ...more

28 · 9 reposts

Cameron Mulloy repost

**Ted Tait** · 3rd+
National Recruitm
1mo •

🎯 Clutch is Hiring! 🎯
We're on the hunt for an
to join our IT reselling sal
passion for tech sales and
we want you!
✅ Sell cutting-edge IT s
✅ Build strong custome
✅ Work remotely a

**Experienced
Account Ma**
Job by Clutch
Canada (Rem

19 · 2 comments · 7



Show all posts →

## Experience



**Enterprise Account Executive**
Clutch Solutions · Full-time
Apr 2025 - Present · 1 mo
Austin, Texas, United States · Hybrid

**Inside Sales Account Manager**
SHI International Corp. · Full-time
Nov 2021 - Mar 2025 · 3 yrs 5 mos
Austin, Texas, United States

Business business business

**Work Study Student**
U.S. Department of Veterans Affairs - UCF Veterans Academic Resource Center · Part-time
Aug 2019 - Nov 2021 · 2 yrs 4 mos
Orlando, Florida

Customer service representative, assisting with the dissemination of general information regarding Veteran benefits and/or services, providing assistan...



**Assistant Manager**
JOANN Stores
Aug 2018 - Aug 2019 · 1 yr 1 mo
Orlando, Florida Area

Shift Manager of Joann Fabrics retail store. Task and manage 5-12 team members. Customer relation and guest services. Key holder for open/closi...



**Assistant Manager**
The Yankee Candle Company, Inc.
May 2018 - Aug 2018 · 4 mos
Orlando, Florida Area

Managed shift staff, organized breaks and meals, cash management and bank deposits. Over saw guest services for the individual store.

Show all 8 experiences →

## Education



**University of Central Florida**
Bachelor of Science in Business Administration - BSBA, Integrated Business
2019 - 2021

Activities and societies: Student Veterans of America - UCF Branch Veteran Knights UCF - Vice President...



**Valencia College**
Technical Certificate, Business Specialist
2018 - 2019

Show all 6 educations →

## Licenses & certifications



**Account Management: Maintaining Relationships**
LinkedIn
Issued Mar 2022

Show credential ⎋

 Learning Graphic Design: Layouts
LinkedIn
Issued Jul 2021

Show credential ⬈

Show all 10 licenses & certifications →

## Volunteering

**Vice President**
Veteran Knights UCF
Jun 2020 - Present · 4 yrs 11 mos
Veteran Support

Assume the duties of the President as needed and serve as an ex-officio member of standing committees. Plans officer's orientation and...

**Program Coordinator**
Veteran Knights - UCF Registrared Student Organization
Feb 2020 - Jun 2020 · 5 mos
Education

I organize and supervise fundraising, education, and social events hosted and ran by the Veteran Knights. I work with seven other officers to ensure...

Show all 4 volunteer experiences →

## Skills

**Team Building**
 2 endorsements

**Leadership**
 4 endorsements

Show all 31 skills →

## Recommendations

**Received**   Given

 **Andrew Troia** · 3rd
Registration & Reporting Manager at Smart Charging Technologies
November 7, 2020, Andrew worked with Cameron on the same team

Cameron and I were teammates in Applied Business Technologies at UCF, a course that emphasizes team projects and presentations. Throughout the semester, Cameron displayed unparalleled energy while delivering presentations and working with our team. His ability to effectively deliver information to an audience is a trait that he has mastered from years of experience. I would recommend Cameron to any organization that values determination and the ability to adapt to changing circumstances.

**Nicholas Curcio** · 3rd
Estimator
October 22, 2020, Nicholas and Cameron studied together

My time spent working with Cameron was productive and achieved lots of success in teamwork. Cameron works well with other team members and can take the lead as well as listen when rolls shift.

Show all 3 received →



## Courses

**GFEBS Essentials (Finance)**
00049626

**Structured Self-Development I**
1-250-C49-1 (DL)

⭐ Associated with US Army

## Honors & awards

**Army Achievement Medal**
Issued by The Secretary of The Army · Mar 2016
     Associated with 3rd Infantry Regiment "The Old Guard" Ceremonial Equipment Branch

For outstanding achievement as the regimental ceremonial equipment branch logistician, SPC Mulloy's professionalism, competence, and leadership set the...

**Army Achievement Medal**
Issued by The Secretary of The Army · Oct 2015
     Associated with 3rd Infantry Regiment "The Old Guard" Ceremonial Equipment Branch

Leadership, commitment to excellence, and dedication to duty contributed greatly to the outstanding success of the Company and Regiment.

Show all 3 honors & awards →

## Languages

English

## Interests

**Top Voices**   Companies   Newsletters   Schools

**Arianna Huffington** in · 3rd
Founder and CEO at Thrive Global
9,607,865 followers
+ Follow

**Bill Gates** in · 3rd
Chair, Gates Foundation and Founder, Breakthrough Energy
37,727,776 followers
+ Follow

Promoted •••

Kelsey, explore relevant opportunities with GableGotwals

Get the latest jobs and industry news

Follow

## More profiles for you



 10 connections follow this page

( + Follow )

 **Remote Work**
Software Development
748,305 followers

 3 connections follow this page

( + Follow )

**Show all**

Promoted •••

 **Are you an Attorney?**
We need attorneys to help our legal
clients. Free trial to view cases.

 **Allison** & 1 other connection also
follow LegalMatch

 **Amex® Gold & Dunkin'**
are teaming up to cool you down. Learn
More.

**Deji** & 16 other connections also
follow American Express

# EXHIBIT B-9



# WE ARE CLUTCH

## SOLVING IT CHALLENGES. PROUDLY NATIVE AMERICAN

ABOUT US

NEWS: Clutch Solutions Earns Third Consecutive CRN® Triple Crown Award | READ MORE ▸

## LET CLUTCH WORK FOR YOU

Focus on your core business and leave the rest to us. Technology is accelerating quickly. Rely on Clutch to help you stay ahead of your business needs.

### UNLEASH INNOVATION

Let our team remove the barriers to AI, cloud, cybersecurity, and more with our proven industry expertise.

### MANAGE COSTS

Scale your IT infrastructure quickly as your business scales to meet customer needs – not before.

### IT JUST WORKS

Proactive monitoring and maintenance means more time for business outcomes.

## CLUTCHCON 2025

Discover the essence of Clutch Solutions at ClutchCon 2025, our annual SKO event in Scottsdale, Arizona. We unite to celebrate milestones, share strategies, and pave the way for future growth. It's an exciting opportunity to connect with industry experts, gain valuable insights, and spark innovation across teams.

LEARN MORE ABOUT CLUTCHCON 2025

## IT/VAR SOLUTIONS

Clutch is proud to have been the IT support help desk solution to help businesses throughout the US and Canada grow to their potential. Our goal is to find where your business is lacking and fill those gaps with our expertise and cutting-edge technology.

We want you to succeed, and that means taking all of that extra technological and networking infrastructure work off of your plate and helping you fill the gaps in your business that you've been struggling to fill by yourself.

So go ahead, focus on your passion, and let the IT support and solution team of Clutch take care of the rest.

### EXPERIENCED AND RELIABLE SUPPORT FOR YOUR BUSINESS

LEARN MORE ABOUT IT SOLUTIONS

### DEPLOY CLIENT SOLUTIONS THAT DELIVER BUSINESS SUCCESS

LEARN MORE ABOUT VAR SOLUTIONS

## CLUTCH UNDERSTANDS YOUR BUSINESS.

Clutch is your solution to assist you in designing, orchestrating, and managing your business' IT support and infrastructure.

CREATE AN ACCOUNT          LOG IN

### EXPERT IT CONSULTANTS

Our team has the knowledge and experience to design, implement, and manage your IT infrastructure effectively.

### CUSTOMIZABLE SOLUTIONS

We tailor our services to your specific needs and budget, ensuring you get the perfect fit.

### PROFESSIONAL 24/7 SUPPORT

Regardless of your IT team's concerns, we're always here to help whenever you need us.

## CLUTCH PROUDLY SUPPORTS MINORITY-OWNED BUSINESSES

Clutch Solutions is proud to be a Native American certified Minority Business Enterprise (MBE) member of the National Minority Supplier Development Council (NMSDC). We proudly join in supporting minority-owned small businesses.

LEARN MORE ABOUT CLUTCH IN THE COMMUNITY



f   in   X

✉ SALES@CLUTCHSOLUTIONS.COM
✆ 1.888.7.CLUTCH

Copyright © 2025 Clutch Solutions | All Rights Reserved | Privacy Policy | Terms and Conditions

# EXHIBIT C

CAUSE NO. _____

| | | |
|---|---|---|
| **SHI INTERNATIONAL CORP.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **COLLIN COUNTY, TEXAS** |
| **CLUTCH SOLUTIONS, LLC,** | § | |
| **CHRISTOPHER CLARK, AMZA SAFI,** | § | |
| **DANIEL CLARK, NEIL LELLA,** | § | |
| **YAUJIN "ALEX" YOON, MATTHEW** | § | |
| **MONTE, BEAU WALKER, KATELYN** | § | |
| **(KELLER) PAINTER, JOHN** | § | |
| **"CAMERON" MULLOY, and** | § | |
| **WILLIAM WORTHAM,** | § | |
| | § | |
| *Defendants*. | § | |
| | § | _____ **JUDICIAL DISTRICT** |

## DECLARATION OF LACEY SPELL

"My name is Lacey Spell and my date of birth is January 9, 1998 and my business address is 3828 Pecana Trail, Austin, Texas 78749. I am of sound mind and capable of making this Declaration. I have personal knowledge of the facts set forth below. I declare under penalty of perjury that the foregoing is true and correct.

1.  I am Enterprise Account Executive at SHI International Corp. ("SHI" or "Plaintiff").

2.  Prior to his termination, I worked with Matthew Monte who also was an Enterprise Account Executive. Once Monte left SHI, in late March 2025, I was assigned one of his former client accounts, Vizient, Inc. ("Vizient").

3.  I recently learned that Monte started to work at Clutch Solutions after he left SHI.

4.  In early April 2025, I called Monte and asked him if he intended to solicit Vizient's business away from SHI.

5.      Monte indicated that he did intend to solicit Vizient. He told me "you know that I am not just going to throw those relationships away." Monte implied to me that there would be "friendly competition" for Vizient's business. Further, Monte told me that he spoke with the Vizient account representative that day."

Executed in Dallas County, State of Texas, on the 23rd day of April, 2025

Signed by:

*Lacey Spell*

C1FAC8AA7F514DA...

Lacey Spell

# EXHIBIT D

8:38

← **Ted Tait**    ···    ☆

Clutch Solutions

---

**JAN 30**

 **Ted Tait**  · 1:21 pm
**Clutch AE Role - Remote / No Territory / 50% commission**
Hey Clay,

I hope your week is going well. I wanted to message you again to see if you might be interested in another VAR option that pays up to 50% on the GP of every one of your sales.

Did you have time over the next week or so for a chat?

Ted Tait
National Recruitment & Business Development Manager at Clutch Solutions

---

**FEB 3**

 Clay Keenan · 3:53 pm
Thanks for reaching out, I'm not currently looking. 

---

**APR 2**

 **Ted Tait**  · 5:16 pm
Hey Clay,

Just wanted to check in and see if you were still good or if you'd be up for a chat about an AE role at Clutch?

---

 Write a message...    

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelsey Kraner on behalf of Jamil Alibhai
Bar No. 793248
KKraner@munsch.com
Envelope ID: 100019104
Filing Code Description: Plaintiff's Original Petition (OCA)
Filing Description: SHI International Corp. 's Original Verified Petition
Status as of 4/24/2025 8:47 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jamil Alibhai | | jalibhai@munsch.com | 4/23/2025 8:55:09 PM | SENT |
| Julie Christensen | | JChristensen@munsch.com | 4/23/2025 8:55:09 PM | SENT |
| Karen Lee | | KLee@munsch.com | 4/23/2025 8:55:09 PM | SENT |
| Kelsey Kraner | | KKraner@munsch.com | 4/23/2025 8:55:09 PM | SENT |
| Maddison Craig | | MCraig@munsch.com | 4/23/2025 8:55:09 PM | SENT |