IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **SHI INTERNATIONAL CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CAUSE NO. 4:25-CV-00431-SDJ** |
| **CLUTCH SOLUTIONS, LLC,** | § | |
| **CHRISTOPHER CLARK, AMZA SAFI,** | § | |
| **DANIEL CLARK, NEIL LELLA,** | § | **Oral Argument Requested[1]** |
| **YAUJIN "ALEX" YOON, MATTHEW** | § | |
| **MONTE, BEAU WALKER, KATELYN** | § | |
| **(KELLER) PAINTER, JOHN** | § | |
| **"CAMERON" MULLOY, and** | § | |
| **WILLIAM WORTHAM,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>MOTION TO DISMISS</u>**

---

[1] Clutch is requesting oral argument pursuant to Local Rule CV-7(g).

Defendant Clutch Solutions, LLC (**"Clutch"**) files this motion to dismiss (**"Motion"**) the Second Amended Verified Complaint (Dkt. 36) (**"SAC"** or "**Complaint**") filed by plaintiff SHI International Corp.'s **("SHI"** or **"Plaintiff")** and would show the Court as follows:

## I.     INTRODUCTION

SHI is a gargantuan global company whose business includes "selling or reselling computer hardware, software, and computer related services." SHI recently cut drastically the compensation of much of its salesforce, placing profits over employee morale. Not surprisingly, this led to the rapid departure of many longtime SHI employees—an entirely predictable result which infuriated SHI. Approximately one dozen of these former employees (**"Employees"**) fled SHI to work for Clutch, an Arizona reseller, whose compensation structure is significantly more generous than SHI's.

Lashing out, SHI seeks to make an example of the Employees and Clutch by enforcing comically-overbroad confidentiality, non-compete, and non-solicit provisions (the **"Restrictive Provision(s)"**) in its boilerplate agreements (the **"Agreements"**) that are unenforceable on their face.

SHI's position is untenable. It has failed to state sufficiently any claims against Clutch or the Employees[2] largely because SHI's claims are based almost entirely upon unenforceable Restrictive Provisions in the Agreements and deficient contentions of trade secret misappropriation. SHI's misappropriation claims, like its claims for breach of the Restrictive Provisions, are nothing more than a façade for a naked restraint on trade. SHI failed to plead any of the information it contends qualifies for protection under the Defend Trade Secrets Act ("**DTSA**")[3] or the Texas Uniform Trade Secrets Act (**"TUTSA"**)[4], much less misappropriated by Clutch or any of the Employees. SHI's other tort claims are

---

[2] SHI's claims against the Employees fail for the same reason stated in this Motion. The Employees are separately joining in Clutch's Motion. Clutch also joins in the Employees' arguments in their Motion to Dismiss and incorporates their Motion by this reference.

[3] 18 U.S.C. § 1836 *et seq.*

[4] Tex. Civ. Prac. & Rem. Code § 134A *et seq.*

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

a poor attempt to repackage its deficient misappropriation allegations, and each is preempted by TUTSA and suffers from other pleading deficiencies. For the reasons stated herein, the SAC should be dismissed.

## II.  ARGUMENT AND AUTHORITIES

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]  While the Court is required to accept as true the complaint's factual allegations, drawing all reasonable inferences in favor of the plaintiff, mere labels, conclusions, "formulaic recitation[s] of the elements[,]" "naked assertion[s] devoid of further factual enhancement[,]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[7]  Rule 9(b) applies to SHI's allegations of fraud in Counts 2–4 because it applies to all averments of fraud. [8]

Notably, Plaintiff's allegations are based on "information and belief."[9]  "Although allegations may be based upon information and belief, a complaint must set forth a factual basis for such belief."[10]

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6] *Id.* (citing *Twombly*, 550 U.S. at 556).

[7] *Id.* at 678 (internal quotation marks and citation omitted).

[8] Fed. R. Civ. P. 9(b); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

[9] SAC, at ¶¶ 37 & 38, Verification.

[10] *Zamora-Garcia v. Moore*, No. CIV.A. M-05-331, 2006 WL 2663802, at *10 (S.D. Tex. Sept. 15, 2006); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) ("[Plaintiff] says the allegation is made on 'information and belief'; but if he had any facts to support this assertion, they should have been set forth."); *see also Lofton by & through Leary v. Franklin Cnty., Mississippi*, No. 522CV00052DCBRHWR, 2023 WL 1999489, at *4 (S.D. Miss. Feb. 14, 2023); *Pawlow v. Dept. of Emergency Servs. and Public Protection*, 172 F. Supp. 3d 568, 570 n.4 (D. Conn. 2016) ("The Court must be skeptical of allegations based on 'information and belief' that do not 'make the inference of culpability plausible.'"), *citing Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *but see League of United Latin Am. Citizens v. Abbott*, 604 F. Supp. 3d 463, 496–97 (W.D. Tex. 2022).

Clutch Solutions, LLC's Motion to Dismiss

SHI repeatedly fails to do so here. Also of note, a court ruling on a Rule 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, matters of which a court may take judicial notice, and documents referred to in the plaintiff's complaint that are central to its claim.[11] Lastly, as set forth in Clutch's supplemental briefing (Dkt. 30), New Jersey contract law and Texas tort law apply.

### A. COUNTS 5 & 6: Plaintiff has not alleged trade secret misappropriation

SHI asserts all defendants violated the DTSA and TUTSA. Because DTSA and TUTSA are both based on the Uniform Trade Secrets Act ("**UTSA**"), "a substantial number of provisions, including the definition of 'trade secret,' are identical or very similar in many respects."[12] In 2017, TUTSA was amended to more closely conform to the DTSA.[13] Notably, the DTSA only permits a trade secret owner to bring a civil action if the trade secret relates to foreign or interstate commerce.[14]

As this Court has held, "[t]o succeed on a DTSA claim, a plaintiff must show that '(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without authorization from the plaintiff.'"[15] Under TUTSA, a plaintiff seeking to recover for trade secret misappropriation must demonstrate the following elements: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret

---

[11] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

[12] *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 333 (2019).

[13] *See* Acts 2017, 85th Leg., R.S., ch. 37, eff. Sept. 1, 2017; House Cmte. on Government Transparency & Operation, Bill Analysis, Tex. H.B. 1995 (committee report version), 85th Leg., R.S. (2017).

[14] *Providence Title Co. v. Truly Title, Inc.,* 732 F. Supp. 3d 656, 663 (E.D. Tex. 2024) (quoting 18 U.S.C. 1836(b)(1)).

[15] *Id.* (quoting *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (per curiam) as quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)).

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

without authorization from the plaintiff."[16] The SAC is devoid of well-pleaded factual allegations to support any of these elements—much less state a plausible DTSA or TUTSA claim.

In place of specific facts, SHI makes conclusory statements and has mostly copied statutory language as to the misappropriation elements of its TUTSA and DTSA claims. This is insufficient and SHI's DTSA and TUTSA claims should be dismissed on this ground alone.[17]

**Element 1: SHI fails to allege the information at issue is a trade secret.** Trade secrets are a subset of confidential information.[18] "A 'trade secret' includes 'all forms and types of financial, business, scientific, technical, economic, or engineering information' (1) that the owner has taken reasonable measures to keep confidential and (2) that derive independent economic value, actual or potential, from not being generally known by or readily accessible to the public."[19] A plaintiff bringing a trade secret case must "identify with reasonable particularity, the claimed trade secrets at issue."[20]

Here, SHI vaguely and conclusorily identified general information categories. In its TUTSA claim, SHI declares that the following categories are trade secrets: "customer and vendor lists," SHI's "quotes and pricing information, along with its methodologies for distribution and sales," and "contact information along with its information regarding products and services its customers may need or

---

[16] *Wellogix v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (quoting *Philips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)); *see also CAE Integrated*, 44 F.4th at 262; *see also* Tex. Civ. Prac. & Rem. Code § 134A.002; *cf. Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380–81 (3d Cir. 2021) (noting that "each of those elements is predicated on an adequate identification of what the plaintiff contends to be its trade secret").

[17] *Phazr, Inc. v. Ramakrishna,* No. 3:19-CV-01188-X, 2019 WL 5578578, at *4 (N.D. Tex. Oct. 28, 2019) (granting motion to dismiss trade secrets claims where plaintiff only offered conclusory allegations and merely recited elements of trade secrets claim); *see also Iqbal*, 556 U.S. at 678.

[18] *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 609 (E. D. Tex. 2021) (noting "business information is not necessarily a trade secret simply because it is confidential".

[19] *Providence,* 732 F. Supp. 3d at 663-64 (quoting 18 U.S.C. 1839(3)).

[20] *UOP LLC v. Exterran Energy Sols., L.P.,* No. 4:21-cv-02804, 2021 WL 8016712, at *1 (S.D. Tex. Sep. 28, 2021) (cleaned up).

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

want."[21] For its DTSA claim, SHI contends its "customer lists, contact information for key decision-makers, renewal/registration dates, pricing, compensation and commission structure, and identification of product suites and product needs, as well as sales training materials constitutes trade secrets under DTSA."[22] SHI does not provide any further detail for any of these categories. SHI's pleadings are bereft of any distinction between its purported "trade secrets" and matters of general or public knowledge as is required.[23] SHI presumably did so because it cannot plead sufficient facts as to how this business information is not generally known and not readily ascertainable through proper means, *e.g.*, through public sources such as ZoomInfo[24], the U.S. General Services Administration[25], the Texas Department of Information Resources[26], group purchasing organizations[27], or SHI's own website.[28]

The SAC is also devoid of facts supporting SHI's conclusory assertion the confidentiality of its business information provided it with independent economic value.[29] It is well-settled that "business information is not necessarily a trade secret simply because it is confidential."[30] In addition to being confidential, "business information alleged to be a trade secret must have independent economic value,

---

[21] SAC at ¶¶ 106, 107.

[22] SAC at ¶ 120.

[23] *UOP*, 2021 WL 8016712, at *1

[24] https://www.zoominfo.com/people-search (last visited June 25, 2025).

[25] https://www.gsaadvantage.gov/ref_text/GS35F0111K/0UXZ72.3QOC8U_GS-35F-0111K_GS35F0111K.PDF (price list for SHI) (last visited June 25, 2025).

[26] https://dir.texas.gov/contracts/dir-cpo-4875 (last visited June 25, 2025).

[27] https://www.omniapartners.com/suppliers/shi/public-sector/contract-documents (last visited June 25, 2025)

[28] https://www.shi.com/partners (last visited June 25, 2025).

[29] *See First United Bank Ins. Sols., Inc. v. Inservices, LLC*, No. CIV-22-682-R, 2023 WL 1483138, at *4 (W.D. Okla. Feb. 2, 2023) (dismissing trade secret claim for failing to "allege facts to support its contention that the secrecy of the information provided it with a competitive advantage"); *cf. CAE Integrated, LLC v. Moov Tech. Inc.*, 1:21-CV-377-RP, 2022 WL 4476784, *4 (W.D. Tex. Sept. 26, 2022) ("TUTSA was enacted to 'make uniform the law' among enacting states, so the decisiosn of other state couts are relevant to achieving this goal.").

[30] *Providence*, 732 F. Supp. 3d at 664 (collecting cases applying the DTSA and similarly worded UTSA provisions) (emphasis added).

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

*which must be derived from the fact that the information is secret.*"[31] SHI's DTSA claim generically asserts that it "derives substantial value from its proprietary account information" and that "[t]he list derives independent economic value from not being generally known to the public or readily ascertainable through legal means."[32] SHI does not identify what type of list is referenced. Its TUTSA contentions are worse: simply declaring that SHI "derives substantial value from its proprietary customer information" and that "[b]y developing and using that information, SHI has generated substantial revenues through its financial and customer services and developed goodwill with customers."[33] This is little more than a recitation of the statutory definition of trade secrets and is insufficient as a matter of law.[34] The business information SHI lists "are the types of generic business information kept by companies that, while often considered confidential, do not provide any independent economic value that is derived from being kept secret."[35] Clutch could not "reap an economic benefit by merely obtaining and possessing" this information—"something else was necessary[,]" but "[i]nformation does not have 'independent economic value' if its value depends upon an additional factor." [36]

By way of example, SHI contends that its "compensation" and "commission" information is confidential and yet it includes this very information in offer letters sent to prospective employees, not subject to any confidentiality agreement, and it publicly filed this same information with this Court.[37] SHI also voluntarily disclosed this commission information to Clutch in its letter dated April 10, 2025,

---

[31] *Id.*
[32] SAC at ¶¶ 121–122.
[33] SAC at ¶ 109.
[34] *See First United Bank Ins. Sols., Inc. v. Inservices, LLC*, No. CIV-22-682-R, 2023 WL 1483138, at *3-4 (W.D. Okla. Feb. 2, 2023) (finding allegations that "the 'customer lists, account information, and pricing of policies' ... '[were] gathered, created and developed at a great expense by Plaintiff ... and gives Plaintiff a competitive advantage over those who do not know the information'" insufficient to survive motion to dismiss).
[35] *Providence,* 732 F. Supp. 3d at 665.
[36] *Id.* at 666.
[37] *See, e.g.,* SAC at Ex. 6, pp.2-3 (Monte Offer Letter); Ex. 7, pp.2-3 (Walker Offer Letter).

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

which SHI also publicly filed with this Court.[38] SHI does the same with the names of its customers and their email addresses, filing the very emails they contend constituted trade secret misappropriation with this Court, without even attempting to seal such information.[39]

      **Element 2: SHI fails to allege that Clutch acquired the information at issue at all, much less that it did so through improper means.** The DTSA defines "misappropriation," in relevant part, as the (a) "**acquisition** of a trade secret of another" by improper means or (b) the "**disclosure or use** of a trade secret of another without express or implied consent by a person who (i) used improper means to acquire knowledge of the trade secret (ii) [or knew the trade secret was] acquired under circumstances giving rise to a duty to … limit the use of the trade secret."[40] "Improper means" is further defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means" and does not include any lawful means of acquisition.[41]

      SHI appears to contend the information was acquired by the Employees through improper means and then simply, with zero factual support, that this information must have been provided to Clutch. First, as SHI admits, it willingly supplied the information to the Employees pursuant to their roles at SHI and, as applicable, the Agreements. Accepting SHI;s allegations as true, the Employees could not have acquired the information "through improper means" because SHI voluntarily provided it to them, including to Painter despite SHI's admission she was not subject to any confidentiality agreement.[42] This is fatal to SHI's misappropriation claims as to at least the Employees.[43]

      Its contentions against Clutch fare no better. SHI has failed to adequately plead that Clutch ever

---

[38] SAC at Ex. 25.
[39] *See, e.g.,* Dkt. 19-1 pp. 9-10, 12-13, 15-21, 28-29, 31-32, 34-35, 39, 41.
[40] 18 U.S.C. § 1839(5) (emphasis added).
[41] 18 U.S.C. § 1839(6).
[42] SAC at ¶¶ 26, 29.
[43] *See Title Source, Inc. v. HouseCanary, Inc.,* 612 S.W.3d 517, 531-32 (Tex. App.--San Antonio 2020).

**Clutch Solutions, LLC's Motion to Dismiss**

acquired alleged protected information, much less by improper means.[44] In essence, SHI tasks the Court with connecting the factual gaps in its claims by inferring misappropriation simply by virtue of the fact Clutch hired former SHI employees who previously had authorization to access the information at issue during their employment with SHI—information SHI has also failed to show was not already known or knowable to Clutch through its interactions with SHI's claimed customers and vendors prior to or independent of these Employees. The mere fact of Clutch's ability to compete "does not itself suggest that [it] did so by misappropriating trade secrets."[45]

**Element 3: SHI fails to allege unauthorized use of information.** Even if the business information at issue are trade secrets (they are not), the DTSA and TUTSA claims fail for the independent reason that SHI fails to plead facts showing that Clutch or any Employee on behalf of Clutch used them. Use "is an essential element" of SHI's misappropriation claims and vital to any cause of action for misappropriation of trade secrets accrues.[46] Acquisition of a trade secret—even improper acquisition—is insufficient to show use.[47]

Paragraph 54 of the SAC, directed at only a handful of Employees, is insufficient to show use. SHI cannot "collapse the improper acquisition prong and the use prong" into one element. It must plead facts that, if taken as true, would show "actual use."[48] The SAC is devoid of the facts required to support SHI's allegations. The mere fact that Clutch may have succeeded in acquiring some of SHI's customers shortly after the Employees joined Clutch does not support SHI's assumption that Clutch or the Employees *used* its trade secrets. SHI has alleged no facts that establish the nexus required to logically

---

[44] *Twombly*, 550 U.S. at 545-46 (a complaint that merely pleads facts that are "consistent with" defendant's liability "stops short of the line between possibility and plausibility.").
[45] *GE Betz*, 885 F.3d at 326.
[46] *Providence,* 732 F. Supp. 3d at 666 (quoting *GE Betz*, 885 F.3d at 325-26); *see also id.*, at 670.
[47] *Id.,* at 671(quoting *GE Betz*, 885 F.3d at 327).
[48] *Providence,* 732 F. Supp. 3d at 669.

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

infer use from such success.[49] By way of example, it is unreasonable to infer use of trade secrets from any contention that the Employees pursued their former customers. As this Court and Fifth Circuit both recognized, "a defendant's 'knowledge of whom he worked with ..., absent other evidence, is insufficient to support a finding that he misappropriated trade secrets.'"[50] As pleaded, SHI has shown nothing more than certain Employees may have relied upon their memory when they allegedly contacted their customers. This is not "use" of SHI's customer lists, nor is such reliance unlawful or improper.[51]

## B.   COUNTS 2, 3, 4 and 7: Plaintiff's other tort claims are preempted by TUTSA

In addition to its DTSA and TUTSA claims, SHI asserts claims for breach of fiduciary duty (Count 2), tortious interference with individual defendants' agreements (Count 3), tortious interference with existing and prospective customer contracts and relationships (Count 4), conspiracy (Count 7) (collectively, the "**Other Tort Claims**"). Except for the fiduciary duty claim, which is asserted against only the Employees, all of the Other Tort Claims are asserted against Clutch.

TUTSA "'preempts all claims based on the alleged improper taking of trade secret and confidential information.'"[52] It "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."[53] The majority of courts considering this issue have interpreted this provision to mean that TUTSA broadly preempts "all claims based on the alleged improper taking of trade secret and confidential business information."[54] This is the central theme

---

[49] *CAE Integrated*, 44 F.4th at 263 ("[The plaintiff] contends that [the defendant] could never have succeeded without [the plaintiff's] data, claiming that the 'use' of this data can reasonably be inferred from [the defendant's] results. This inference is insufficient to support a finding that [defendant] used [the plaintiff's] trade secrets.") (cleaned up).

[50] *Providence,* 732 F. Supp. 3d at 670 (quoting *CAE Integrated*, 44 F.4th at 263).

[51] *Id*.

[52] *BKL Holdings, Inc. v. Globe Life Inc.*, No. 4:22- CV-00170, 2023 WL 2432012, at *4 (E.D. Tex. Mar. 9, 2023) (quoting *StoneCoat* 426 F. Supp. 3d at 338-339).

[53] Tex. Civ. Prac. & Rem. Code Ann. § 134A.007(a).

[54] *Embarcadero Techs., Inc. v. Redgate Software, Inc.,* 1:17-CV-444-RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018) (emphasis added); *see also ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp.3d 680, 685 (W.D. Tex. 2019) ("[A] tort claim is preempted by TUTSA if it is

of the SAC. SHI spells it out explicitly in the SAC's opening paragraph, asserting the Employees "while employed by SHI and immediately thereafter used the knowledge and resources provided by SHI to raid, compete, and improperly solicit a number of key SHI employees, customers, and vendors and to otherwise damage SHI and hamper its successful operations while expanding Clutch's competitive presence in Texas."[55] This paragraph is incorporated by SHI into each of the counts save for its conspiracy theory.[56] The allegations SHI makes within the body of the Other Tort Claims builds upon this theme, making clear they are essentially clones of SHI's TUTSA claim. But "[w]hen the gravamen of a common law claim duplicates a TUTSA claim, the common law claim is preempted."[57] Further, tort claims that seek damages for harm that could not have occurred "without the use of alleged trade secrets" are also preempted by TUTSA.[58] According to SHI, each of the asserted Other Tort Claims was aided by the alleged use or misappropriation of trade secrets and SHI seeks a remedy for the same claimed harm as its TUTSA claim. Thus, as explained below, each is preempted by TUTSA.[59]

At its core, SHI's breach of fiduciary duty claim[60] rests upon the Employees alleged diversion of customer accounts and business, and solicitation of customers and employees "by misappropriating SHI's trade secret and confidential information for their own or Clutch's benefit" and through "their access to SHI's computer network to compete with SHI and sabotage its customer relationships."[61] This

---

'**based on the unauthorized use of information'--trade secret or not**.") (emphasis added).

[55] SAC at ¶ 1.

[56] SAC at ¶¶ 57, 69, 80, 85, 103, 117, 135.

[57] *Title Source,* 612 S.W.3d at 533; *Baylor Scott & White v. Project Rose MSO, LLC,* 2021 WL 3871957 (Tex. App.--Tyler Aug. 30, 2021, pet. denied) (citing *Title Source).*

[58] *Super Starr Int'l LLC v. Fresh Tex Produce, LLC,* 531 S.W.3d 829, 843 (Tex. App. 2017—Corpus Christi, no pet. h.).

[59] *See, e.g., Embarcadero*, 2018 WL 315753, at *3.

[60] Because it is unclear which tort SHI may assert Count 4 or Count 7 rests upon, Clutch addresses the issue of preemption of the breach of fiduciary duty claim here and joins in the Employees' Motion supporting dismissal of this count on other grounds.

[61] SAC at ¶ 74; *see also id.*, ¶¶ 1, 26, 33, 54, 69, 73-74, 76-77, 103, 106-108, 112,

is squarely preempted by TUTSA.[62] The Texas Court of Appeals found such actions could not have been done "without the use of alleged trade secrets," and, thus, a breach of fiduciary duty claim resting on such actions is preempted by TUTSA.[63] But even if SHI changed its tune to assert this information is merely confidential, and not a trade secret, its fiduciary duty claim is still preempted by TUTSA.[64] Accordingly, the Court should dismiss the parts of the breach of fiduciary duty claim premised on any allegation of misappropriation of trade secrets or confidential information.

SHI's tortious interference claim concerning the Employees' Agreements is premised largely on the same fact contentions as its alleged misappropriation of trade secret claims, and the same harm.[65] Indeed, SHI expressly asserts that Clutch and each Employee "encouraged, authorized, or ratified the [Employees] to use SHI's confidential information . . ."[66] Because "[a]t its core" this claim for tortious interference is that Clutch and Employees induced the other Employees to breach their Agreements by disclosing trade secrets and other confidential information, this claim "is preempted by TUTSA, whether or not the allegedly misappropriated material meets the statutory definition of a trade secret."[67] TUTSA

---

[62] *See BKL Holdings*, 660 F.Supp.3d at 610 (finding breach of fiduciary duty claim that "[a]t its core" is premised on misappropriation of plaintiff's trade secrets and confidential business information was preempted by TUTSA)*; see also ScaleFactor*, 394 F.Supp.3d at 685-86 (finding plaintiff's breach of fiduciary duty claim was preempted to the extent the allegations were premised on allegations of defendant wiping laptops, copying data, and deleting comments and emails).

[63] *Super Starr Int'l LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App. 2017—Corpus Christi, no pet. h.) (holding that breach of fiduciary duty claim was preempted by TUTSA when its factual underpinnings could not be present without alleged trade secrets).

[64] *Embarcadero*, 2018 WL 315753, at *4.

[65] SAC at ¶¶ 80-84.

[66] SAC at ¶ 82.

[67] *Avenu Insights & Analytics, LLC v. Azavar Gov't Sols., Inc.*, No. 6:18-CV-00422-JDK-KNM, 2023 WL 3035363, at *5 (E.D. Tex. Feb. 24, 2023); *see also Stress Eng'g Servs. v. Olson*, No. H-21-3210, 2022 WL 4086574 at *7, 2022 U.S. Dist. LEXIS 161691 at *22 (S.D. Tex. Aug. 4, 2022), *report and recommendation adopted by, Stress Eng'g Servs. v. Brian Olson & Becht Eng'g Co.*, No. H-21-3210, 2022 WL 4084433 (S.D. Tex. Sep. 6, 2022) (stating that although some of the information may not be a trade secret, preemption applies to a tortious interference with contract claim focused on defendant's inducement of plaintiff's former employee to misappropriate confidential, proprietary information).

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

preempts all tort claims based on the alleged improper taking of trade secret and confidential business information, including tortious interference claims.[68]

SHI's second tortious interference claim is focused on its "business relationships and expectancies with clients across the United States."[69] Count 4 is nothing more than a recycled version of SHI's misappropriation claims. The heart of SHI's theory of liability is SHI's allegation that the Employees "conspired in a common scheme with one another to misappropriate SHI's trade secrets" and that Clutch engaged in conduct that "constituted theft of confidential information and misappropriation of trade secrets."[70] Because SHI fails to plead facts independent of its misappropriation claims supporting a plausible claim for tortious interference, TUTSA preempts it.[71]

TUTSA preemption also applies to conspiracy claims.[72] Such claims are preempted "unless the plaintiff can show the claim is based on facts unrelated to the trade secrets misappropriation."[73] Far from this, SHI's sparse conspiracy allegations demonstrate that the alleged misappropriation of SHI's trade secrets and confidential information is the wrongdoing at the heart of claim and the purpose of the purported conspiracy.[74] TUTSA therefore preempts SHI's conspiracy claim.

---

[68] *Am. Mortg. & Equity Consultants, Inc. v. Bowerstock*, No. 1:19-CV-432-RP, 2019 WL 2250170, at *5 (W.D. Tex. May 24, 2019), *reconsideration denied*, No. 1:19-CV-RP, 2019 WL 4087400 (W.D. Tex. June 21, 2019) (citing *Embarcadero*, 2018 WL 315753, at *3).

[69] SAC at ¶ 86.

[70] SAC at ¶¶ 90-91; *see also id.* at ¶¶ 85, 100.-101.

[71] *See Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.,* No. 3:19-CV-970-X(BH), 2020 WL 2487057, at *8 (N.D. Tex. Feb. 7, 2020), *report and recommendation adopted,* No. 3:19-CV-00970-X, 2020 WL 1428941 (N.D. Tex. Mar. 24, 2020) (finding tortious interference claim preempted by TUTSA because it was based on the alleged improper taking of trade secret and confidential business information); *see also Pittsburgh Logistics Sys., Inc. v. Barricks*, No. 4:20-CV-04282, 2022 WL 705870, at *10 (S.D. Tex. Mar. 9, 2022) (finding TUTSA preempted tortious interference claim where plaintiff relied on misappropriation allegations to fulfill independent tort element).

[72] *BKL Holdings*, 660 F. Supp. 3d at 611; *Computer Scis.*, 2020 WL 2487057, at *8.

[73] *Vest Safety Med. Servs., LLC v. Arbor Envtl., LLC*, No. 4:20-CV-0812, 2022 WL 2812195, at *3 (S.D. Tex. June 17, 2022). (collecting cases); *Recif Res., LLC v. Juniper Cap. Advisors, L.P.,*, No. CV H-19-2953, 2020 WL 6748049, at *13 (S.D. Tex. Nov. 17, 2020).

[74] SAC at ¶¶ 135-136.

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

C.  **COUNTS 1 and 3: The Restrictive Provisions are unenforceable**

The confidentiality, noncompete, and non-solicit provisions that compose the Restrictive Provisions have gone through various iterations over fifteen years, but they have one thing in common: the plain language is unenforceable, defeating both Count 1 and Count 3.[75]

1.    **The confidentiality provisions are unenforceable as written**

The confidentiality provisions in the Agreements are unenforceable as violative of public policy because they do not contain exceptions ensuring compliance with a litany of statutes and corresponding regulations. By way of example. the Fair Labor Standards Act (**"FLSA"**) provides broad protection for employees to enable them to provide certain information to government agencies that "may not be waived by any agreement, policy, form, or condition of employment."[76] Another example: the National Labor Relations Act (**"NLRA"**) protects certain employee rights[77] and prohibits employers from interfering with those rights.[78] Courts have also rejected confidentiality provisions which run afoul of the whistleblower protections afforded by the Dodd-Frank Wall Street Reform and Consumer Protection Act (**"Dodd-Frank"**), the Sarbanes-Oxley Act of 2002 (**"SOX"**) for violating public policy.[79] A federal regulation prohibits the use of confidentiality agreements that would interfere with reporting possible securities law violations[80] and, notably, such protection is not limited to employees.[81] The New Jersey

---

[75] Clutch addresses SHI's breach of contract claim (Count 1) for the limited purpose that proof of this claim is the threshold requirement of SHI's tortious interference with existing contract claim (Count 3). Clutch also joins and incorporates by reference the arguments made in the Employees' Motion that SHI has failed to show a breach of these unenforceable Restrictive Provisions.

[76] 29 U.S.C. §§ 218c(a)(2) & 218c(b)(2).

[77] 29 U.S.C. § 157.

[78] 29 U.S.C. § 158(a)(1); *NLRB v. Long Island Ass'n for AIDS Care, Inc.*, 870 F.3d 82, 84 (2nd Cir. 2017) (analyzing an overbroad confidentiality provision and stating: "An employer may not require even one individual to agree or abide by unlawful restrictions as a condition of employment.").

[79] *See, e.g.*, *Erhart v. Bofi Holding*, 15-CV-02287-BAS-NLS (S.D. Cal. Feb. 14, 2017) ("[P]ublic policy in favor of whistleblower protection clearly outweighs the interest in enforcement of the agreement, and the agreement is unenforceable.").

[80] 17 C.F.R. § 240.21F-17.

[81] *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19 CIV. 4355 (VM), 2021 WL

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

Law Against Discrimination (**"NJLAD"**)[82] also prohibits certain information limiting agreements.[83] New Jersey courts have interpreted the NJLAD to invalidate confidentiality provisions that "[have] the purpose *or effect* of concealing the details relating to a claim of discrimination, retaliation, or harassment" as being against public policy and therefore unenforceable.[84] There are four versions of the non-compete provisions.[85]

The information SHI deems confidential under the provisions includes information the Employees have a right to share with government agencies as part of protected activity. Indeed, it includes *any information* which is *not generally known to the public*. Exacerbating the unlawfulness of these provisions, SHI's definition of Confidential Information *specifically includes* commission structure and other payroll information, the communication of which between employees is absolutely protected by the FLSA, the NLRA, and the NJLAD both during and after the employment relationship.

Overbroad restrictive covenants like these confidentiality provisions operate as *de facto* gag clauses for potential whistleblowers seeking vindication of their rights and those of their fellow employees under federal and state laws meant to protect them.[86] There are no carve outs or exceptions in the confidentiality provisions as required by the FLSA, NLRA, Dodd-Frank, SOX, or the NJLAD for information related to discrimination, unlawful acts, or other protected information the Employees are lawfully permitted to share. Worse still, some of the Agreements contain enforcement provisions which

---

3082209, at *2 (S.D.N.Y. July 21, 2021).

[82] N.J.S. § 10:5-1, *et seq.*

[83] N.J.S. § 10:5-12.8(a) & (r).

[84] *Savage v. Twp. Of Neptune*, 257 N.J. 204, 209, 223 (N.J. 2024) (effect of non-disparagement clause was to conceal details relating to discrimination, retaliation, and sexual harassment, rendering it unenforceable) (emphasis added); *cf. Khair v. Campbell Soup Co.*, 893 F.Supp. 316, 337 (D. N.J. 1995) (citing N.J.S.A. 34:19-1 to 34:19-8; *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980)).

[85] Appendix A.

[86] *De Facto Gag Clauses: The Legality of Employment Agreements That Undermine Dodd-Frank's Whistleblower Provisions*. 30 ABA J. Lab. & Emp. L. 87 (2014).

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

allow SHI to claw back commissions and bonus payments earned by the employee in the six months prior to their termination.[87] This impermissibly enables SHI to weaponize its employment agreements against current and former employees who engage in protected activities under federal and state law. Lest an SHI employee doubt whether SHI would wield these contracts as weapons against them, this action pointedly answers that question. The Employees are a cautionary tale for any employee who may be considering blowing the whistle on potential unlawful activity at SHI or who might seek to organize with fellow employees for improved working conditions and pay. This is particularly troublesome given that dozens of employees (beyond these Employees) who have left SHI because of dramatic pay cuts and an increasingly hostile work environment under SHI leadership.

## 2. The noncompete provisions are unenforceable as written

Employees C. Clark, Yoon, Safi, Wortham, Lella, Kotecki, and El-Batouty (collectively the, "**Non-Compete Employees**") have non-compete provisions in their respective Agreements. SHI only includes the language of one version of the non-compete provisions at issue here. There are three distinct non-compete provisions.[88] Each is unenforceable as a matter of law.

For an employee noncompete provision to be enforceable under New Jersey law, it must protect a legitimate interest of the employer, impose no undue hardship on the employee, be reasonably restricted in scope, and not injure the public. [89] Even a provision that protects a legitimate business interest must still be limited with respect to duration, area covered, and the scope of the restrained activity.[90] The burden of establishing the agreement's enforceability lies with the enforcing party.[91]

---

[87] SAC at Ex. 1 (C. Clark) ¶ 6.1; Ex. 2 (Safi) ¶ 6.1; Ex. 4 (Lella) ¶ 6.1; Ex. 5 (Yoon) ¶ 6.1; Ex. 9 (Wortham) ¶ 6.1; Ex. 10 (Kotecki) ¶ 6.1; Ex. 11 (El-Batouty) ¶ 7.1.
[88] Appendix D.
[89] *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 576, 264 A.2d 53 (1970).
[90] *Solari*, 55 N.J. at 576, 264 A.2d 53.
[91] *Accounteks.Net, Inc. v. CKR Law, LLP*, 475 N.J. Super. 493, 504, 294 A.3d 1187, 1194 (App. Div. 2023).

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

***The non-compete provisions do not advance SHI's legitimate interests.*** An employer's legitimate interests include protecting trade secrets and proprietary information, as well as customer relationships.[92] However, it is "well-settled" under New Jersey law "that **a non-compete agreement which seeks only to restrain competition is unreasonable**.[93] In other words, a valid non-compete must actually protect some specialized business interest. The SHI non-compete provisions provide no textual indication as to what specialized business interests or other legitimate interests they seek to protect. None is inferable. Even if SHI is not required to provide explicit reasoning in the contracts themselves, the effect and function of the non-competes make clear the intent is to stifle competition.

SHI cannot in good faith claim this provision is intended to protect customer relationships because the geographic scope of the restriction is completely disconnected to the areas the Non-Compete Employees had client contact, *i.e.*, their sales territories, which is generally the area in which an employer's good will is subject to appropriation by an employee. Nor can SHI assert it is necessary because of any highly specialized training the Non-Compete Employees gained at the time and expense of SHI. A review of the job descriptions and required skills for each position discounts any such contention by SHI.[94] The lack of any legitimate interest is further confirmed by SHI's election to stop including such provisions in its Agreements with Employees in the exact same positions as the Non-Compete Employees at least as of September 2, 2019[95], many of which were employed for the same length of time,[96] and performed work on the same internal teams, for the same clients, with access to the same alleged trade secrets and other confidential information,[97] with Painter apparently never even

---

[92] *Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 33, 274 A.2d 577 (1971).
[93] *Scholastic Funding Group, LLC v. Kimble*, No. CIV A 07-557 JLL, 2007 WL 1231795, at *5 (D.N.J. Apr. 24, 2007) (emphasis added).
[94] *See, e.g.,* SAC at Ex. 6 p.6; Ex. 7 pp. 6, 8.
[95] *See, e.g.,* SAC at Ex. 3 (D. Clark); Ex. 6 (Monte); Ex. 7 (Walker); Ex. 8 (Mulloy); Ex. 13 (Ward).
[96] *See, e.g.,* SAC at ¶¶ 39.
[97] SAC at ¶¶ 23–26, 39.

having such an Agreement.[98]

***The non-compete provisions place an undue burden on the Non-Compete Employees.*** Even if SHI has sufficiently pleaded a valid business interest justifying the non-competes, this interest must be balanced against any employee hardship.[99] To determine whether the hardship is undue, consideration is given to the nature of the profession, the duration of the restriction, the geographic area of the restriction and the type of restriction.[100] A non-compete provision that is overbroad in what it seeks to restrain may cause undue employee hardship. A non-compete that prevents a person from engaging in similar employment anywhere in the world constitutes an extreme hardship.

For example, in *Maw v. Advanced Clinical,* a New Jersey Appellate Court found that a non-compete that was worded in such a way as to constitute a worldwide ban on similar employment constituted the kind of undue burden that would outweigh any legitimate employer interest.[101] While the non-compete in *Maw* contained no geographic limitation, the geographic limitation of 90-miles has the same effect of restricting worldwide competition here.

C. Clark's non-compete provision states that he may not "engage in . . . ***any*** person, firm, corporation or business (whether as an employee, officer, director, agent, or principal investor) that engages in the business of selling or reselling computer hardware, software, or computer related services in competition with the Company within 90 miles of any home office or SHI facility in Austin, TX."[102] No business purpose for this provision is provided except to prohibit C. Clark from working for any SHI competitor ***irrespective of whether his role at this company competes with SHI***. In short, SHI's

---

[98] SAC at ¶ 29.
[99] *Maw v. Advanced Clinical Communications, Inc.*, 359 N.J. Super. 420, 434, 820 A.2d 105, 113 (App. Div. 2003), *rev'd on other grounds*, 179 N.J. 439, 846 A.2d 604 (2004), and *abrogated on other grounds* by *Dzwonar v. McDevitt*, 177 N.J. 451, 828 A.2d 893 (2003).
[100] *Maw,* N.J. Super. at 437 820 A.2d at 115.
[101] *Id.* at 115-116.
[102] SAC at Ex. 1 (C. Clark) ¶ 5.

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

Agreement with C. Clark prohibits him from in any way working for or with any company that sells or resells hardware, software or computer related services if he does so within 90 miles of his home office or SHI's Austin facility. The plain wording of the provision would prevent C. Clark from physically working for companies like Best Buy, Target and Walmart that all sell these items and services, even in a non-sales capacity such as a janitor or cashier.[103] Further, as SHI interprets it, C. Clark would also be precluded from working from his home office as a call-center operator for these same companies or any other company that is involved in "selling or reselling computer hardware, software, or computer related services" regardless of where in the world that company or its customers are located. Under New Jersey law, non-competes that prevent an employee from working for a competitor, regardless of the job responsibilities, is facially unenforceable. [104]

The other non-compete provisions are only mildly less egregious. While they drop the ability to enforce the non-compete in situations where the employees are involuntarily terminated and imposes a requirement that the job role be "substantially similar," they still function as an industry-wide ban on employment in the profession. A non-compete that-functions as an industry-wide ban is patently unreasonable and unenforceable as a matter of law.[105]

SHI's position is that, by accepting employment with Clutch (an Arizona entity), the Non-Compete Employees breached the non-compete provision because they are continuing to work in the industry within 90 miles of the location they worked for SHI, even if they are not competing for customers that exist within that 90-mile radius. SHI contends the 90-mile restriction means that, these

---

[103] *The Cmty. Hosp. Group, Inc. v. More*, 183 N.J. 36, 60, 869 A.2d 884, 898 (2005).
[104] *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 299, 666 A.2d 1028, 1040 (Law. Div. 1995) (providing as examples of undue burden restrictions that would prevent someone from engaging in their livelihood or needing to move).
[105] *Maw,* N.J. Super. at 437-38, 820 A.2d at 115-16; *Platinum*, 285 N.J. Super. at 299, 666 A.2d at 1040.

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

Non-Compete Employees cannot serve in a similar capacity for a competitor of SHI anywhere in the world, irrespective of whether the Non-Compete Employee is serving the same customers or targeting the same geographical region so long as they are either living within 90 miles of Austin or their home office, and irrespective of whether the competitor is based or servicing customers within these 90-mile radii. They are remote employees. Remote workers should not be forced to move to continue their professions. The non-compete provisions mandate precisely this though. The plain consequence of these provisions is that the Non-Compete Employees must move their homes and families at least 90-miles if they wish to work for companies in the hardware, software and computer services industries anywhere in the world. The New Jersey Supreme Court, justifying the enforceability of a non-compete against a neurosurgeon *only after directing the lower court to modify* the overbroad geographic restriction from 30 miles to a distance not to exceed 13 miles, stated: "Although there may be some additional burden as a result of a longer commute, [the doctor] need not uproot his family to practice outside the restricted area."[106] The non-compete provisions are unenforceable as written.

>    ***The non-compete provisions are injurious to public interest.*** The New Jersey Supreme Court has held that "[c]ourts will not enforce a restrictive agreement merely to aid the employer in extinguishing competition, albeit competition from a former employee," reasoning that "[u]ltimately, the consuming public would suffer from judicial nurturing of such naked restraints on competition."[107] Here, the non-compete provisions, like all of the Restrictive Provisions, are intentionally overbroad, designed to chill the Employees from leaving SHI, and to stifle competition. The Court should find them unenforceable.

### 3.    The customer non-solicitation provisions are unenforceable as written

Under New Jersey law, non-solicitation clauses are analyzed under similar factors to a non-

---

[106] *The Cmty. Hosp. Group, Inc.*, 183 N.J. at 60, 869 A.2d at 898.
[107] *Id.* at 635, 542 A.2d at 892.

compete agreement, as both are restrictive covenants.[108] As non-solicitation clauses are subject to the scrutiny similar to a non-compete clause, the clause must also have a legitimate business interest, not unduly burden the employees, and be limited in scope, and not impose a greater restraint than is necessary to protect the goodwill or business interests of the employer.

All Employees with agreements (the **"Non-Solicit Employees"**) have customer non-solicitation provisions in their agreements. The wording of the language varies between older and newer agreements, but all versions are unenforceable as written.[109]

*The customer non-solicit provisions do not advance SHI's legitimate interests.* Although the protection of customer relationships and confidential information can be a legitimate interest allowing for enforcement of a narrow non-solicit covenant, SHI's customer non-solicit provisions are broader than necessary to protect any legitimate interest of SHI. C. Clark's customer non-solicit, for example, effectively covers all customers of SHI because it extends to any "Customer of the Company with whom [C. Clark] had contact while employed by the Company" over his entire fifteen years, with what constitutes a qualifying "contact" left undefined in the Agreement.[110] The other three versions preclude the remaining Non-Solicit Employees from soliciting or providing services to not only existing SHI customers, but also purely prospective customers that they may have solicited at some point, albeit unsuccessfully given they were not converted from "prospects" to actual customers.[111] Under well-settled New Jersey law, these provisions do not serve a legitimate interest and are unenforceable.[112]

---

[108] *Newport Capital Group, LLC v. Loehwing*, No. CIV.A. 11-2755 MLC, 2013 WL 1314737, at *5 (D.N.J. Mar. 28, 2013), adhered to on reconsideration, No. CIV.A. 11-2755 MLC, 2013 WL 1704884 (D.N.J. Apr. 19, 2013) (applying the seminal restrictive covenant case standard to a non-solicit provision and referencing New Jersey case law doing the same).
[109] See Appendix C.
[110] SAC at Ex. 1 (C. Clark) ¶ 4(b).
[111] *See* Appendix C.
[112] *Newport*, 2013 WL 1314737, at *9 (citing *Platinum,* 285 N.J.Super. at 298, 666 A.2d 1028).

Clutch Solutions, LLC's Motion to Dismiss

***The customer non-solicit provisions place an undue burden on the Non-Solicit Employees.***

The burden placed on the Non-Solicit Employees significantly outweighs any interest SHI is trying to protect through the four customer non-solicit provisions. C. Clark's customer non-solicit reaches an impossible to know number of current and former SHI customers. There is no requirement that he have any knowledge about the customers that is proprietary to SHI or have developed any goodwill with them that SHI claims is its to use. Mere "contact", even passing in the hallway, would be enough for SHI to claim breach. This is a textbook example of an unenforceable non-solicit provision.[113]

The other Non-Solicit Employees face a similar undue burden as a result of SHI's overreach with the three other versions of SHI's customer non-solicit provisions. None contain any requirement that the Employee have had substantial dealings with any current, former, or prospective customer of SHI to be barred from soliciting or servicing them.[114] The overreach of these provisions is evident from the fact that SHI could not even identify the entire list of companies that would come within these or C. Clark's customer non-solicit provisions in its filings.[115]

All are over broad as written, without limits to their geographic or temporal scope. Each applies to the entirety of the Non-Solicit Employees' careers at SHI—this is over a decade for many of the Non-Solicit Employees.[116] Each applies irrespective of whether a customer is a current SHI customer or has been a customer in any recent period where SHI could legitimately claim it is concerned about loss of goodwill with that customer.

The provisions also fail because it unreasonably restricts soliciting or providing services to any customer or prospect they interacted with at SHI even if the services they are providing to the customer

---

[113] *Newport*, 2013 WL 1314737, at *9-10; *Platinum,* 285 N.J.Super. at 298, 666 A.2d 1028.
[114] Appendix C.
[115] *See generally* SAC; *see also* Dkt. 19-12 pp.2-3.
[116] *See e.g.,* SAC at ¶ 39; *see also id.* at Exs. 1-13.

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

are not the same ones they provided at SHI, provided SHI provides the service as well. Under this wording, an employee who sold software and hardware to SHI, with no role in providing computer services, would be prohibited from engaging with that customer to provide services they never provided at SHI, as long as SHI also provides those services anywhere in the world. There is no purpose for such an expansive restriction on a former-employee other than to punish them for leaving.

Distilled, the customer non-solicit provisions effectively bar the Non-Solicit Employees from working in their chosen industry, anywhere in the world, allowing SHI to keep them out of the market, lessening its need to compete for customers against its competitors, such as Clutch. New Jersey law "recognize that knowledge, skill, expertise, and information acquired by an employee during his employment become part of the employee's person."[117] According to the New Jersey Supreme Court, "[t]hey belong to [the employee] as an individual for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge and information received by him before entering the employment."[118] The employee "can use those skills in any business or profession he may choose, including a competitive business with his former employer." The New Jersey Supreme Court, accordingly, held that "[c]ourts will not enforce a restrictive agreement merely to aid the employer in extinguishing competition, albeit competition from a former employee," reasoning that "[u]ltimately, the consuming public would suffer from judicial nurturing of such naked restraints on competition."[119]

***The customer non-solicit provisions are injurious to public interest***. Like the non-compete provisions, the customer non-solicit provisions are naked restraints on trade, injurious to the public, and therefore unenforceable. As the New Jersey Supreme Court held, "where the employer's interests do not rise to the level of a proprietary interest deserving of judicial protection, a court will conclude that a

---

[117] *Ingersoll-Rand*, 110 N.J. at 635, 542 A.2d at 892.
[118] *Id.* (citing von Kalinowski, "Key Employees and Trade Secrets," 47 *Va.L.Rev.* 583, 586 (1961)).
[119] *Id.* at 635, 542 A.2d at 892.

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

restrictive agreement merely stifles competition and therefore is unenforceable."[120] This is precisely what SHI's customer non-solicit provisions do. They preclude companies from having their choice in the person they wish to conduct business with, to fulfill their hardware and software needs, even if they have not done business with SHI at all and were mere "prospects" of SHI or had not done business with them in the last 15 years. The harm to the public outweighs SHI's interests in enforcing the customer non-solicit provisions.

The customer non-solicit provisions are unenforceable and should be entirely struck.

### 4.      The employee non-solicitation provisions are unenforceable as written

There are five versions of the employee non-solicit or employee non-recruitment provision in the Agreements.[121] The analysis of the employee non-solicit provisions is identical to the customer non-solicit provisions, as is the conclusion that they are unenforceable as written. The employee non-solicitation provisions do not contain a geographic limitation.[122] This alone is reason to find them unenforceable.[123] The provisions also fail under New Jersey law because they are not reasonably limited in the scope of activities prohibited.[124] The employee non-solicitation provisions on their face apply to all of SHI's nearly 7,000 employees across the world, regardless of whether the Employees ever had contact with them during their employment, and prohibits inducing an SHI employee to leave their SHI employment for any reason whatsoever, including for something as innocuous as to retire or return to college. SHI simply does not have a legitimate interest justifying such a broad restraint on the Employees. This also places an undue burden on Employees. It effectively gags SHI employees from having

---

[120] *Ingersoll-Rand,* 110 N.J. at 634–35, 542 A.2d at 892 (1988) (citing *Whitmyer Bros. v. Doyle*, 58 N.J. 25, 35–35, 274 A.2d 577, 581 (1971); *Irvington Varnish and Insulator Co. v. Van Norde,* 138 N.J.Eq. 99, 106, 46 A.2d 201 (E. & A. 1946) (Bodine, J., dissenting)).
[121] Appendix B.
[122] Appendix B.
[123] *The Cmty. Hosp. Grp.*, 183 N.J. at 58, 869 A.2d at 897 (requiring geographic limitation).
[124] *Id*. (requiring restrictive covenants to be limited in scope of activity to be enforceable).

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

discussions with each other about topics that are protected by law and as a matter of public policy—the same protections that invalidate the confidentiality provisions.

### 5. The severability provisions prohibit adding language or deleting portions of the Restrictive Provisions

SHI previously suggested that the Court may "blue pencil" the Restrictive Provisions if they are unenforceable[125] and will undoubtedly urge the same in response to this Motion. But any blue penciling must be limited to that permitted by ***both*** New Jersey law ***and*** the parties' express agreement.

Historically, New Jersey employed an all-or-nothing approach to the enforceability of Restrictive Provisions—unenforceable provisions were simply stuck in their entirety—but today courts have some discretion under which they may modify unenforceable provision.[126] More specifically, if a restrictive covenant is not deliberately unreasonable and oppressive, courts may generally *add* or delete language *within* a provision to make it enforceable. But here, SHI's Agreements contain language that expressly limits what modifications are permissible. Each of the contracts contains the following severability provision:

> In the event **any** one or more **of the provisions** contained in this Agreement shall for any reason be held to be invalid, illegal or **unenforceable in any respect**, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but **this Agreement shall be construed as if such** invalid, illegal or **unenforceable provision had never been contained herein** and the same shall be enforceable to the fullest extent permitted by law.[127]

A few things can be observed. First, this severability language operates at the provision level. This means "the clause allows *provisions, not portions of provisions*, of the Agreement to be severed."[128]  Therefore,

---

[125] Dkt. #29 pp. 4–6.
[126] *ADP, LLC v. Rafferty*, 923 F.3d 113, 127 (3d Cir. 2019).
[127] *See, e.g.,* SAC at Ex. 13 ¶ 9.3 (emphasis added).
[128] *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 477 (Fla. 2011); *Fortune-Johnson, Inc. v. QFS, LLC*, No. 1757-23-4, 2025 WL 595319, at *4 (Va. Ct. App. Feb. 25, 2025) ("[E]ach subcontract contains a severability clause that would authorize a court to strike an entire provision as unenforceable, not language within the provision.").

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

if a Restrictive Provision is unenforceable, it must be stricken in its entirety. Second, the severability provision only permits modification by deletion—additions are *not* permitted.[129] Third, and closely related to the second point, the severability language is unaccompanied by the type of language parties commonly use when they want courts to replace stricken unenforceable language with enforceable substitute language.[130] Therefore, any blue penciling of the Agreement beyond striking entirely the unenforceable Restrictive Provisions runs afoul of the deal the contracting parties made as evidenced by the plain language of the severability provisions.[131]

### 6.    The Restrictive Provisions are not valid candidates for blue penciling

Even absent the severability clause, blue penciling is not warranted here.  In *Solari Indus., Inc. v. Malady*, 55 N.J. 571 (1970), the foundational blue penciling case, the New Jersey Supreme Court explained that some provisions are not candidates for blue penciling:

> **When an employer, through superior bargaining power, extracts a deliberately unreasonable and oppressive noncompetitive covenant he is in no just position to seek, and should not receive, equitable relief from the courts.** However, an employer may act in full good faith and nonetheless may still find that the terms of the noncompetitive agreement are later judicially viewed as unnecessarily broad.[132]

This approach makes sense because salvaging unreasonable and oppressive provisions may have far-

---

[129] *Darton Envtl., Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1031 (W.D. Va. 2018) ("[T]he confidentiality agreement *lacks* a necessary temporal limitation, something a severability clause cannot *add.*").

[130] *See, e.g., AmSpec, LLC v. Calhoun*, 649 F. Supp. 3d 1345, 1349 (S.D. Ga. 2022) ("The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law.").

[131] *Kernahan*, 236 N.J. at 321, 199 A.3d 766.

[132] *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 576, 264 A.2d 53, 56 (1970) (internal citation omitted) (emphasis added); *ADP, LLC v. Rafferty*, 923 F.3d 113, 121 (3d Cir. 2019) (cleaned up) (emphasis added); *see also Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727, 765 (D.N.J. 1998), *abrogated in part by ADP, LLC v. Rafferty*, 923 F.3d 113 (3d Cir. 2019) (declining to blue pencil an overbroad restrictive covenant).

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

reaching negative consequences.[133]

Additionally, a New Jersey court refused to blue line an agreement where the plaintiff failed to "explain how the broad and ambiguous provisions of the . . . agreement could be rehabilitated without substantially rewriting the agreement."[134] In light of the myriad problems with the Restrictive Provisions, any effort to make them enforceable would require substantially rewriting the parties' agreements. Put another way, a blue pencil would not suffice; the Court would need a blue paint roller. In summary the Restrictive Provisions SHI drafted are so facially improper that SHI is in "no just position to seek, and should not receive, equitable relief" from the Court.

### D.  COUNT 3: SHI fails to state a claim for tortious interference with the Employee Agreements

In order to prevail on its tortious interference with existing contract claim, SHI: "must establish: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss."[135] Here, SHI has failed to allege sufficiently any of the elements of a tortious interference with a contract claim.

**Element 1: No allegations of a valid contract.** The Texas Supreme Court has found that contractual provisions that are unenforceable because they violate public policy are invalid bases for a tortious interference with contract claims.[136] As set forth above, the Restrictive Provisions are

---

[133] *AmeriGas Propane, L.P. v. T-Bo Propane, Inc.*, 972 F. Supp. 685, 692 (S.D. Ga. 1997) (cleaned up) ("For every covenant that finds its way to court, there are thousands which exercise an *in terrorem* effect of employees who respect their contractual obligation and on competitors who fear legal complications if they employ a covenantor. . . .").

[134] *Grow Co., Inc. v. Chokshi*, No. A-0026-10T4, 2012 WL 715978, at *9 (N.J. Super. Ct. App. Div. Mar. 7, 2012); *see also AssuredPartners, Inc. v. Schmitt*, 44 N.E.3d 463, 476–77 (Ill. App. 2015) (refusing to modify an agreement where "drastic modifications, rather than minor ones, [are] necessary and that [is] tantamount to fashioning a new agreement.") (cleaned up).

[135] *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

[136] *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660, 667 (Tex. 1990).

unenforceable as violative of public policy. Therefore, any alleged interference with those Restrictive Provisions is categorially inactionable.

**Element 2: Inadequate interference allegations.** To show intentional and malicious interference with its contracts, SHI must allege that Clutch intentionally committed an act that interfered with SHI's valid contractual relationship. SHI has failed to allege actionable interference here. The SAC is notably silent on the details of how Clutch and each Employee even interfered with the Agreements, much less did so willfully and intentionally. To establish a willful and intentional act of interference, there must be evidence that the defendant was more than a willing participant—the defendant must have knowingly induced one of the contracting parties to breach its obligations under the contract."[137] Missing from the SAC are fact allegations showing that Clutch's "intent was to effect a breach of the contract."[138] The Employees were within their rights to terminate their employment with SHI.[139] SHI's allegations show only that Clutch hired at-will employees.

SHI essentially asks this Court to infer Clutch knew about these employee agreements and then conspired to poach employees and customers from SHI, without providing the factual support needed to logically draw that inference. It simply provides conclusory statements and wants the Court to take its word for it. That is not sufficient.SHI's allegations, without more, simply does not give rise to a tortious interference claim against Clutch or the Employees.[140] To the extent SHI contends that by simply working at Clutch, Clutch and the Employees have interfered with the Agreements, that too is insufficient

---

[137] *Providence Title Co. v. Truly Title, Inc.*, CIVIL NO. 4:21-CV-147-SDJ, 2024 WL 3927229, *18 (E.D. Tex. Aug. 22, 2024) (quoting *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 786-87 (Tex. App.—Dallas 2015, no pet.) (cleaned up).

[138] *Id.* (quoting *Fluor Enters., Inc. v. Conex Int'l Corp.*, 273 S.W.3d 426, 443 (Tex. App.—Beaumont 2008, no pet.)) (cleaned up).

[139] *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 53 (Tex. Civ. App.—Texarkana 2012).

[140] *Lazer Spot*, 387 S.W.3d at 53.

**CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS**

to establish a viable claim, even if they had knowledge of the restrictive covenants.[141]

**Elements 3 & 4: Inadequate injury/damages allegations.** Because the Restrictive Provisions are unenforceable as written as violative of public policy, SHI cannot show any injury or damages from tortious interference based on alleged violations of the unenforceable Restrictive Provisions. This analysis will not change even if the Court blue pencils the Restrictive Provisions to make them enforceable—Texas law does not permit courts to retroactively hold parties liable for damages based on reformed agreements.[142]  Count 4 must be dismissed.

**E.  COUNT 4: Plaintiff has not alleged tortious interference with existing or prospective customer contracts and relationships**

The Texas Supreme Court has stated:

> To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.[143]

As set forth more fully above and below, SHI has failed to state a claim because it has not alleged adequately that Clutch's conduct was independently tortious or unlawful.

In attempt to allege independently tortious or unlawful conduct by Clutch, it appears SHI relies upon the other counts against Clutch. Here, that is insufficient. Because, as demonstrated in this Motion and the Employees' Motion, SHI has failed to state a claim against Clutch for tortious interference with existing agreements, TUTSA or DTSA violations, or conspiracy, it has failed to allege adequately

---

[141] *Id.* (burden is on former employer to provide evidence that the alleged tortfeasor "was more than a willing participant and that he knowingly induced" the former employee to breach the agreement) (cleaned up).

[142] *NCH Corp. v. Share Corp.*, 757 F.2d 1540, 1544 (5th Cir. 1985) ("There is no Texas authority for the proposition that a court may reform a contract which is void as illegal or against public policy, and then permit the reformed agreement to form the basis of an action for money damages based on tortious interference.").

[143] *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

independently tortious or unlawful conduct. This is fatal to this claim and it too must be dismissed.

### F.  COUNT 7: Plaintiff has not alleged conspiracy

In Texas, civil conspiracy is best understood not as an independent tort, but as a vehicle to extend liability "beyond the active wrongdoer."[144] The elements of this liability-extending theory are "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result."[145] Regarding the second element, "[a]n actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means."[146] Moreover, "[t]his inherently requires a meeting of the minds on the object or course of action. Thus, an actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement."[147] Finally civil conspiracy "requires an underlying tort that has caused damages."[148] "When plaintiffs fail to state a claim for any underlying tort, their clams for civil conspiracy likewise fail."[149]

Here, SHI fails to plead adequately any of these required elements, including the existence of an underlying tort. Indeed, SHI does not specify the tort it contends satisfies this gateway requirement anywhere in Count 7, which unlike its other claims, does not incorporate by reference any of the SAC's prior allegations.[150] A plain reading of the five paragraphs that comprise this count confirm it is premised

---

[144] *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925–26 (Tex. 1979) (cleaned up).
[145] *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).
[146] *Id.*
[147] *Id.* (internal citation omitted).
[148] *Thomas v. Joule Processing LLC*, No. 4:23-CV-01615, 2023 WL 8437634, at *6 (citing *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019)).
[149] *Id.* (quoting *Tummel v. Milane*, 787 App'x 226, 227 (5th Cir.2019) (cleaned up).
[150] SAC at ¶¶ 135-139.

on the same contentions central to SHI's TUTSA claim and is, thus preempted. SHI cannot evade preemption by disclaiming this connection and asserting a different underlying tort. The breach of fiduciary duty and tortious interference claims are also preempted, as shown above. Moreover, while Texas has recognized a cause of action for conspiracy to breach a fiduciary duty in transactions in which a third party knowingly participates in an employee's breach of fiduciary duty ***during his employment*** and the third party improperly benefits from it,"[151] SHI has not alleged that sufficiently here. And a breach of contract can never form the basis of a conspiracy. Accordingly, with no viable foundation in tort upon which to build its conspiracy claim, Count 7 is subject to dismissal. But even if SHI could dodge TUTSA's bar, SHI has not stated a claim for breach of fiduciary duty or tortious interference, for all the reasons stated herein and in the Employees' Motion. Thus, a conspiracy to commit breach of fiduciary duty or tortious interference fails as a matter of law.[152]

In summary, because SHI has failed to allege adequately unlawful overt acts or Clutch's knowing participating in such acts, the conspiracy claim must be dismissed. Also missing from the SAC and independently requiring dismissal are factual allegations demonstrating Clutch and the Employees reached a meeting of the minds to accomplish an object or course of action that proximately caused damages to SHI. A careful study of the five-paragraph conspiracy county reveals no facts; only improper conclusions of law. The Court should dismiss Count 7.

### III.    CONCLUSION

For the reasons stated above all claims against Clutch should be dismissed in their entirety and Clutch seeks such other and further relief to which it is justly entitled.

---

[151] *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (emphasis added).
[152] *Thomas*, 2023 WL 8437634, at *6.

CLUTCH SOLUTIONS, LLC'S MOTION TO DISMISS

Dated:  June 27, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/  *Laura Sixkiller*
    Michael M. Besser
    2200 Ross Avenue, Suite 5200
    Dallas, TX 75201
    Telephone: (214) 665-3721
    Facsimile: (214) 665-3601
    Michael.Besser@gtlaw.com
    State Bar No. 24105464

    Greenberg Traurig, LLP
    2375 E. Camelback Rd., Suite 800
    Phoenix, AZ 85016
    Telephone: (602) 445-8000
    Facsimile: (602) 445-8100
    Laura Sixkiller
    Laura.Sixkiller@gtlaw.com
    AZ State Bar No. 022014

**ATTORNEYS    FOR    DEFENDANT CLUTCH SOLUTIONS, LLC**