UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SHI INTERNATIONAL CORP. | § | |
| | § | |
| v. | § | CIVIL NO. 4:25-CV-431-SDJ |
| | § | |
| CLUTCH SOLUTIONS, LLC, ET AL. | § | |

## **MEMORANDUM OPINION AND ORDER**

SHI International Corp. ("SHI") and Clutch Solutions, LLC ("Clutch") are technology companies that sell computer hardware, software, and IT services. SHI contends that Clutch recruited fifteen former SHI employees, the Individual Defendants,[1] from SHI's office in Austin, Texas, to steal SHI's customer base through a coordinated scheme. SHI further maintains that Clutch and the Individual Defendants solicited customers to cancel existing contracts with SHI and move their business to Clutch and have pursued a concerted effort to recruit other SHI employees to join Clutch and to use SHI's purported confidential information and trade secrets to compete with SHI.

Based on these allegations, SHI brings several claims in this action, including breach-of-fiduciary-duty claims against all the Individual Defendants and breach-of-contract claims against nearly all the Individual Defendants. SHI also asserts claims

---

[1] The Court sometimes references the following Defendants collectively herein as the "Individual Defendants": Christopher Clark ("C. Clark"); Amza Safi ("Safi"); Daniel Clark ("D. Clark"); Neil Lella ("Lella"); Yaujin "Alex" Yoon ("Yoon"); Matthew Monte ("Monte"); Beau Walker ("Walker"); Katelyn (Keller) Painter ("Painter"); John "Cameron" Mulloy ("Mulloy"); William Wortham ("Wortham"); Robert Taylor Ward ("Ward"); Danya Kotecki ("Kotecki"); Yehia El-Batouty ("El-Batouty"); David Silberstein ("Silberstein"); and Ryan Flipse ("Flipse").

against Clutch and some of the Individual Defendants for tortious interference with the Individual Defendants' employment agreements, and against all Defendants for tortious interference with existing and prospective customer contracts and relationships. Finally, SHI charges that all Defendants have violated the Texas Uniform Trade Secrets Act ("TUTSA") and the federal Defend Trade Secrets Act ("DTSA"), and that the Defendants have engaged in a civil conspiracy against SHI.

Before the Court are the Individual Defendants' Motion to Dismiss, (Dkt. #63), and Clutch's Motion to Dismiss Plaintiff's Second Amended Verified Complaint, (Dkt. #64) (together, the "Motions to Dismiss").[2] The parties fully briefed the motions. *See* (Dkt. #79) (SHI's response to both); (Dkt. #102) (Defendants' joint reply); (Dkt. #105) (surreply). Having considered the briefing, the record, and the applicable law, the Court concludes that the motions should be granted in part and denied in part.

## I. BACKGROUND

SHI sells and resells computer hardware, software, and IT services. (Dkt. #50 ¶ 23). Its sales employees are categorized by customer size: small business, commercial, and enterprise. (Dkt. #50 ¶ 25). SHI's enterprise sales employees,

---

[2] The parties disagree as to whether SHI's operative filing should be styled as its second or third amended complaint. SHI styles its operative complaint as its "Second Amended Verified Complaint," (Dkt. #50); however, the Individual Defendants and Clutch refer to the same pleading as "the Third Amended Complaint" or "TAC," (Dkt. #63 at 1 n.2); (Dkt. #64 at 2 n.2). The Court recognizes that SHI had a complaint in state court, and that in this Court SHI has filed an "Original Complaint," (Dkt. #16), a "First Amended Complaint," (Dkt. #36), and a "Second Amended Complaint," (Dkt. #50). Attempting to fictionally rename the operative complaint is unhelpful. The parties should reference the operative complaint as the "Second Amended Complaint."

including all Individual Defendants, serve clients with more than 1,000 employees. (Dkt. #50 ¶ 25). The Individual Defendants worked on three teams: the inside-sales team, field-sales team, and inside-sales-support team. (Dkt. #50 ¶ 27). The inside-sales and field-sales teams are responsible for developing business within assigned geographical and business territories, while the inside-sales-support team helps service existing customer accounts. (Dkt. #50 ¶ 26).

While performing their duties, SHI provides these teams with certain non-public "proprietary information and trade secrets" related to clients and their accounts. (Dkt. #50 ¶ 28). This proprietary information includes client contacts, account histories, client-project specifications, vendor relationships, pricing and financial information, and sales training materials. (Dkt. #50 ¶ 28). SHI claims that this body of non-readily ascertainable customer intelligence—generated through years of business—fuels its competitive advantage. (Dkt. #50 ¶ 29).

SHI protects its proprietary information by giving employees access to the least amount of information necessary to conduct their jobs and utilizing a password-protected system that tracks all user activities. (Dkt. #50 ¶ 30). When an individual ceases employment, access to the system is terminated immediately. (Dkt. #50 ¶ 30). In addition, all Individual Defendants, except Painter, signed employee agreements that include provisions to protect confidential information and provisions barring the solicitation of customers and employees. (Dkt. #50 ¶¶ 31–35); *see, e.g.*, (Dkt. #50-1 at 2–3). C. Clark, Safi, Lella, Yoon, Wortham, Kotecki, and El-Batouty's contracts also contain non-compete provisions that prevent these Defendants from working for

3

a business in competition with SHI within ninety miles of any home office or SHI's office in Austin, Texas, for six months after termination. *See* (Dkt. #50 ¶¶ 31, 36); *see, e.g.*, (Dkt. #50-1 at 3).

In early 2025, SHI alleges that Clutch—a rival technology sales provider— recruited fifteen former SHI employees, the Individual Defendants, from SHI's Austin office in order to steal SHI's customer base through a coordinated scheme. (Dkt. #50 ¶¶ 37–39). According to SHI, Clutch and the Individual Defendants continue to solicit customers to cancel existing contracts with SHI and move their business to Clutch, (Dkt. #50 ¶¶ 46–62), to mount a concerted effort to recruit other SHI employees to join Clutch, (Dkt. #50 ¶¶ 63–65), and to utilize SHI's purported confidential information and trade secrets to compete with SHI as a direct competitor, (Dkt. #50 ¶ 66). SHI asserts that Clutch conducts these activities with full knowledge of the various contractual provisions at issue. (Dkt. #50 ¶¶ 45, 48, 65).

As a result, SHI contends that these, and other actions, violated the non-compete, non-solicitation, and confidentiality provisions in the respective employment agreements. SHI thus asserts the following claims: common-law breach of contract against the Individual Defendants, except Painter, (Dkt. #50 ¶¶ 69–82); common-law breach of fiduciary duty against all Individual Defendants, including Painter, (Dkt. #50 ¶¶ 83–93); common-law tortious interference with Individual Defendants' agreements against Clutch, C. Clark, Monte, Lella, and Yoon, (Dkt. #50 ¶¶ 94–101); common-law tortious interference with existing and prospective customer contracts and relationships against all Defendants, (Dkt. #50 ¶¶ 102–124);

4

TUTSA violations against all Defendants, (Dkt. #50 ¶¶ 125–140); DTSA violations against all Defendants, (Dkt. #50 ¶¶ 141–162); and common-law civil conspiracy against all Defendants, (Dkt. #50 ¶¶ 163–169).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has instructed that plausibility means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* Courts accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To determine whether the plaintiff has pleaded enough to "nudge[] [his] claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Iqbal*, 556 U.S. at 679–80 (second alteration in original) (quoting *Twombly*, 550 U.S. at 570). This threshold is surpassed when "the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A claim may also be dismissed pursuant to Rule 12(b)(6) "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

In conducting this review, a court's inquiry is limited to "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).[3]

### III. CHOICE OF LAW

Clutch removed this case to federal court by invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. #1). When a federal court exercises diversity jurisdiction over substantive state-law issues, the forum state's law governs the analysis. *See Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 387 (5th Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Federal district courts may not engage in their own independent review and interpretation of state law. *See Mason v. Stanart*, 520 F.App'x 242, 242 (5th Cir. 2013) (per curiam) (quoting *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)). Rather, when a federal court exercises diversity jurisdiction over state-law claims, it must apply the state's substantive law as determined by the final decisions of the

---

[3] At the beginning of each motion, Defendants say that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 9(b). (Dkt. #63 at 2); (Dkt. #64 at 3–4). However, those are the only mentions of Rule 9(b) in the dismissal motions. The Court will not assume a heightened pleading standard applies to any claim absent an argument that the claim "alleg[es] fraud or mistake." FED. R. CIV. P. 9(b). Because the Defendants make no such argument, Rule 9(b) is inapplicable.

state's highest court. *See Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 993 (5th Cir. 1999).

If the state's highest court has not yet ruled on a question of law at issue, the federal court follows intermediate state court decisions unless there is strong evidence that the highest state court would rule differently. *See Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940); *Webb v. City of Dall.*, 314 F.3d 787, 795 (5th Cir. 2002) ("[I]t is a well-settled principle that in diversity cases, [courts] seek guidance by looking to the precedents established by intermediate state appellate courts only when the state supreme court has not spoken on an issue[.]" (quotation omitted)). "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

Further, district courts must understand how circuit courts have interpreted state substantive law because they are "bound by [the circuit court's] prior decisions on what is the law of a state in a diversity case, just as [they] are bound by prior decisions of [circuit courts] on what is federal law." *Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (quotation omitted). Therefore, a court should follow a circuit court's decision "without regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes [the circuit court's] (prior) decision clearly wrong." *Id.* (quotation omitted).

7

Here, Texas is the forum state, so Texas law governs the choice-of-law analysis. *Int'l Ints., L.P. v. Hardy*, 448 F.3d 303, 306 (5th Cir. 2006). The Texas Supreme Court has adopted the Restatement (Second) of Conflict of Laws § 187(1), which "give[s] effect to choice of law clauses if the law chosen by the parties has a reasonable relationship with the parties and the chosen state, and the law of the chosen state is not contrary to a fundamental policy of the state." *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); *see also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990) (superseded by statute on other grounds). Here, all parties agree that the employment contracts include enforceable choice-of-law provisions that dictate New Jersey law applies. *See* (Dkt. #29 at 6); (Dkt. #30 at 1); (Dkt. #31 at 1). Additionally, New Jersey bears a reasonable relationship with the parties as it is the location of SHI's headquarters, and the choice is not contrary to any state policy.

Therefore, the analysis will be governed by New Jersey law for the common-law breach-of-contract claims against the Individual Defendants. Meanwhile, Texas law will govern the common-law breach-of-fiduciary-duty claims, both common-law tortious interference claims, the civil conspiracy claims, and the TUTSA violation claims. The DTSA violation claims will be governed by federal law.

### IV. DISCUSSION

### A. Breach of Contract

SHI's breach-of-contract claims concern provisions covering four topics in the Individual Defendants' employment agreements:[4] (1) confidentiality,

---

[4] Painter did not have an employment agreement with SHI and, therefore, SHI does not bring a breach-of-contract claim against Painter. However, for the sake of brevity, the

(2) non-solicitation of customers, (3) non-solicitation of employees, and (4) non-competition (together, the "Restrictive Provisions"). The confidentiality, non-solicitation of customers, and non-solicitation of employees provisions are found in some form in all the Individual Defendants' employment contracts. The non-compete provisions are only in C. Clark, Safi, Lella, Yoon, Wortham, Kotecki, and El-Batouty's contracts. (Dkt. #50 ¶ 36).

Clutch argues that each of the Restrictive Provisions is facially unenforceable because they (1) do not advance SHI's legitimate business interests, (2) place an undue burden on the employees due to their unreasonable scope, and (3) are injurious to the public interest. (Dkt. #64 at 14–26).[5] Likewise, the Individual Defendants, including Painter, concur with Clutch that the contracts are void and facially unenforceable because they violate public policy. (Dkt. #63 at 3). In other words, all Defendants argue that the Restrictive Provisions are unreasonable under New Jersey law. The Individual Defendants add that SHI also fails to plead sufficient facts to establish breach and damages for each Individual Defendant. (Dkt. #63 at 6–10). The Court will first address the reasonableness of the provisions and then the sufficiency of facts pleaded. At this stage of the proceedings, there is no basis for the Court to conclude that the contracts are unreasonable and, consequently, unenforceable.

---

Court will still use the term "Individual Defendants" to refer to the Individual Defendants minus Painter for this section unless otherwise noted.

[5] For the confidentiality provisions, Clutch argues that they are unenforceable only because they violate public policy due to their lack of exceptions purportedly required by multiple federal and state laws. *See* (Dkt. #64 at 22–26).

However, SHI has failed to plead sufficient facts to sustain most of its breach-of-contract claims.

### i. Reasonableness of the Restrictive Provisions[6]

Under applicable New Jersey law, "[t]o determine whether a restrictive covenant is reasonable and, thus, enforceable, the Court looks to three factors: (1) whether the restrictive covenant is necessary to protect the employer's legitimate interests in enforcement; (2) whether enforcing the restrictive covenant imposes an undue hardship on the employee; and (3) whether enforcing the restrictive covenant contravenes the public interest." *Howmedica Osteonics Corp. v. Howard*, No. 19-19254, 2022 WL 16362464, at *8 (D.N.J. Oct. 28, 2022) (cleaned up) (citing *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 61 (N.J. 1970)). "New Jersey courts have strived, if possible, to salvage restrictive covenants, construing [*Solari Indus., Inc. v. Malady*'s] three-part test as rarely justifying the total invalidation of a restrictive covenant." *ADP, LLC v. Rafferty*, 923 F.3d 113, 121 (3d Cir. 2019). Accordingly, "courts applying New Jersey law have typically resorted to blue penciling to fulfill the contract's lawful ends." *Id.* at 122. For example, "if a restrictive covenant seeks to protect client relationships, courts have narrowed the covenant to clients with which the employee interfaced." *Id.* (citing as an example *Saturn Wireless Consulting,*

---

[6] SHI correctly notes that "Clutch cannot move to dismiss claims SHI has not asserted against it," (Dkt. #79 at 11–12), because Clutch "only has standing to seek dismissal of claims that are asserted against [it]," *Pun v. Jones*, No. 3:24-CV-1059-D, 2024 WL 3504553, at *2 (N.D. Tex. July 22, 2024). However, Clutch's arguments concerning the unreasonableness of the Restrictive Provisions apply not only to count one, which is not asserted against Clutch, but also to count three, tortious interference with the Individual Defendants' contracts, which SHI asserts against Clutch as well. Therefore, for the sake of clarity, the Court will address those arguments here.

*LLC v. Aversa*, No. 17-1637, 2017 WL 1538157, at \*12 (D.N.J. Apr. 26, 2017)). In general, New Jersey law acknowledges and accepts that "non-compete agreements are a common part of commercial employment." *Maw v. Advanced Clinical Commc'ns, Inc.*, 846 A.2d 604, 609 (N.J. 2004). Thus, "New Jersey courts do not hesitate to blue pencil a covenant but will rarely invalidate one in full." *ADP*, 923 F.3d at 122.

Here, SHI alleges that the Restrictive Provisions "protect the legitimate interests of . . . SHI, such as its customer lists, marketing information, and strategic planning[.]" (Dkt. #50 ¶ 74). More specifically, SHI asserts that the non-compete and non-solicitation provisions "are reasonably related to SHI's protectable interests and legitimate business interest, namely, its confidential information, workforce stability, specialized training and materials, and customer goodwill in the form of, and without limitation, confidential information, strategic plans, customer lists, prospective customer information, customer contacts, customer proposals and agreements, customer usage information, and customer needs[.]" (Dkt. #50 ¶ 75).

Under New Jersey law, SHI's asserted interests are legitimate, as "employers have 'patently legitimate' interests in their trade secrets, confidential business information, and customer relationships." *ADP*, 923 F.3d at 121 (quoting *Whitmyer Bros. v. Doyle*, 274 A.2d 577, 581 (N.J. 1971)); *see also Howmedica Osteonics Corp.*, 2022 WL 16362464, at \*9 ("New Jersey courts have recognized that protecting customer relationships and goodwill are legitimate business interests."). New Jersey courts have gone further and "accepted that an employer may adopt a restrictive covenant to protect some 'highly specialized, current information not generally known

11

in the industry' even if it does not qualify as a trade secret or confidential business information." *ADP,* 923 F.3d at 121 n.8 (quoting *Ingersoll-Rand Co. v. Ciavatta,* 542 A.2d 879, 894 (N.J. 1988)).

Because SHI has asserted "legitimate interests" under New Jersey law in enforcing the Restrictive Provisions, *Solari,* 264 A.2d at 56, "the Court may not invalidate the clauses outright and is required to enforce the covenants to the extent reasonable under the circumstances [by] balancing the employer's need to protect its legitimate interest 'against the employee's need to earn a living in his chosen field and the public interest,'" *Nat'l Trench Safety Inc. v. US Shoring Inc.,* No. 2:25-CV-7875, 2026 WL 821339, at \*6 (D.N.J. Mar. 25, 2026) (quoting *Victaulic Co. v. Tieman,* 499 F.3d 227, 238 (3d Cir. 2007)). However, "[a]t the pleadings stage, a court rarely knows enough about the substance of this balancing act to make a judgment as to whether the covenant is reasonable." *Victaulic Co.,* 499 F.3d at 238. Because the balancing act requires a holistic, fact-intensive inquiry into the nature of the employer's interests and the effect of the Restrictive Provisions on the Individual Defendants and the public interest, the Court finds that such an inquiry is premature at this stage of litigation. *See id.* at 237 (limiting the reasonableness inquiry at the pleadings stage to whether plaintiff asserted a legitimate interest).[7]

---

[7] Concerning SHI's asserted legitimate business interests, Clutch mainly argues that the Restrictive Provisions "do not advance" these interests, pointing to a purported lack of connection between the scope of the various provisions and the asserted interests. (Dkt. #64 at 14–15, 18–19, 22). For the non-compete provisions, Clutch asserts that they seek only "to stifle competition," an illegitimate purpose under New Jersey law, which the Court can discern from the provisions' "effect and function." (Dkt. #64 at 14–15). However, as demonstrated in this section, arguments about incongruity between interests and scope are improper at the pleadings stage.

### ii. Sufficiency of Facts Pleaded

Under New Jersey law, a breach of contract claim requires the following elements: "first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a 'breach of the contract'; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)) (internal quotation marks omitted); *see also Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The Court has addressed the Individual Defendants' contention that the contracts are unenforceable, and thus invalid. *See supra* Part IV.A.i. And the Individual Defendants do not contest the second element regarding performance. Instead, the Individual Defendants outline in detail how SHI fails to plead sufficient factual allegations to establish breach and damages for each of the Individual Defendants. *See* (Dkt. #63 at 6–10).

In response, SHI addresses the Individual Defendants' specific arguments with the general claim that it need not "identify every specific fact of its breach of contract claims" and has "sufficient factual detail and supporting documents in its [Complaint]." (Dkt. #79 at 20–21). SHI asserts that it is not required to plead "a prima

---

Additionally, Defendants assert that "the severability provisions preclude the types of blue penciling required to make the Restrictive Provisions enforceable." (Dkt. #63 at 3); *see* (Dkt. #64 at 26–27). Such an argument is premature at the motion to dismiss stage as the Court lacks sufficient factual detail to decide to what extent the Restrictive Provisions are reasonable. Even so, New Jersey courts are clear that they "rarely" find circumstances "justifying the total invalidation of a restrictive covenant." *ADP*, 923 F.3d at 121.

facie case" because "the pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements.'" (Dkt. #79 at 20) (quoting *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008)). With this understanding in mind, SHI claims that it is "not required to plead every allegation with specific detail as Individual Defendants request." (Dkt. #79 at 21).

SHI is mistaken. It fails to recognize the guidance provided by the Supreme Court in the *Twombly* and *Iqbal* cases concerning the pleading requirements under Federal Rule of Civil Procedure 8(a). As the Supreme Court has explained, in conducting a Rule 12(b)(6) analysis, a court must determine if the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 (same). For a claim to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "This includes the basic requirement that the facts plausibly establish each required element for each legal claim." *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014) (citing *Iqbal*, 556 U.S. at 682–83, and *Twombly*, 550 U.S. at 557). A complaint is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Likewise, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (cleaned up).

14

For its part, SHI argues that it does not have to "establish a prima facie case on all of its breach of contract claims." (Dkt. #79 at 20). That's true so far as it goes, but irrelevant here. Of course, SHI need not *prove* its case to defeat a Rule 12(b)(6) motion. But it must provide factual allegations which, taken as true, "plausibly establish *each required element for each legal claim.*" *Coleman*, 745 F.3d at 763 (emphasis added). Because SHI has not even attempted to show how it has met this standard, and specifically how it has pleaded sufficient factual allegations for each element of its contract-breach claim as to each Defendant, the issue has effectively been conceded. *MCR Oil Tools, LLC v. DMG Mori USA, Inc.*, No. 4:20-CV-560-O, 2020 WL 13133311, at *9 (N.D. Tex. Sept. 15, 2020) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

Upon review of SHI's Complaint, the Court agrees that its allegations generally lack sufficient specificity. For example, throughout its Complaint, SHI alleges that the Individual Defendants "solicited" former SHI clients. *See, e.g.*, (Dkt. #50 ¶ 51) ("After C. Clark's departure, he solicited his former SHI customers[.]"); (Dkt. #50 ¶ 52) ("[A]fter Safi and Walker left, they solicited their former SHI customers[.]"); (Dkt. #50 ¶ 53) ("Lella solicited his former SHI customers Barr Engineering and Compass Health."); (Dkt. #50 ¶ 59) ("Ward has solicited his former SHI customer Interstate Batteries."); (Dkt. #50 ¶ 60) ("El-Batouty has solicited his former SHI customer True Manufacturing."). However, these allegations are conclusory, offering no details about the at-issue conduct. Under New Jersey law, "[m]erely being in contact with former clients does not constitute solicitation." *ING*

15

*Life Ins. & Annuity Co. v. Gitterman*, No. CIV. 10-4076, 2010 WL 3283526, at *4 (D.N.J. Aug. 18, 2010). SHI must specifically allege the *actions* taken by the Individual Defendants that rise to the level of solicitation under applicable state law, and that purportedly constitute breach of the employment agreements' non-solicitation provisions.

Consider also the non-compete provisions. SHI devotes only two paragraphs to how C. Clark, Yoon, Safi, Wortham, Lella, Kotecki, and El-Batouty are purportedly violating their employment agreements by working for Clutch. *See* (Dkt. #50 ¶¶ 67–68). However, asserting that these individuals are working for Clutch now, standing alone, does not plausibly allege a breach. The non-compete provisions have specific temporal and geographic limitations, limitations that SHI never addresses. Without allegations that C. Clark, Yoon, Safi, Wortham, Lella, Kotecki, and El-Batouty have "engage[d] in the business of selling or reselling computer hardware, software, or computer related services in competition with SHI within 90 miles of the Employee's home office, if applicable, or SHI facility in Austin[,] Texas[,]" (Dkt. #50 ¶ 36), SHI does not plead a plausible case for relief.

Or consider the provision on non-solicitation of employees. SHI alleges that C. Clark, Monte, Lella, and Yoon violated their non-solicitation of employees' provisions by soliciting SHI employees. (Dkt. #50 ¶¶ 64–65, 80). However, SHI has only one sentence that covers the alleged breaches of all four of those defendants. *See* (Dkt. #50 ¶ 64). And when discussing these claims, SHI does not allege how the solicited employees have damaged SHI by leaving. The only quote SHI musters in its

16

favor constitutes a mere complimentary message, which falls short of the type of specific allegations needed to plausibly allege breach of this contractual provision. *See* (Dkt. #50 ¶ 65).

Reviewing the allegations for any of the Individual Defendants, SHI does not fare better. Take Defendant Kotecki. SHI falls short of pleading any breach-of-contract claim against Kotecki. SHI alleges that Kotecki's employment agreement contains provisions covering non-solicitation of customers, (Dkt. #50 ¶ 32), non-solicitation of employees, (Dkt. #50 ¶ 33), confidentiality, (Dkt. #50 ¶ 34), and non-competition with SHI, (Dkt. #50 ¶ 36). However, beyond discussing her contract and basic jurisdictional facts, SHI states only the following concerning Kotecki:

> Lella, Mulloy, Yoon, Kotecki and Monte resigned at the end of March 2025. (Dkt. #50 ¶ 44).

> And, after Kotecki's departure in late March, it was discovered that she sent more than 200 emails with SHI's confidential information to her personal email. The emails included master services agreements with vendors (including SHI internal negotiations with its legal department concerning those agreements), price quotes, and customer data. (Dkt. #50 ¶ 66).

> SHI has discovered through vendors and customers that Kotecki is now working at Clutch. (Dkt. #50 ¶ 68).

From these allegations, it is unclear how Kotecki breached her contract. Working for Clutch is not per-se a violation of her non-compete provision. *See* (Dkt. #50-10 at 3–4) (Kotecki's non-compete provision limiting its scope to a specific geographic area). It is unclear how Kotecki's email habits violate her confidentiality provision or what damages purportedly arose from this conduct. There is a total absence of any facts supporting a breach of her non-solicitation of customers provision. *See* (Dkt. #50 ¶ 79)

17

(alleging that all Individual Defendants violated their customer non-solicitation provisions). Without more, the Complaint fails to state a "claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

Or take Defendants Safi and Walker. As to alleged customer solicitation, SHI provides no specifics on what it means by "solicitation" as to these Defendants. Again, merely staying in contact with a customer, who then decides to move business, is not a breach of contract under New Jersey law. SHI does not allege how Safi and Walker allegedly "solicited" SHI customers. *See* (Dkt. #50 ¶ 52). There are no allegations whatsoever as to Walker concerning confidential information. As to Safi's alleged breaches regarding confidential information, there are only vague comments that Safi "closed out key deal registrations with vendors that had been awarded to SHI in order to re-register them at Clutch," and an assertion that Safi "further used SHI's confidential information to create a partner/customer sheet prior to leaving SHI," *see* (Dkt. #50 ¶ 66). On their face, these allegations do not provide sufficient information to support a plausible breach claim against Safi regarding confidential information.

The exceptions are Defendants D. Clark and Wortham as to customer solicitation. As to D. Clark, SHI specifically alleges that this defendant "directed" a customer, Convera, to cancel its contract with SHI and move its business to Clutch. SHI further alleges that, thereafter, Convera moved at least some of its business to Clutch and away from SHI. *See* (Dkt. #50 ¶¶ 46, 54). As to Defendant Wortham, SHI alleges that Wortham solicited certain SHI customers "to move their business to Clutch," and that at least one customer, MVM, did move its business to Clutch.

18

(Dkt. #50 ¶ 57).  In contrast, SHI makes a similar allegation as to Defendant Yoon "discussing" the transfer of another SHI client's business to Clutch, but there is no allegation that the client in question, Intertek, moved its business to Clutch or that Yoon's alleged actions otherwise harmed SHI. *See* (Dkt. #50 ¶¶ 48, 62).

Therefore, the Court will grant the Individual Defendants' Motion to Dismiss, (Dkt. #63), as to SHI's breach-of-contract claims, except as to Defendant D. Clark and Defendant Wortham regarding solicitation of customers to move their business from SHI to Clutch. The Court will allow SHI to replead its claims, and, in so doing, SHI should include separate sections for each Defendant alleging with appropriate specificity how they breached their respective contracts with SHI. Using broad labels, like "solicitation," and sweeping, conclusory language is insufficient, particularly under applicable New Jersey law, which provides that mere contact with former clients does not amount to "solicitation." *Gitterman*, 2010 WL 3283526, at *4.

## B. Breach of Fiduciary Duty and Tort Claims

SHI also brings common-law claims under Texas law for breach of fiduciary duty against all Individual Defendants, including Painter; tortious interference with the Individual Defendants' agreements against Clutch, C. Clark, Monte, Lella, and Yoon; tortious interference with existing and prospective customer contracts and relationships against all Defendants; and civil conspiracy against all Defendants. Defendants argue that these claims are preempted under TUTSA, (Dkt. #64 at 4–10); (Dkt. #63 at 11), or otherwise should be dismissed under Rule 12(b)(6). For the following reasons, the Court will dismiss (1) SHI's claims for breach of fiduciary duty

19

as to the Individual Defendants, except Painter, (2) SHI's claims against Clutch, C. Clark, Monte, Lella, and Yoon for tortious interference with the Individual Defendants' employment agreements, and (3) SHI's claims of tortious interference with existing customer contracts and relationships. SHI may proceed with its other common-law claims.

### i. TUTSA Preemption

Defendants first argue that TUTSA preempts all of SHI's common-law claims. (Dkt. #64 at 4–10); (Dkt. #63 at 11). SHI responds that TUTSA only preempts claims based on "misappropriation of trade secrets," *not* claims based on misappropriation of otherwise confidential information or claims in which the tort claim relies on different facts from the trade secret claims. (Dkt. #79 at 30–31). Further, at the pleadings stage, SHI argues that its claims could continue in the alternative. (Dkt. #79 at 31).

TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.007(a). "Where a claim is based on a misappropriation of a trade secret, then it is preempted by [TUTSA]." *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.) (citing TEX. CIV. PRAC. & REM. CODE § 134A.007(a)). TUTSA has no effect on "contractual remedies, whether or not based upon misappropriation of a trade secret[,]" and "other civil remedies that are not based upon misappropriation of a trade secret[.]" TEX. CIV. PRAC. & REM. CODE § 134A.007(b)(1)–(2).

"Texas intermediate courts have consistently held that 'a common law claim is preempted by TUTSA when the gravamen of the claim duplicates a TUTSA claim.'" *Trinseo Eur. GmbH v. Kellogg Brown & Root, L.L.C.*, 165 F.4th 399, 421 (5th Cir. 2026) (quoting *Reynolds v. Sanchez Oil & Gas Corp.*, No. 01-18-940-CV, 2023 WL 8262764, at *17 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.)). Applying Texas law, the Fifth Circuit recently held that "even where a claim is premised on 'confidential information' rather than trade secrets, that claim is preempted if 'as pleaded' by the plaintiffs, 'the confidential and proprietary information at issue . . . falls within TUTSA's definition of a trade secret.'" *Id.* at 422 (quoting *Reynolds*, 2023 WL 8262764, at *18). The *Trinseo* court made clear that this holding embraces "artful pleading," preventing a party from avoiding TUTSA preemption by alleging that information is confidential even though it "falls within TUTSA's definition of a trade secret." *Id.* (quotations omitted). "[R]egardless of the labels chosen by [the plaintiff]," if "the substance of its common law claims 'duplicate[s]' its trade secret claims," then TUTSA preempts it. *Id.* (citing *Super Starr*, 531 S.W.3d at 843); *see, e.g.*, *Universal Plant Servs., Inc. v. Meier*, No. CV H-22-2364, 2026 WL 1483548, at *2–7 (S.D. Tex. May 27, 2026) (preempting several common-law claims under *Trinseo*'s construction of TUTSA).[8]

---

[8] Although *Trinseo* held that certain misappropriation of confidential information claims asserted in the alternative were preempted by TUTSA because the substance of the information at issue qualified as trade secrets under the statute, 165 F.4th at 422, the Court does not read *Trinseo* to prohibit alternative pleading in TUTSA cases. Indeed, it would be inconsistent with both federal and Texas law to hold that a party cannot claim, in the alternative, that misappropriated information is either a trade secret or confidential information. Federal Rule of Civil Procedure 8(d) expressly contemplates such alternative pleading, as does Texas Rule of Civil Procedure 48. Likewise, federal courts have recognized

21

However, the Fifth Circuit left open the question as to whether TUTSA also preempts claims based on truly confidential information that falls outside TUTSA's definition of a trade secret. On that question, federal courts in Texas have come to conflicting conclusions. The broad reading construes TUTSA's preemption provision as preempting all "noncontractual legal claims protecting business information, whether or not the business information is a Uniform Act trade secret." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018) (quoting Richard F. Dole, Jr., *Preemption of Other State Law by the Uniform Trade Secrets Act*, 17 SMU Sci. & Tech. L. Rev. 95, 109 (2014)); *see, e.g.*, *id.* at *2–4; *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-847-SS, 2016 WL 900577, at *6–8 (W.D. Tex. Mar. 2, 2016); *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F.Supp.3d 311, 332–39 (E.D. Tex. 2019); *BKL Holdings, Inc. v. Globe Life Inc.*, 660 F.Supp.3d 602, 608–11 (E.D. Tex. 2023). Meanwhile, the narrow reading understands TUTSA as "displac[ing] only claims related to misappropriated trade secrets as opposed to claims related to taking

---

that "a claim involving misappropriation of confidential information may be pleaded in the alternative to a claim premised on trade-secret status without being subject to preemption." *Multi-State P'ship for Prevention LLC v. Deloitte Consulting LLP*, No. 24-CV-9013, 2026 WL 1146003, at *11 (S.D.N.Y. Apr. 28, 2026); *see also Smart Team Glob., LLC v. HumbleTech LLC*, 2020 WL 2836465, at *2–3 (S.D.N.Y. June 1, 2020) (denying motion to dismiss common-law claims incorporating misappropriation of confidential information because they were pleaded in the alternative to trade-secrets claims).

And the Texas intermediate appellate court that has analyzed this issue most thoroughly reached the same conclusion under Texas law. In *Coe v. DNOW LP*, the Texas Fourteenth Court of Appeals made clear that Texas law permits alternative claims of misappropriation of trade secrets and breach of fiduciary duty concerning the same confidential information. 718 S.W.3d 338, 369–70 (Tex. App.—Houston [14th Dist.] 2025, pet. denied).

confidential or other business information that does not constitute a trade secret." *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F.Supp.3d 692, 720–21 (W.D. Tex. 2025); *see, e.g., id.* at 716–22; *AMID, Inc. v. Medic Alert Found. U.S., Inc.*, 241 F.Supp.3d 788, 825–28 (S.D. Tex. 2017); *DHI Grp., Inc. v. Kent*, 397 F.Supp.3d 904, 922–23 (S.D. Tex. 2019); *Topstone Commc'ns, Inc. v. Xu*, 729 F.Supp.3d 701, 707–09 (S.D. Tex. 2024). After reviewing relevant authorities, the parties' briefing, and TUTSA's text, the Court concludes that the narrow reading of TUTSA's preemption provision is correct.

In deciding this state-law question, the Court "is bound to resolve the issue as the state's highest court would." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019). However, as here, when "the Texas Supreme Court has not ruled on an issue," the Court must "make an *Erie* guess, predicting what the Texas Supreme Court would do if faced with the same facts." *Id.* (cleaned up). When conducting such an analysis, courts "typically treat state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning." *Id.* (cleaned up).

To begin, each Texas intermediate appellate court that has analyzed the issue favors the narrow reading of TUTSA's preemption provision. In *Reynolds v. Sanchez Oil and Gas Corporation*, the court analyzed TUTSA's text and rulings from other Texas courts to conclude that "[u]nder the plain language of TUTSA, therefore,

23

confidential information is not necessarily a trade secret." 2023 WL 8262764, at *18.[9]

Likewise, in *Coe v. DNOW LP*, the court expressly "disagree[d]" with the notion that

"[TUTSA] preempts not only claims based on the misappropriation of trade secrets,

but also claims based on the misappropriation of confidential information that does

not qualify for trade-secret protection." 718 S.W.3d at 369. Focusing on TUTSA's text,

the *Coe* court held that "such a broad reading is contrary to [TUTSA's] plain

meaning," as the text "unambiguously states" that it does not affect "civil remedies

that are not based upon misappropriation of a trade secret" and "statutorily define[s]"

the meaning of a "trade secret." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE

§ 134A.007(b)(2)). While other Texas intermediate appellate courts have arguably

touched the issue, none includes analysis as relevant, thorough, and comprehensive

as *Reynolds* and *Coe. See, e.g.*, *Super Starr*, 531 S.W.3d at 843; *Title Source, Inc. v.*

*HouseCanary, Inc.*, 612 S.W.3d 517, 532–34 (Tex. App.—San Antonio 2020, pet.

denied). The fact that both cases adopted the narrow reading of TUTSA's preemption

provision, and did so through a text-based analysis, is strong evidence that the Texas

Supreme Court would rule likewise. *See, e.g.*, *F.F.P. Operating Partners., L.P. v.*

*Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). (explaining that, [w]here text is clear, text

is determinative of [legislative] intent"); *State v. Shumake*, 199 S.W.3d 279, 284

(Tex.2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning

of the words chosen.").

---

[9] There, the distinction did not matter because "[a]s pleaded by the [plaintiff] . . . even the confidential and proprietary information at issue in this case [fell] within TUTSA's definition of a trade secret." *Reynolds*, 2023 WL 8262764, at *18.

24

Further, the Court has no "compelling reason to believe that the state supreme court would reject the lower courts' reasoning." *Ironshore*, 912 F.3d at 764 (quotation omitted). TUTSA's text limits preemption to only "civil remedies for misappropriation of a trade secret" and "does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret[.]" TEX. CIV. PRAC. & REM. CODE § 134A.007(a), (b). "When construing a statute," Texas courts' "primary objective is to ascertain and give effect to the Legislature's intent," which they discern by "begin[ning] with the statute's words." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "And if a statute is unambiguous, [Texas courts] adopt the interpretation supported by its plain language[.]" *Id.* Here, the statutory text is unambiguous: "[T]his chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.007(a). TUTSA even defines precisely what "misappropriation" and "trade secret" mean. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(3), (6). Because Texas courts "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen," *TGS-NOPEC*, 340 S.W.3d at 439, the Court takes "misappropriation of a trade secret" with its provided definitions to mean just that and no more.

Lastly, while the Fifth Circuit has not construed TUTSA's preemption provision beyond its ruling in *Trinseo*, it has considered a nearly identical provision in Louisiana's version of the Uniform Trade Secrets Act ("LUTSA"). In *Brand Services, L.L.C. v. Irex Corp.*, the Fifth Circuit held that "LUTSA preempts a civilian

25

law claim for conversion of trade secrets, but does not preempt a civilian law conversion claim for confidential information that is not a trade secret." 909 F.3d 151, 157 (5th Cir. 2018).[10] There, the Fifth Circuit looked to two intermediate state appellate courts and found that the cases "appear[ed] consistent with the plain text and stated purpose of LUTSA's preemption provision." *Id.* at 159. As the provisions in the two statutes are almost identical—*compare* TEX. CIV. PRAC. & REM. CODE § 134A.007 *with* LA. STAT. ANN. § 51:1437—"[t]he Fifth Circuit's analysis of the scope of LUTSA's preemption only further reaffirms the Court's narrow read of TUTSA preemption." *El Paso Disposal*, 766 F.Supp.3d at 720.

Therefore, the Court will only dismiss a claim as preempted under TUTSA if "the gravamen of the claim duplicates a TUTSA claim." *Trinseo*, 165 F.4th at 421 (quoting *Reynolds*, 2023 WL 8262764, at *17). However, that claim must be based on misappropriation of a trade secret under TUTSA, *not* misappropriation of information outside TUTSA's definition of "trade secret."

### ii. Breach of Fiduciary Duty

At the outset, the Individual Defendants have provided no basis to dismiss SHI's breach-of-fiduciary-duty claims as preempted under TUTSA because they failed to present their own arguments on this issue. Instead, the Individual Defendants assert that "[a]s set forth in Clutch's Motion, TUTSA preempts other tort claims," including "breach of fiduciary duties[.]" (Dkt. #63 at 11). However, SHI

---

[10] In accord with the later-decided *Trinseo*, *Brand Services* holds that "the plain text of LUTSA would preclude a civilian law conversion claim involving confidential information that qualifies as a trade secret under LUTSA." 909 F.3d at 158.

pleads a breach-of-fiduciary-duty claim against *only* the Individual Defendants. *See* (Dkt. #50 at 21). Clutch has no standing to ask this Court to dismiss a claim for another party. *See Shultz v. Nomac Drilling, L.L.C.*, No. CIV-17-169-R, 2017 WL 2958621, at *2 (W.D. Okla. July 11, 2017) ("Put simply, can parties move to dismiss claims under Rule 12(b)(6) that are not asserted against them personally? In a word, no."); *see also id.* at *2 n.3 (collecting cases).[11] Therefore, without arguments from a party with proper standing, the Court cannot dismiss the breach-of-fiduciary-duty claims against the Individual Defendants due to TUTSA preemption.

The Individual Defendants also argue that the breach-of-fiduciary-duty claims should be dismissed because the express terms of the employment agreements supersede any common-law duty. (Dkt. #63 at 12–13). To the extent any claims survive the agreements and TUTSA preemption, the Individual Defendants argue that SHI fails to plead adequate facts for each element. (Dkt. #63 at 13–15).

The elements of a breach-of-fiduciary-duty claim are: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v.*

---

[11] The Individual Defendants' attempt to incorporate by reference Clutch's arguments will not save them. *See* Local Rule CV-7(c) ("The motion and any briefing shall be contained *in one document*." (emphasis added)); *Phenix Longhorn LLC v. AU Optronics Corp.*, No. 2:23-CV-477-RWS-RSP, 2026 WL 146683, at *8 (E.D. Tex. Jan. 5, 2026) ("The Court begins by noting that the local rules do not allow motions to incorporate by reference arguments made in other motions. *See* Local Rule CV-7(c)."), *report and recommendation adopted,* No. 2:23-CV-477-RWS-RSP, 2026 WL 120405 (E.D. Tex. Jan. 15, 2026); *see also Gov't Emps. Ins. Co. v. Path Med.*, No. 8:17-CV-2848-T-17TGW, 2018 WL 11487963, at *1 (M.D. Fla. Mar. 2, 2018) (denying cross-referencing motions to dismiss due to page limit requirements).

*Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)). "When a fiduciary relationship of agency exists between employee and employer, the employee has a duty to act primarily for the benefit of the employer in matters connected with his agency." *Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2024 WL 3927637, at *4 (E.D. Tex. Aug. 22, 2024) (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st Dist.] 2003, no pet.)), *aff'd*, No. 25-40194, 2026 WL 1346202 (5th Cir. May 14, 2026) (per curiam). A fiduciary also owes the "duty not to compete with the principal on his own account in matters relating to the subject matter of the agency," "the duty to deal fairly with the principal in all transactions between them," and the "duty to deal openly with the employer and to fully disclose to the employer information about matters affecting the company's business." *Abetter*, 113 S.W.3d at 510.

At the same time, however, "[a] fiduciary relationship . . . does not preclude the fiduciary from making preparations for a future competing business venture; nor do such preparations necessarily constitute a breach of fiduciary duties." *Id.* "This is because an employer's right to demand and receive loyalty must be tempered by society's legitimate interest in encouraging competition." *Id.* Thus, "[a]n at-will employee may properly plan to compete with his employer, and may take active steps to do so while still employed. The employee has no general duty to disclose his plans and may secretly join with other employees in the endeavor without violating any duty to the employer." *Id.* (citation omitted). However, even an at-will employee "may

not (1) appropriate the company's trade secrets; (2) solicit his employer's customers while still working for his employer; (3) solicit the departure of other employees while still working for his employer; or (4) carry away confidential information, such as customer lists." *Id.* at 512. While termination of the employment relationship generally extinguishes the fiduciary relationship, some duties, such as the duty to protect trade secrets and other confidential information, continue post-employment. *See Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015); *see also* RESTATEMENT (SECOND) OF AGENCY §§ 395, 396.

Here, each of the Individual Defendants' employment agreements—except Painter by virtue of lacking such an agreement—contains a clause stating that "[t]his Agreement sets forth the entire understanding of the parties regarding Confidential Information, Trade Secrets, Non-solicitation, and Non-Recruitment[.]" (Dkt. #50-3 at 8); (Dkt. #50-6 at 6); (Dkt. #50-7 at 5); (Dkt. #50-8 at 8); (Dkt. #50-12 at 4); (Dkt. #50-13 at 4); (Dkt. #50-14 at 4).[12] These four terms cover all the at-issue fiduciary duties that at-will employees owe an employer. *See Abetter*, 113 S.W.3d at 512.

Because the breach-of-fiduciary-duty claims mirror the breach-of-contract claims, the Court must similarly dismiss these claims. *See supra* Part IV.A.ii. The

---

[12] Six of the agreements contain the following clause: "This Agreement sets forth the entire understanding of the parties regarding confidentiality, non-solicitation, and covenant not to compete[.]" (Dkt. #50-1 at 4); (Dkt. #50-2 at 4); (Dkt. #50-4 at 8); (Dkt. #50-5 at 4); (Dkt. #50-9 at 4); (Dkt. #50-10 at 4). One agreement states that "[t]his Agreement sets forth the entire understanding of the parties regarding Confidential Information, Trade Secrets, Non-Solicitation, Non-Recruitment, Covenant Not to Compete, and Arbitration of Disputes[.]" (Dkt. #50-11 at 5). For these purposes, the Court understands these provisions as covering the same ground with only minor alterations in verbiage.

contractual provisions at issue in the breach-of-contract claims cover the scope of the Individual Defendants' fiduciary duties so that an Individual Defendant could only breach his or her fiduciary duties by breaching the respective contractual provisions. Just as SHI has not sufficiently pleaded facts to establish breach of any contractual provision, *see supra* Part IV.A.ii, SHI fails to show that the Individual Defendants breached their fiduciary duties as well.[13]

The exception is Defendant Painter. The Individual Defendants argue that SHI fails to plead any nonconclusory allegation against her. (Dkt. #63 at 14–15). The Court disagrees. SHI includes the following allegations against Painter:

> Painter solicited her former SHI customer, PNM, before she left SHI asking if they would work with her at Clutch. Painter is continuing to pursue PNM as of the date of this filing. PNM has moved business to Clutch.

(Dkt. #50 ¶ 56). Thus, SHI has alleged that, before she left SHI's employment, Painter asked an SHI customer, PNM, to move its business to Clutch. SHI further alleges that PNM did, in fact, move its business from SHI to Clutch in line with Painter's request. These allegations suffice to plead a breach-of-fiduciary-duty claim against Painter.

---

[13] While the breach-of-contract claims survive as to D. Clark and Wortham's alleged breaches of their non-solicitation of customers provisions, *see supra* Part IV.A.ii., that is not sufficient for the breach-of-fiduciary-duty claims. Besides the duty not to use or disclose confidential matters, fiduciary duties typically do not survive termination of employment. *Hunn*, 789 F.3d at 581. Here, SHI fails to allege—and context suggests otherwise—that either D. Clark or Wortham solicited SHI's customers while still employed by SHI. *See* (Dkt. #50 ¶¶ 46, 54, 57). Therefore, while sufficient for a breach-of-contract claim, these allegations do not support a breach-of-fiduciary-duty claim.

Therefore, the Court will dismiss the breach-of-fiduciary-duty claims as to all Individual Defendants, except Painter.

### iii. Tortious Interference with Individual Defendants' Contracts

SHI asserts a tortious interference claim against Clutch and four of the Individual Defendants, C. Clark, Monte, Lella, and Yoon, accusing them of interfering with the Individual Defendants' employment agreements. (Dkt. #50 ¶¶ 94–101). Under Texas law, to plead tortious interference with a contract, a party must allege the following elements: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Nix v. Major League Baseball*, 62 F.4th 920, 934 (5th Cir. 2023) (quoting *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)). Defendants argue that TUTSA preempts this claim, (Dkt. #64 at 8), and that SHI pleads inadequate, conclusory allegations for each element, (Dkt. #63 at 15–16); (Dkt. #64 at 27–29). For many of the same reasons found in the breach-of-contract section, the Court will grant the Motions to Dismiss as to this claim.

As a threshold matter, TUTSA does not preempt this tortious interference claim. According to Clutch, the central contention is that Clutch, C. Clark, Monte, Lella, and Yoon, "induced the other Employees to breach their agreements by disclosing trade secrets and other confidential information." (Dkt. #64 at 8). Because "TUTSA preempts all tort claims based on alleged improper taking of trade secret

31

and confidential business information," Clutch argues that TUTSA must preempt this tortious interference claim. (Dkt. #64 at 8).

But SHI's tortious-interference claim goes beyond trade secret misappropriation. In addition to the trade secret provisions, the employment agreements contain three other contractual provisions in dispute: non-solicitation, confidentiality, and non-compete provisions. *See* (Dkt. #50 ¶ 95). Defendants can violate the non-solicitation and non-compete provisions by many means, such as "continuing to hire Non-Compete Defendants, providing services to SHI customers in violation of the Agreements, and encouraging, authorizing, or ratifying the Individual Defendants to *breach their agreements*." (Dkt. #79 at 33). Such allegations do not rely on the same set of facts required to plead a TUTSA claim and go beyond misappropriation of trade secrets. The act of encouraging others to work for a competitor in violation of a non-compete clause or to solicit a customer in violation of a non-solicitation clause falls within the purview of a tortious-interference claim without encroaching into TUTSA's territory.

As to the confidentiality provision, TUTSA only preempts claims concerning trade secret misappropriation but not claims concerning the taking or use of confidential business information that does not fall within TUTSA's definition of a trade secret. *See supra* Part IV.B.i. Therefore, this claim is preempted only insofar as "the gravamen of the claim duplicates a TUTSA claim," i.e., insofar as SHI tries to impose liability on Defendants for encouraging former employees to misappropriate trade secrets. *Trinseo*, 165 F.4th at 421 (quoting *Reynolds*, 2023 WL 8262764, at *17).

32

As claims reliant on breaches of confidentiality concerning non-trade secrets survive preemption, and none of the claims concerning tortious interference of the employees' agreements rely wholly on trade secret misappropriation, the Court cannot dismiss any claim for TUTSA preemption at this moment.

However, for the same reason SHI fails to allege sufficient facts to plead its breach-of-contract claims, SHI fails to plead interference with those contracts. As to the first element, existence of a valid contract, Defendants argue that the underlying employment agreements are unenforceable and, therefore, facially void. (Dkt. #63 at 16); (Dkt. #64 at 27–28). As previously addressed, the Court cannot make such a determination yet. *See supra* Part IV.A.i.

For the second element, Clutch and the Individual Defendants argue that SHI does not show that Defendants "knowingly" induced parties to breach their contracts. (Dkt. #63 at 16); (Dkt. #64 at 28–29). To prove willful and intentional interference, "[t]he defendant must have actual knowledge of the contract in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract." *Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 398–99 (5th Cir. 2024). Defendants contend that "[t]here is no non-conclusory allegation that any of the Employees knew the other Employees had Agreements, or if they did, what terms they contained." (Dkt. #63 at 16); *see* (Dkt. #64 at 28–29). SHI points out that its April 10, 2025, cease and desist letter informed Clutch as to the existence of these agreements, *see* (Dkt. #50-26 at 2–6); certain Individual Defendants, like Monte, had provisions in their employment agreements

33

informing them "that other employees of SHI are bound by agreements similar to this Agreement," *see* (Dkt. #50-6 at 5); and C. Clark, Monte, Lella, and Yoon, like all the Individual Defendants, except Painter, had employment agreements with SHI themselves, *see* (Dkt. #50-1, #50-4, #50-5, #50-6).

Here, SHI has pleaded sufficient facts to draw the reasonable inference that Clutch and the four Individual Defendants knew about the existence of these contractual provisions in other employees' contracts. At this stage, a court must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Given that SHI warned Clutch about the existence of these provisions in other employees' contracts and that each Individual Defendant except one had contracts with various restrictive provisions, the Court finds that SHI pleaded sufficient "facts and circumstances that would lead a reasonable person" to draw the inference that Clutch, C. Clark, Monte, Lella, and Yoon "believe[d] in the existence of the contract[s]." *Ancor*, 114 F.4th at 398–99. SHI "does not need detailed factual allegations" regarding knowledge; however, the facts pleaded here are "enough to raise a right to relief above the speculative level" at this stage. *Twombly*, 550 U.S. at 555.

However, SHI fails to allege sufficient facts to establish interference with the Individual Defendants' employment agreements. A tortious-interference claim relies on an individual interfering with a given contract. Here, SHI alleges that Clutch, C. Clark, Monte, Lella, and Yoon did just that "when they encouraged, authorized, or ratified the Individual Defendants to use SHI's confidential information, solicit

34

employees away from SHI, and directly or indirectly influence, induce, solicit, or encourage customers of SHI to abandon, reduce, or materially change their business relationships with SHI." (Dkt. #50 ¶ 99). Because SHI fails to sufficiently plead that the Individual Defendants breached their employment agreements, *see supra* Part IV.A.ii., there is no interference for which to hold Clutch, C. Clark, Monte, Lella, and Yoon liable. Further, SHI's allegations remain conclusory, failing to include specific facts to plausibly allege interference with the Individual Defendants' employment agreements.

For the foregoing reasons, the Motions to Dismiss are granted as to the claims of tortious interference with the Individual Defendants' employment agreements asserted against Defendants Clutch, C. Clark, Monte, Lella, and Yoon.

### iv. Tortious Interference with Existing and Prospective Customer Contracts and Relationships

While presented as a single claim by SHI, "Texas law distinguishes between tortious interference with existing contractual relations (i.e., an ongoing business relationship) and tortious interference with business relations (i.e., a prospective business relationship)." *Nix*, 62 F.4th at 934. The Court will address each tortious-interference claim in turn.

### a. Existing customer contracts

The elements of tortious interference with existing contractual relations are (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Id.* SHI fails to provide a single factual allegation

to plead a claim for tortious interference with existing customer contracts. For example, SHI pleads that "Defendants have tortiously interfered with SHI's existing contract with Convera willfully and intentionally." (Dkt. #50 ¶ 112). However, after a careful review of the operative complaint, it remains unclear how Defendants interfered with an existing contract.

> SHI recounts the facts as follows:

> As just one example, SHI had a two-year contract with Convera (customer) to resell Wiz (vendor) cybersecurity products to Convera. At D. Clark and Clutch's direction, Convera attempted to cancel its contract with SHI. When SHI refused to terminate the contract, Convera ordered another Wiz product through Clutch as the reseller, rather than SHI. SHI previously quoted this same "add-on" product to Convera in November 2024, prior to D. Clark leaving SHI. Thus, in reasonable probability, Convera's Wiz business would have gone to SHI but for Clutch and D. Clark's conduct.

(Dkt. #50 ¶ 46). This paragraph illustrates how certain Defendants allegedly prodded a customer to cancel its contract. But, as SHI admits, the parties never terminated the contract, and attempting to cancel a contract is not breaching a contract. Instead, the customer entered a separate contract with Clutch. This is insufficient to allege tortious interference with an existing customer contract. "The 'act of interference' element generally requires demonstration that the defendant 'knowingly induced one of the contracting parties to breach its obligations under a contract.'" *Nix*, 62 F.4th at 934 (quoting *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)); *see also Cloud49, L.L.C. v. Rackspace Tech., Inc.*, No. 24-50385, 2025 WL 763474, at *5 (5th Cir. Mar. 11, 2025) (same).

36

Without an allegation of inducement to breach a then-existing contract, there can be no claim that a defendant tortiously interfered with an existing customer contract. *See, e.g.*, *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995) ("Texas jurisprudence has long recognized that a party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract.").[14] Because SHI has failed to plausibly allege a claim for tortious interference with existing customer contracts, Defendants' dismissal motions will be granted as to this cause of action.

### b.  Prospective business relationships

SHI also includes a claim for tortious interference with prospective business relationships as to SHI's customers. As will be explained, SHI's claim for tortious interference with prospective customer business relationships survives Defendants' dismissal motion, but with significant limitations.

A claim of tortious interference with prospective business relations must allege the following:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from

---

[14] *See also All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App.—Fort Worth 2009, pet. denied) ("For a plaintiff to maintain a tortious interference claim, it must produce some evidence that the defendant knowingly induced one of the contracting parties to breach its obligations under a contract. To do so, the plaintiff must present evidence that some obligatory provision of a contract has been breached." (citations omitted)); *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied) ("Texas courts have held that to satisfy this element of the cause of action for tortious interference, a party must be more than a willing participant; it must knowingly induce one of the contracting parties to breach its obligations." (citing *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993))).

occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Nix*, 62 F.4th at 934 (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (deriving the elements from collected cases)).

The Defendants argue that SHI's claim for tortious interference with prospective customer business relationships fails because SHI's allegations are "conclusory" and, therefore, insufficient. Defendants further maintain that this claim also fails because SHI has failed to state a claim for independently tortious or unlawful conduct. The Court disagrees, although the scope of SHI's claim is narrow.

To begin, SHI's allegations supporting its claim for tortious interference with prospective customer business relationships, detailed at paragraphs 102 through 124 of the operative complaint, are not conclusory. SHI describes ongoing business and contractual relationships with a number of specific customers. *See, e.g.*, (Dkt. #50 ¶ 111). SHI confirms that it had a reasonable expectation that such relationships would continue and result in additional contracts. SHI further maintains that Defendants knew of SHI's expected contracts and ongoing relationships with such named customers and "intentionally interfered" with these relationships "without justification, and with intent to harm." (Dkt. #50 ¶ 111). SHI goes on to provide examples of such interference with SHI customer Convera, (Dkt. #50 ¶ 112), as well as customers California Coastal Credit Union and ICANN, among others, (Dkt. #50 ¶¶ 113–115). SHI also alleges that Defendants committed independently tortious

38

conduct "by conspiring in a common scheme with one another to misappropriate trade secrets and disclose or use confidential information in violation of their fiduciary duties," conduct that included "theft of confidential information and misappropriation of trade secrets." (Dkt. #50 ¶¶ 110–111). Finally, SHI also describes the harm it has suffered because of such interference, including the loss of future business with specific customers. (Dkt. #50 ¶¶ 114, 120–123). Given SHI's detailed allegations supporting its claim for tortious interference with prospective customer business relationships, Defendants' contention that the allegations are "conclusory" fails.

However, SHI's claim for interference with prospective business relations is intertwined with its misappropriation-of-trade-secrets claim. Under Texas law, to state a claim for tortious interference with prospective business relations, a plaintiff must plead, among other elements, that "the defendant's conduct was independently tortious or unlawful." *Coinmach*, 417 S.W.3d at 923 (citing, among others, *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). Here, SHI's tortious-interference claim is predicated on misappropriation of trade secrets: "Individual Defendants and Clutch have committed independently tortious conduct by conspiring in a common scheme with one another to misappropriate trade secrets and disclose or use confidential information[.]" (Dkt. #50 ¶ 110); *see also* (Dkt. #50 ¶ 111) ("Individual Defendants' and Clutch's conduct was independently tortious or unlawful and constituted theft of confidential information and misappropriation of trade secrets"). However, to the extent that SHI's claim for tortious interference with prospective business relations turns on underlying misappropriation of trade secrets,

39

the interference claim is preempted. Only the misappropriation of material that independently qualifies as confidential information that is not a trade secret, and therefore does not implicate TUTSA preemption, could serve as an underlying tort supporting SHI's claim for tortious interference with prospective business relations.

SHI further maintains that Defendants have committed other "independently tortious conduct described herein, including but not limited to breaches of fiduciary duties, interference with existing customer contracts, and interference with employee contracts." (Dkt. #50 ¶ 110). However, SHI has not adequately alleged a breach-of-fiduciary-duty claim, except as to Defendant Painter. *See supra* Part IV.B.ii. Nor has SHI pleaded a viable tortious interference claim regarding the Individual Defendants' employment agreements. *See supra* Part IV.B.iii. As explained herein, SHI has also failed to state a claim for tortious interference with existing customer contracts. Thus, to the extent SHI's claims for tortious interference with prospective business relations turns on an additional allegation of independently tortious conduct, it is limited to Defendant Painter's alleged breach of fiduciary duty.

As to tortious interference with employees' contracts, such conduct—even if it had been properly alleged, *see supra* Part IV.B.iii.—could not support SHI's claim for tortious interference with prospective business relations because interference with employees' contracts involves actions that are separate and distinct from the conduct pleaded for the tortious-interference-with-prospective-contract claim. To plead tortious interference with prospective contracts, "[t]he plaintiff must show that the defendant's conduct was either independently tortious or unlawful, that is, that the

40

conduct violated some other recognized tort duty." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 675 (S.D. Tex. 2010) (citing *Sturges*, 52 S.W.3d at 726); *see also Coinmach*, 417 S.W.3d at 923. In other words, the independently tortious or harmful conduct must be the *same* conduct that tortiously interferes with the prospective contract. For example, "a plaintiff may recover for tortious interference from a defendant who threatens a person with physical harm if he does business with the plaintiff." *Sturges*, 52 S.W.3d at 726. There, the same conduct both tortiously interferes with the prospective contracts *and* "constitute[s] assault." *Id.*

Here, the alleged conduct at the heart of SHI's tortious-interference-with-prospective-contract claim is the recruitment of SHI's clients. Such conduct is distinct from the recruitment of employees to violate their employment contracts with SHI and, thus, cannot serve as the basis for the tortious-interference-with-prospective-contract claim. What SHI would need to illustrate is how Defendants' purported recruitment of SHI's clients "violated some other recognized tort duty." *Rimkus*, 688 F.Supp.2d at 675. Besides the trade-secrets-misappropriation claim, SHI has failed to do so.

In sum, SHI's claim for tortious interference with prospective business relationships withstands Defendants' dismissal motions but with significant limitations. First, to the extent that SHI's claim for tortious interference with prospective business relations turns on underlying misappropriation of trade secrets or confidential information, it is limited to material that independently qualifies as confidential information that is not a trade secret and, therefore, does not implicate

41

TUTSA preemption. Second, to the extent SHI's claim for tortious interference with prospective business relations turns on underlying breaches of fiduciary duties, it is limited to Defendant Painter's alleged breach of fiduciary duty.

### v. Civil Conspiracy

Finally, for the civil conspiracy claim, Defendants argue that it is preempted by TUTSA, (Dkt. #63 at 11); (Dkt. #64 at 9–10), or fails to state a claim because, as a derivative tort, there is no underlying tort to sustain it, (Dkt. #63 at 18); (Dkt. #64 at 30–31). As noted, one or more of the underlying tort claims survive Rule 12(b)(6) dismissal and are not preempted by TUTSA. Therefore, the Motions to Dismiss will be denied as to SHI's civil conspiracy claim.[15]

## C. TUTSA and DTSA Claims

Pursuant to TUTSA, an owner of a trade secret that is misappropriated may bring a civil action for injunctive relief and/or damages. TEX. CIV. PRAC. & REM. CODE §§ 134A.003(a), 134A.004(a). To succeed on a TUTSA claim, a plaintiff must show that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without authorization from the plaintiff." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (per curiam) (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)). The elements of a

---

[15] Both the Individual Defendants and Clutch raise perfunctory assertions against the "meeting of the minds" element for civil conspiracy. *See* (Dkt. #63 at 18) ("Indeed, there is no *evidence* of a meeting of the minds or that the Employees were acting in concert with one another." (emphasis added)). At the pleadings stage of litigation, however, SHI need not provide evidence to support this claim, and as explained herein SHI's allegations of civil conspiracy survive Rule 12(b)(6) scrutiny.

cause of action under TUTSA are identical to the elements of a cause of action under DTSA. *See id.* (considering causes of actions under both DTSA and TUTSA but only providing one test); *compare* TEX. CIV. PRAC. & REM. CODE §§ 134A.003(a), 134A.004(a) *with* 18 U.S.C. § 1836(b)(1).

A "trade secret" includes "all forms and types of information, including business, scientific, technical, economic, or engineering information" (1) that the owner has taken "reasonable measures" to keep confidential and (2) that derive "independent economic value, actual or potential, from not being generally known" by or readily accessible to the public. TEX. CIV. PRAC. & REM. CODE § 134A.002(6); *see also CAE Integrated*, 44 F.4th at 262 ("A trade secret is information which derives independent economic value from being not generally known or readily ascertainable through proper means."). Whether a trade secret exists is a question of fact. *CAE Integrated*, 44 F.4th at 262. TUTSA's definition of "trade secret" is nearly identical to DTSA's definition, and both definitions require that the information meet the two-prong test identified above, i.e., the owner took reasonable measures to keep the information confidential and the information derives independent economic value from being secret. *Compare* TEX. CIV. PRAC. & REM. CODE § 134A.002(6) *with* 18 U.S.C. § 1839(3).

Neither the Individual Defendants nor Clutch present arguments that SHI does not properly allege the existence of trade secrets. Instead, the Individual Defendants argue that SHI fails to provide sufficient factual detail in support of the third element, improper use. (Dkt. #63 at 10–11). Clutch agrees with the Individual

43

Defendants, (Dkt. #64 at 11–12), but also contends that SHI fails to allege the second element, acquisition through improper means, as to Clutch. According to Clutch, SHI improperly tries to equate the hiring of the Individual Defendants with acquisition of SHI's knowledge by improper means. (Dkt. #64 at 11). The Court agrees.

Here, SHI provides only one thin allegation to support its misappropriation claim. SHI asserts that "Clutch and the Individual Defendants are directing customers to cancel contracts and move their business to Clutch, by, among other things, using SHI's trade secret and confidential information to coach customers[.]" (Dkt. #50 ¶ 47). This allegation, among the conclusory allegations that SHI cites in its response, provides scant factual detail on which to hinge its TUTSA and DTSA claims against all fifteen Individual Defendants and Clutch. It does not even name the specific trade secrets in use by the Defendants. SHI must provide more than just a conclusory sentence to plausibly allege its TUTSA and DTSA claims. Therefore, the Motions to Dismiss will be granted as to SHI's TUTSA and DTSA claims.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Individual Defendants' Motion to Dismiss, (Dkt. #63), and Defendant Clutch's Motion to Dismiss Plaintiff's Second Amended Verified Complaint, (Dkt. #64), are **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff SHI International Corp.'s claims for breach of contract as to the Individual Defendants are **DISMISSED without**

**prejudice**, except as to Defendants D. Clark and Wortham's alleged breaches of their customer non-solicitation agreements with SHI.

It is further **ORDERED** that Plaintiff SHI International Corp.'s claims for breach of fiduciary duty as to the Individual Defendants are **DISMISSED without prejudice**, except as to Defendant Painter.

It is further **ORDERED** that Plaintiff SHI International Corp.'s claims for tortious interference with the Individual Defendants' contracts; tortious interference with existing customer contracts and relationships; TUTSA violations; and DTSA violations are all **DISMISSED without prejudice**.

Plaintiff SHI International Corp.'s claims against Defendants D. Clark and Wortham for alleged breaches of their customer non-solicitation agreements with SHI, SHI's claim against Defendant Painter for alleged breach of fiduciary duty, and SHI's claims against all Defendants for tortious interference with prospective business relationships and civil conspiracy remain pending.

It is further **ORDERED** that Plaintiff SHI International Corp. may file its third amended complaint on or before **August 7, 2026**.

It is further **ORDERED** that the stay in this case is **LIFTED**.

It is further **ORDERED** that the parties shall, on or before **August 11, 2026**, file a proposed scheduling order.

   **So ORDERED and SIGNED this 27th day of July, 2026.**

        _____

        SEAN D. JORDAN
        UNITED STATES DISTRICT JUDGE

45