UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SHI INTERNATIONAL CORP. | § | |
| | § | |
| v. | § | CIVIL NO. 4:25-CV-431-SDJ |
| | § | |
| CLUTCH SOLUTIONS, LLC, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff SHI International Corp.'s Renewed Application for Preliminary Injunction (the "Application"). (Dkt. #57). Having considered the briefing, the record, and the applicable law, the Court concludes that the Application should be denied.

### I. BACKGROUND

SHI International Corp. ("SHI") is a technology company that sells computer hardware, software, and IT services. (Dkt. #50 ¶¶ 23–24). SHI's sales employees are categorized by customer size: small business, commercial, and enterprise. (Dkt. #50 ¶ 25). SHI's enterprise sales employees, including all Individual Defendants, serve clients with more than 1,000 employees. (Dkt. #50 ¶ 25). The Individual Defendants worked on three teams: the inside-sales team, field-sales team, and inside-sales-support team. (Dkt. #50 ¶ 27). The inside-sales and field-sales teams are responsible for developing business within assigned geographical and business territories. (Dkt. #50 ¶ 26). The inside-sales-support team helps service existing customer accounts. (Dkt. #50 ¶ 26).

1

While performing their duties at SHI, these employee teams each interact with certain non-public "proprietary information and trade secrets" related to customer intelligence. (Dkt. #50 ¶ 28). This proprietary information includes client contacts, account histories, client-project specifications, vendor relationships, and sales training materials. (Dkt. #50 ¶ 28). SHI claims that this body of customer intelligence—generated through years of business—fuels its competitive advantage. (Dkt. #50 ¶ 29).

In early 2025, SHI alleges that Clutch Solutions, LLC ("Clutch")—a rival technology sales provider—recruited fifteen former SHI employees[1] (the "Individual Defendants") to steal SHI's customer base through a coordinated scheme. (Dkt. #57 at 6–14). According to SHI, the Individual Defendants spent their last months at SHI siphoning proprietary data for Clutch. In turn, Clutch used this proprietary data to divert SHI's clients, solicit SHI's employees, and steal SHI's business, causing substantial and irreparable harm. (Dkt. #57 at 6–14). SHI supports its claims with the following examples:

- All Individual Defendants have wrongfully solicited SHI customers to move their accounts to Clutch. Some, like Yoon, have solicited customers with which they directly worked at SHI—violating their non-solicit agreements. (Dkt. #57 at 6).

- Defendants C. Clark, Safi, Lella, Wortham, Yoon, El-Batouty, and Kotecki joined Clutch within weeks of leaving SHI—violating their six-month non-compete agreements. (Dkt. #57 at 7).

---

[1] Christopher Clark ("C. Clark"), Amza Safi ("Safi"), Daniel Clark ("D. Clark"), Neil Lella ("Lella"), Yaujin "Alex" Yoon ("Yoon"), Matthew Monte ("Monte"), Beau Walker ("Walker"), Katelyn "Keller" Painter ("Painter"), John "Cameron" Mulloy ("Mulloy"), William Wortham ("Wortham"), Danya Kotecki ("Kotecki"), Yehia El-Batouty ("El-Batouty"), David Silberstein ("Silberstein"), Robert Taylor Ward ("Ward"), and Ryan Flipse ("Flipse") (collectively, the "Individual Defendants") (together with Clutch, the "Defendants").

- While at SHI, Defendants C. Clark, Safi, Wortham, D. Clark, and Kotecki emailed confidential information, including price lists, customer contacts and information, and deal-registration data to their personal emails—violating their confidentiality agreements. (Dkt. #57 at 6–7).

- Defendants C. Clark, Monte, Lella, and Yoon recruited SHI's employees to join Clutch—violating their non-solicit agreements. (Dkt. #57 at 7).

- Clutch targeted SHI's employees and encouraged SHI employees to bring their clients with them to Clutch. (Dkt. #57 at 7–8).

- Defendant C. Clark solicited SHI's clients after moving to Clutch, including Everi, GES, M3 Engineering, Sahara Resorts, Terrible Herbst, Global Experience Specialists, and Virgin Hotel Las Vegas, resulting in M3 Engineering, Sahara Resorts, Global Experience Specialists, and Virgin Hotel Las Vegas moving their business to Clutch. (Dkt. #57 at 8).

As a result, SHI contends that these—and other actions by the Defendants, *see* (Dkt. #57 at 8–14)—violated the non-compete, non-solicitation, and confidentiality provisions in the employment agreements.[2] (Dkt. #57 at 8). SHI thus seeks a preliminary injunction based on the following claims: common-law breach of contract against Individual Defendants, except Painter, (Dkt. #57 at 15–16); common-law breach of fiduciary duties against all Individual Defendants, including Painter, (Dkt. #57 at 17); common-law tortious interference against all Defendants, (Dkt. #57 at 16–17); and Defend Trade Secrets Act and Texas Uniform Trade Secrets Act violations against all Defendants, (Dkt. #57 at 17–18). To remedy these alleged harms, SHI originally sought a temporary restraining order and a preliminary

---

[2] All Individual Defendants except Painter were subject to employment agreements containing non-solicitation of employees, non-solicitation of customers, and confidentiality provisions. (Dkt. #57 at 8). Additionally, C. Clark, Yoon, Safi, Wortham, Lella, Kotecki, and El-Batouty had agreements with six-month non-compete provisions. (Dkt. #57 at 7).

injunction, (Dkt. #19), and has since renewed its preliminary injunction application, (Dkt. #57).

Since SHI filed these motions, the Court granted in part and denied in part the Individual Defendants' Motion to Dismiss, (Dkt. #63), and Defendant Clutch's Motion to Dismiss Plaintiffs Second Amended Verified Complaint, (Dkt. #64). (Dkt. #138). There, the Court dismissed without prejudice SHI's claims for breach of contract as to the Individual Defendants, except as to Defendants D. Clark and Wortham's alleged breaches of their customer non-solicitation agreements with SHI; breach of fiduciary duty as to the Individual Defendants, except Painter; tortious interference with the Individual Defendants' contracts; tortious interference with existing customer contracts and relationships; TUTSA violations; and DTSA violations. (Dkt. #138). Now, SHI's only pending claims are against Defendants D. Clark and Wortham for alleged breaches of their customer non-solicitation agreements with SHI, against Defendant Painter for alleged breach of fiduciary duty, and against all Defendants for tortious interference with prospective business relationships and civil conspiracy. (Dkt. #138).

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). To justify this extraordinary remedy, a movant must establish the following: (1) a substantial likelihood of success on the merits of its claims; (2) a substantial threat that the movant will suffer irreparable harm if the injunction is

not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012). While a plaintiff "is not required to prove his case in full," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), he must "clearly carr[y] the burden of persuasion on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (internal quotation marks and citation omitted). The first element—the likelihood of success on the merits—is the most important. *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024).

Given the extraordinary nature of such relief, an injunction must comply with the strict requirements of Federal Rule of Civil Procedure 65. *See Seattle–First Nat. Bank v. Manges*, 900 F.2d 795, 800 (5th Cir. 1990) ("[I]f the court chooses to issue an injunction . . . the injunction must turn square corners as required by Rule 65(d)."). Under Rule 65, "[e]very order granting an injunction and every restraining order must: . . . (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." FED. R. CIV. P. 65(d). "This drafting standard means 'that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.'" *State of Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022) (quoting *U. S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.20 (5th Cir. 1975)). This "no-reference requirement" is "strictly construed in this circuit to require that the parties

5

be able to interpret the injunction from the four corners of the order as required by Rule 65(d)." *Seattle–First Nat. Bank*, 900 F.2d at 800 (internal quotation marks and citation omitted). Even a defendant's consent to an injunction does not immunize injunctive relief from Rule 65(d). *See, e.g.*, *Orchestrate Hr, Inc. v. Trombetta*, No. 3:13-CV-2110-L, 2016 WL 3179967, at *9, 10 (N.D. Tex. June 8, 2016) (refusing to find defendants in civil contempt for alleged violations of agreed injunctions because, *inter alia*, the underlying injunctions violated "Rule 65(d)(1)'s express prohibition against reference to other documents").

The specificity requirements of Rule 65 "embod[y] the elementary due process requirement of notice" and "are no mere technical requirements." *Scott v. Schedler*, 826 F.3d 207, 212 (5th Cir. 2016) (cleaned up); *see also Islander E. Rental Program v. Barfield*, 145 F.3d 359, 1998 WL 307564, at *4 (5th Cir. Mar. 24, 1998) (referring to "the requirements of Rule 65(d)" as "mandatory"). "Rule [65] was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Louisiana*, 45 F.4th at 846 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974)).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

At the outset, SHI's Application for injunctive relief fails as most of its claims in its operative complaint have been dismissed. *See* (Dkt. #138). The remaining claims are not sufficient to sustain such wide-ranging relief as requested here. The

6

claims for breach of contract and breach of fiduciary duty survive only as to a three of the Individual Defendants. SHI's claims against all Defendants for tortious interference with prospective business relationships and civil conspiracy remain pending, but SHI did not assert either of them as a ground on which to grant its Application. *See* (Dkt. #57 at 14–18). Therefore, for this reason alone, the Court will deny the Application.

## B. Rule 65(d)(1)(C)

Regardless, even if more of SHI's claims remained, the Court is confronted with a more fundamental problem: The requested injunction does not comply with Rule 65(d)(1)(C)'s no-reference requirement. SHI's proposed language is riddled with references to outside documents, especially the employment contracts between SHI and the Individual Defendants. SHI asks the Court to enjoin Clutch from the following:

1. Employing or continuing to employ C. Clark, Yoon, Safi, Wortham, Lella, Kotecki, and El-Batouty six months from the date of this order and *within the territory as described in their respective employment agreements with SHI*;

2. Recruiting or attempting to recruit any SHI current or former employee *contrary to the terms, including the covenant-not-to-compete and non-solicitation terms, of any applicable agreement between such employee and SHI*;

3. Using or disclosing SHI's trade secrets; and

4. Tortiously interfering with SHI's existing and prospective customer contracts and relationships, including with customers with whom the Individual Defendants worked while employed by SHI, including but not limited to: MVM, Vizient, VIAD, GES, Terrible Herbst, California Coastal Credit Union, ICANN, Wedbush, Convera USA, Compass Health, PNM Resources, Vizient, Dollar Bank, M3 Engineering, Sahara Resorts (Mereulo Group), Virgin Hotels, and Alarm.com.

(Dkt. #57-35 at 2–3) (emphasis added). These provisions would require Clutch not

only to be bound by the terms of an outside document, but also the terms of a contract to which Clutch was not even a party.

As to the Individual Defendants, SHI requests that they be enjoined from the following:

1. Inducing, attempting to induce, or assisting any other person or entity to induce any employee of SHI to leave SHI's employ *contrary to the terms of their respective employment agreements with SHI*;

2. Soliciting business from, or providing services to, any customer or prospect of SHI whom he or she solicited business from or provided services to while employed by SHI *contrary to the terms of their respective employment agreements with SHI*, including, but not limited to, MVM, Vizient, VIAD, GES, Terrible Herbst, California Coastal Credit Union, ICANN, Wedbush, Convera USA, Compass Health, PNM Resources, Vizient, Dollar Bank, M3 Engineering, Sahara Resorts (Mereulo Group), Virgin Hotels, and Alarm.com;

3. Using or disclosing SHI's confidential information *contrary to the terms of their respective employment agreements with SHI*;

4. Using or disclosing SHI's trade secrets; and

5. Tortiously interfering with SHI's existing and prospective customer contracts and relationships, including with customers with whom the Individual Defendants worked while employed by SHI, including but not limited to: MVM, Vizient, VIAD, GES, Terrible Herbst, California Coastal Credit Union, ICANN, Wedbush, Convera USA, Compass Health, PNM Resources, Vizient, Dollar Bank, M3 Engineering, Sahara Resorts (Mereulo Group), Virgin Hotels, and Alarm.com.

(Dkt. #57-35 at 4–5) (emphasis added).

As to the Individual Defendants subject to non-compete provisions—i.e., C. Clark, Yoon, Safi, Wortham, Lella, Kotecki, and El-Batouty—SHI seeks to enjoin them from "[w]orking for Clutch or for any person or entity engaged in the business of selling or reselling computer hardware, software, or computer related services *contrary to the terms of their employment agreements with SHI*," especially from

8

"working in the restricted territory *as specified in their employment agreements*." (Dkt. #57-35 at 3) (emphasis added).

Repeatedly, SHI seeks to enjoin activity that violates the terms of the respective contracts, terms not found in the injunction's proposed language. Under the plain terms of the proposed order, an individual would not be able to comply with the Court's order without "referring to . . . other document[s]" not contained therein. FED. R. CIV. P. 65(d)(1)(C). These references are not passing details but central to the operative language of any potential injunctive relief. An ordinary person could only understand the scope of permitted activity by referring to the respective "employment agreements with SHI." (Dkt. #57-35 at 2, 3, 4). These terms are not found in "the four corners of the order as required by Rule 65(d);" therefore, the Court cannot grant this injunctive relief. *Seattle–First Nat. Bank*, 900 F.2d at 800 (cleaned up).

Further, SHI seeks to enjoin both Clutch and the Individual Defendants from "[u]sing or disclosing SHI's trade secrets," (Dkt. #57-35 at 3, 4); nevertheless, SHI is unclear as to what those trade secrets are. To take one example, in its Response in Opposition to Defendants' Motions to Dismiss, SHI claims that it "defines its trade secrets in Paragraph 28 of the [Complaint]." (Dkt. #79 at 29). According to SHI, that includes, among other things, "pricing and financial information." (Dkt. #79 at 30) (quoting (Dkt. #50 ¶ 28)). However, two pages later, SHI argues that TUTSA does not preempt its breach-of-fiduciary-duties claims because those claims involve confidential information that does not qualify as a trade secret. According to SHI, "[t]his confidential information includes customer lists, prospective customer

9

information, customer contracts, and financial and pricing information." (Dkt. #79 at 32) (citing (Dkt. #50 ¶ 35)). The Court has difficulty discerning a difference between "pricing and financial information" that amounts to trade secrets, (Dkt. #50 ¶ 28), and "financial and pricing information" that amounts to non-trade-secret confidential information, (Dkt. #79 at 32) (citing (Dkt. #50 ¶ 35)). Under Rule 65(d)(1)(C), the Court cannot expect a party to refer to a complaint to understand the terms of an injunction; here, such recourse would only prove futile. Without greater clarity, no defendant could be expected to comply with such a dubious command. If SHI wants to enjoin Defendants from appropriating its trade secrets, it must define what they are.[3]

The Fifth Circuit has made clear that Rule 65(d)(1)(C)'s no-reference requirement will be construed to enforce what it says: Parties must be able to interpret an injunction from the four corners of the order alone. *See F.T.C. v. Sw. Sunsites, Inc.*, 665 F.2d 711, 723–24 (5th Cir. 1982); *Seattle–First Nat. Bank*, 900 F.2d at 800; *Louisiana*, 45 F.4th at 846. Compliance with the no-reference requirement "may indeed seem overly technical," but failure to do so implicates fundamental due process considerations. *Sw. Sunsites, Inc.*, 665 F.2d at 724; *see Scott*, 826 F.3d at 212; *Schmidt*, 414 U.S. at 476. Here, to have a hope of understanding the scope of the restrained acts, an ordinary person would have to refer to the referenced contracts and other filings. Given that the proposed injunction fails to comply with

---

[3] SHI does not help itself by resisting efforts to clarify what exactly it claims are its trade secrets. *See* (Dkt. #125) (SHI's Response to Defendants' Motion for Pre-Discovery Identification of Trade Secrets).

Rule 65(d)(1)(C) because it describes the relevant conduct by "referring to . . . other document[s]," the Court must deny SHI's motion for injunctive relief. FED. R. CIV. P. 65(d)(1)(C).

### IV. CONCLUSION

It is therefore **ORDERED** that Plaintiff SHI International Corp.'s Renewed Application for Preliminary Injunction, (Dkt. #57), is **DENIED**.

It is further **ORDERED** that SHI International Corp.'s Request to Enter Order, (Dkt. #116), is **DENIED as moot**.

**So ORDERED and SIGNED this 27th day of July, 2026.**

_____

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

11